UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| SOUL QUEST CHURCH OF MOTHER EARTH, INC., a Florida Domestic Non-Profit Corporation, on its own behalf and on behalf of its members; and CHRISTOPHER YOUNG, individually and as spiritual leader of Soul Quest Church of Mother Earth, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | Case No. 6:20-cv- |
| WILLIAM BARR, Attorney General of the United States of America; UTTAM DHILLON, acting administrator of the U.S. Drug Enforcement Administration; and the U.S. DRUG ENFORCEMENT ADMINISTRATION, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## VERIFIED COMPLAINT FOR DECLARATORY AND PERMANENT INJUNCTIVE RELIEF (INJUNCTIVE RELIEF SOUGHT)

The Plaintiffs, Soul Quest Church of Mother Earth, Inc., a Florida Domestic Non-Profit Corporation, on its own behalf and on behalf of its members, and Christopher Young, individually and as the spiritual leader of Soul Quest Church of Mother Earth [hereinafter collectively "Plaintiffs"], by and through the undersigned counsel, hereby allege as follows:

## I.   **INTRODUCTION**

1.      Plaintiff Soul Quest Church of Mother Earth, Inc. [hereinafter "Soul Quest Church"], is a Christian syncretic religion based in Orlando, Florida, and registered as a Florida domestic non-profit corporation.

2.      Plaintiff Christopher Young is the spiritual leader of Plaintiff Soul Quest Church, who resides in the State of Florida.

3.      The Plaintiffs bring this Complaint on behalf of all members of Soul Quest Church, pursuant to 42 U.S.C. §§ 2000bb–2000bb-4. [hereinafter collectively the "Religious Freedom Restoration Act" or "RFRA"], and 42 U.S.C. § 1983, to redress the deprivation of rights, privileges, and immunities secured to Plaintiffs by the First, Fifth, and Fourteenth Amendments to the United States Constitution.

4.      Specifically, Plaintiffs seek a declaration that the Defendants' threats to arrest and prosecute members of Soul Quest Church who seek to practice their religious rituals, which involve    the sacramental consumption of trace amounts of a Schedule 1 chemical (21 U.S.C. § 812), at Soul Quest Church's religious ceremonies, is unconstitutional, unlawful, and violates the RFRA, in that these threats burden the central practice of Plaintiffs' religion, i.e. the imbibing of the sacramental tea.

5.      Plaintiffs also seek a permanent injunction enjoining the Defendants from preventing the importation or use of Soul Quest Church's sacramental tea in religious ceremonies, and from threatening to arrest or prosecute members of Soul Quest Church who seek to exercise their religion.

## II.    JURISDICTION AND VENUE

6.      Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331 and 1343(3)-(4), because the case arises under the Constitution, laws, and treaties of the United States, and seeks to redress the deprivation of rights, privileges, and immunities secured to Plaintiff by the First, Fourth, and Fifth amendments to the Constitution of the United States, and the Religious Freedom Restoration Act, as well as to secure equitable or other relief under any Act of Congress providing for the protection of civil rights.

7.      Pursuant to 28 U.S.C. §§ 2201-2202 and 5 U.S.C. § 706, this Court has the authority to grant declaratory relief, and to issue preliminary and permanent injunctions.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e)(1) because this is a civil action in which the Defendants are officers and/or employees of the United States, an agency thereof acting in their official capacity or under color of legal authority, and an agency of the United States, and the Middle District of Florida, Orlando Division, is where a substantial part of the events or omissions giving rise to the claims occurred and where the plaintiff reside, where no real property is involved.

## III.    PARTIES

### A.    Plaintiffs

9.      Plaintiff Soul Quest Church is a registered domestic non-profit corporation incorporated under the laws of the State of Florida, with a principal office located in Orlando, Florida.  Thus, pursuant 28 U.S.C. § 1391(c)(2), Plaintiff Soul Quest Church resides in the Middle District of Florida, Orlando Division for venue purposes.  Soul Quest Church is adversely affected and aggrieved by the Defendants' actions, as more fully set forth below.

10.     Plaintiff Christopher Young is a natural person who is domiciled in Orlando, Florida.   Thus, pursuant 28 U.S.C. § 1391(c)(1), Plaintiff Christopher Young is deemed to reside in the Middle District of Florida, Orlando Division.  Plaintiff Christopher Young is the religious leader of Soul Quest Church.  Plaintiff Christopher Young brings this action in his own capacity as a member of Soul Quest Church, and on behalf of the members of Soul Quest Church.

### B.     Defendants

11.     Defendant William Barr is the Attorney General of the United States of America, and resides in Washington, District of Columbia.

12.     Defendant Uttam Dhillon is the acting Administrator of the United States Drug Enforcement Authority.

13.     The United States Drug Enforcement Authority (hereinafter, "DEA") is the federal agency in charge of drug enforcement within the United States. As such, it is the only agency empowered to grant religious exemptions, like the one sought by the Plaintiffs in the instant Complaint, to United States drug laws.

### IV.    PROCEDURAL HISTORY & FACTUAL BACKGROUND

### A.     Procedural History

14.     The Plaintiffs have made concerted, long-term efforts to secure a religious-based exemption to the Controlled Substances Act's prohibition against the ingestion of N,N-5,5-dimethyltryptamine ("DMT") from the Defendants.

15.     On August 21, 2017, the Plaintiffs dispatched, through legal counsel, their exemption application to the DEA (hereinafter, "DEA Exemption Application").  A true and

correct copy of the Plaintiffs' DEA Exemption Application is attached hereto, and incorporated by reference herein, as Exhibit 1. The DEA, in conjunction with the U.S. Department of Justice (hereinafter, "DOJ") is assigned the process of considering religious-based exemptions to enforcement of provisions of the Controlled Substances Act. As set forth below, these respective government departments/agencies are responsible for constructing the framework for consideration and review of exemption applications – including the Plaintiffs' DEA Exemption Application, which was remitted nearly three (3) years ago by the Plaintiffs. This framework was anticipated to be in conformity with the provisions of the RFRA, as well as the Supreme Court's decision in Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. 418 (2006) (hereinafter, "O Centro").

16.    The Plaintiffs anticipated that the guidelines which should have been developed but, based upon information and belief, were never so developed, would be narrowly tailored to not clash with the First Amendment's Free Exercise Clause. The Plaintiffs also anticipated that such guidelines would have been constructed with various safeguards including, but not limited to, expressed time limitations for review and ruling, as well as specific standards designed to allow for the uniform application of such guidelines. A copy of these DEA's guidelines regarding petitions for religious exemptions to the Controlled Substances Act are attached hereto, and incorporated by reference herein, as Exhibit 2.[1]

---

[1] Indeed, despite diligent research, the Plaintiffs have been unable to locate any historical copy of what should be publicly-available "guidelines," in force in August 2017 – with the only document stemming from February 2018 – when the Plaintiffs submitted their application for a religious exemption. The lack of a historic database for these documents is a problem in and of itself given the Defendants' propensity for delay. However, the Plaintiffs' religious exemption application met the requirements of the Defendants' "guidelines" in force at the

17.     This has not occurred.  Indeed, to the best of the Plaintiffs' knowledge, the Plaintiffs' DEA Exemption Application continues to sit at the assigned office, located in Springfield, Virginia, with no timetable for completion and with no stated standards upon which to guide the Defendants' scrutinizing and ruling on such applications.  In fact, through information and belief, since the 2006 decision in O Centro, supra, it is believed that – despite dozens of submitted religious exemption applications submitted to the Defendants by a variety of religious-based groups – the Defendants have only granted two (2) applications.  Of these two (2) granted applications, one was to the group prosecuting the successful RFRA challenge in O Centro, while the other application for a religious exemption also resulted from judicial action by groups affiliated to that organization.  Church of the Holy Light of the Queen v. Mukasey, 615 F. Supp. 2d 1210 (D.C. Oregon 2009) [hereinafter, "CHLQ"].

18.     In the case-at-bar, there was no acknowledgment of receipt of the DEA Exemption Application directly by the Defendants.   Notwithstanding this, it was independently confirmed – in approximately October 2018 – that Defendants had received the Plaintiffs' DEA Exemption Application.  At that time, a Freedom of Information Act [hereinafter "FOIA"] request was forwarded to Plaintiffs' counsel, pertaining to a request to disclose the DEA Exemption Application pursuant to FOIA.  Later discussions between Plaintiffs' counsel and the Defendants' FOIA office affirmed the receipt of the DEA Exemption Application shortly following its August 21, 2017 transmission to Defendants.

19.     Furthermore, from March through May 2019, Plaintiffs' counsel made regular telephone calls and left regular voicemail messages at the Defendants' office tasked with

---

time of submission, and from that basis the Plaintiffs conclude that the "guidelines" presently in force would not materially differ from those in effect in August 2017.

assessing religious exemption applications including, but not limited to, multiple voicemails with this office's supervisor, Lorne Miller. The Plaintiffs received no return calls from Mr. Miller or anyone else with the authority to address the status of the Plaintiffs' DEA Exemption Application.

20.     Since May 2019, the Defendants have failed to make any contact with the Plaintiffs' legal counsel regarding the DEA Exemption Application – or any other matter.

### B.     Factual & Legal Background

#### 1.     Plaintiff Soul Quest Church

##### *a.     Overview*

21.     Plaintiff Soul Quest Church rests its religious principles and sacred beliefs upon a foundation of ancient teachings, writings, records, and common cultural and religious practices and traditions of indigenous peoples from across the globe.

22.     These same foundations constitute the source for Plaintiff Soul Quest Church's traditional, natural healing practices.

23.     Plaintiff Soul Quest Church believes that it honors and fulfills these ancient traditions and practices through its rituals from its church in Orlando, Florida, and that such rituals help to spread its teachings through the Earth and cosmos.

24.     Pursuant to its core teachings and beliefs, Plaintiff Soul Quest Church passes its message to others through its operation of a healing ministry, counseling and natural medicine school.   Further, it provides street-level ministry outreach, spiritual activities, and spiritual/faith-based education.

25.     Plaintiff Soul Quest Church holds spiritual classes and services in a style akin to various Native American religious practices – based upon the seasons.  Religious services

involve music and song, and the sharing of personal professions of faith and faith in-action, as well as the enactment of plays.

> b.  *Soul Quest Church's Faith-Based Principles*

26.  Plaintiff Soul Quest Church and its members embrace and espouse the following faith-based principles as fundamental to its religion:

a.  The Creator, the Great Spirit, and that the Great Spirit created all beings to exist as free and equal.

b.  The Creator granted to all beings eternal, inherent, ancestral, and sovereign rights, and to all humans a conscience upon which to govern human activities throughout the planet.

c.  All humans derive from, and are intended to exist akin to, traditional, indigenous communities. Further, through the descendants of these indigenous communities, there exist the need and priority to form and maintain organizations and practices premised upon indigenous teachings, wisdom and customs.

d.  Spiritually-based, natural health care and related sacred expression – arising from the sacred texts of traditional, indigenous religions and their ritualistic practices – are sacrosanct and must be practiced as sacraments to the faith.

e.  The fundamental mission of the faith is the restoration of divine wisdom, and knowledge of the benefits to health and life provided by the Great Spirit through Mother Earth.

f.  The restoration of divine wisdom can only occur through traditional ceremonies, rituals, sacraments, scriptural and a spiritually-valid moral science. Such is based upon the teachings and practices reflecting the guidance of the Great Spirit as bequeathed to all people as children of Mother Earth.

g.  The traditions and teachings espoused within the faith's sacred texts and scriptures provide insight for

the restoration of spiritual, physical and mental health of all beings. These traditions and teachings require the assessment, improvement and restoration of physical, mental and spiritual health.

h.    The belief that, as children of the Great Spirit, there is entitlement to, as part of natural law, the various fundamental freedoms including, but not limited, to freedom of thought and expression; the free exercise of sacred rights of worship and methods of healing; freedom of personal security; and freedom of self-determination.

i.    All men and women are endowed with sufficient intelligence for self-governance to ensure the guarantees of those freedoms; to establish just and morally righteous methods of interacting with one another; and to the provide for maintenance of a tranquil and secure domestic life infused by the blessings of the faith.

*c.    Fundamental Moral & Ethical Tenets*

27.    Plaintiff Soul Quest Church adheres to seven (7) fundamental moral and ethical tenets, revealed to it and its members by and through the actions of the Great Spirit, *to wit*:

a.    Mother Earth, is the embodiment of an indivisible, living community of interrelated and interdependent beings with a common destiny; and that Mother Earth is the source of life, nourishment and learning, and providing everything needed to live a fulfilled existence; Mother Earth is part of a greater creation, composing all existence throughout the cosmos, as originated by the Great Spirit.

b.    All forms of depredation, exploitation, abuse and contamination – in whatever form and including, but not limited to certain economic systems – have endangered Mother Earth by causing massive destruction, degradation and disruption of natural systems. Amoral and

immoral practices and systems must be discarded and replaced with the faith's moral tenets – guided by the Great Spirit – and premised upon the embracing of practices designed to protect and sanctify Mother Earth.

c.  As a part of a globally interdependent living community, and consistent with the teachings of the Great Spirit, all beings are imbued with natural rights requiring equal respect. Human beings are just one component of Mother Earth and a homocentric approach creates imbalance within Mother Earth.

d.  In order to fulfill the design of the Great Spirit to equal dignity and rights among humans, it is concurrently necessary to recognize and defend the rights of Mother Earth and all its beings.

e.  Consistent with the teachings of the Great Spirit, collective action must be taken to transform structures and systems destructive to Mother Earth including, but not limited to, the catastrophic consequences of modern climate change.

f.  Indigenous plant life is sacred and embodied by the Great Spirit. All materials stemming from plant life must be accorded dignity, protected from threat or violation, and defended as a holy sacrament. The ritual use of ayahuasca and its natural healing treatments is embraced as a fulfillment of this holy sacrament.

g.  An obligation to embody and promote the principles of the Universal Declaration of the Rights of Mother Earth, via fundamental respect for the sacred nature of the planet and its occupants, as one with the Great Spirit.

28.     These fundamental tenets of Plaintiff Soul Quest Church's faith were described in greater detail in the DEA Exemption Request that the Plaintiffs submitted to the Defendants. See Exhibit 1.

*d.     Scriptural & Liturgical Foundations; Mission*

29.     Plaintiff Soul Quest Church's origins, and its teacher-prophet, the Spirit of Ayahuasca, are comprised within two sacred plants "Banisteriopsis Caapi" and "Psychotria Viridis."

30.     The beliefs, purposes and guidelines are further defined within the sacred writings titled the "Ayahuasca Manifesto." A copy of the Ayahuasca Manifesto is attached hereto, and incorporated by reference herein, as Exhibit 3.

31.     The Ayahuasca Manifesto is very much akin, and serves a similar purpose, to other faiths' sacred writings, explaining the tenets of the faith, such as the Jewish Talmudic writings and the Mishnah.

32.     The sacred nature of the Spirit of Ayahuasca is proclaimed within the Ayahuasca Manifesto as follows:

> I am the spirit of Ayahuasca. For the first time, I reveal myself through the "Word" to make an emergency call to all the Human Beings on the Planet, especially to the Light Seekers, as I must expand beyond the Amazon River Basin. With my physical expansion, I intend to facilitate the spiritual transformation currently stirring the human species. . . .
>
> I am a spirit of spirits. I operate from a vibration superior to the spirits who compose me. I am of a hierarchy superior to that of the spirit of Ayahuasca and of Chacruna. I am the medicine resulting from the mixture of Ayahuasca and Chacruna. Although they give me the name of one of them, my sacred magic does not come from either one of them. My magic resides in the synergy created by the sacred mixture.

See Exhibit 3 at 5-6.

33.     Plaintiff Soul Quest Church's beliefs, purposes and guidelines are provided through channeled material documented in Ayahuasca Manifesto.  The Manifesto provides knowledge and direction, inclusive of details about Plaintiff Soul Quest Church's mission, as well as instructions on the following topics:

     a.     Role in the Expansion of the Human Consciousness;
     b.     Purpose with Human Beings;
     c.     Respect and the Sacred Nature of Ayahuasca;
     d.     Benefits of Use;
     e.     Guide for Conducting Ayahuasca Ceremonies; and
     f.     Planetary Mission.

See Exhibit 3.

34.     Other fundamental religious ethical requirements of Plaintiff Soul Quest Church are included in its Code of Ethics.  The Code of Ethics contains key principles, edicts and other educational statements regarding Soul Quest and its sacraments – inclusive of the use of ayahuasca.  A copy of the Code of Ethics is attached hereto, and incorporated by reference herein, as Exhibit 4.

35.     Plaintiff Soul Quest Church's mission is achieved through its advocacy and educational initiatives by: producing disciples who will celebrate the teachings and wisdom of the Great Spirit in cooperative worship; are devoted to the four (4) boundless and unequaled states of mind – Love, Compassion, Joy and Equanimity; are possessed with love for everyone and every living being; and are permeated and bound by the spheres of influence and dynamic teachings of our elders.

36.     On a liturgical level, Plaintiff Soul Quest Church's requires staff to observe proper liturgical dress during religious retreats and ceremonies.  This entails the wearing of white vestments.

37.     The color *white* is critical to the practice of Plaintiff Soul Quest Church's religious ceremonies and retreats, and performance of sacraments of the faith, for the following reasons:

   a.     It represents the color of eternal light and is an emblem of the divine.

   b.     It projects purity, cleanliness and neutrality.

   c.     It aids in mental clarity, encourages staff and participants to clear mental and spiritual clutter and obstacles, evokes purification of thoughts and actions and enables fresh beginnings.

   d.     It accentuates free movement, all while maintaining maximum respect to the Great Spirit, and all others participating in such functions.

                    *e.     Holidays*

38.     Plaintiff Soul Quest Church's and its members celebrate the following holidays:

   a.   December 23 - Winter Solstice;
   b.   March 21 - Vernal Equinox'
   c.   April 22 - Earth Day;
   d.   June 21 - Summer Solstice; and
   e.   September 21 - Autumnal Equinox.

39.     Plaintiff Soul Quest Church's holidays, akin to many diverse cultural and religious traditions, are premised upon the ancient tradition of celebrating the change of seasons and complementary astronomical events.

*f.*     *Dietary & Fasting Rituals*

40.     Plaintiff Soul Quest Church's and its members adhere to the traditional diet of the Medicine People.  The diet not only requires abstention from consumption of certain foods; rather, it also requires discipline, sacrifice and commitment, akin to those of various Judeo-Christian and Eastern religious sects.

41.     The constraints imposed by Plaintiff Soul Quest Church's dietary laws are designed to cleanse the body and, by doing so, cleanse the spirit and permit for the effective, efficient use of plant medicine.  These constraints are described, in greater detail in the Plaintiff's DEA Exemption Application.  See Exhibit 1.

42.     These constraints directly impact Plaintiff Soul Quest Church's ayahuasca sacrament ceremony.  Prior to any ayahuasca ceremony, Plaintiff Soul Quest Church members and adherents are to comply with the following dietary and sexual edicts, designed to purify body and soul:

     a.     Seven days prior to involvement in any ayahuasca ceremony, refraining from:

          i.     Drug use, including prescription drugs (medical interaction forms, including in the supplement to this religious exemption application provide further instruction), and any and all recreational drugs.
          ii.     Alcoholic beverages
          iii.     Sexual activity (whether with a partner or from self-stimulation).

     b.     Three days prior to involvement in any ayahuasca ceremony, refrain a wide variety of foods and beverages.  See Exhibit 1.

    c.      All Plaintiff Soul Quest Church's facilitators are expected to fast for the period spanning the day prior to any ayahuasca ceremony, through to completion of any ceremony. In doing so, those individuals also demonstrate a commitment to the Great Spirit as embodied within the plant medicine, and prepare for acting as a surrogate for the Great Spirit during the ayahuasca ceremony. See Exhibit 1.

*g.*    *Church Governance*

43.    Ultimate authority lies in the Creator/Great Spirit of Ayahuasca as the head of the church and in the sacred beliefs, and doctrines expressed as the basis for Plaintiff Soul Quest Church's faith and practice.

44.    The government of Plaintiff Soul Quest Church is vested in its membership and administered by its officers. In function, final authority shall reside in the membership.

45.    Plaintiff Soul Quest Church members approve and/or affirm Plaintiff Soul Quest Church's qualified leadership, to carry out the purposes of the spirit of Ayahuasca.

46.    Plaintiff Soul Quest Church's leadership holds leadership meetings to talk, brainstorm and agree on any discipline or change that may be required.

47.    Akin to other religious institutions, Plaintiff Soul Quest Church maintains multiple instruments for governance of its affairs. Presently, this includes the following lay and religious officials/bodies:

    a.    Chief Executive Officer, Chief Medicine Man, Pastor, Chief Elder and Counselor: Plaintiff Christopher Young;

    b.    President, Elder and Counselor: Verena Young;

    c.    Senior Minister: Scott Irwin;

    d.    Senior Medicine Man/Shaman: Don Gaspar;

    e.    Medicine Man/Ayahuascaro: Anthony Chetta;

    f.    Medicine Woman: Tersa Shiki;

g.  Council of Elders: Constituted of selected senior members of Plaintiff Soul Quest Church, and occupying various areas of specialization, as necessary for the maintenance and welfare of the Church.

48.    Further, other officers such as church administrator, secretary, visiting ministers and teachers/elders will be assigned with Board permission.  Presently, pending future growth of the Plaintiff Soul Quest Church, the Senior Pastor fills such duties.

h.    *Membership*

49.    Plaintiff Soul Quest Church receives all individuals as members who accept the spiritual and religious principles of the Church, as well as recognize the fruits of the Great Spirit in their lives, and who agree to abide by Plaintiff Soul Quest Church's doctrine.  The only requirement for membership is a singular request: the individual must express a belief in the foundation principles of the Plaintiff Soul Quest Church.

i.    *Soul Quest Church's Federal & State Religious-Based, Non-Profit Entity Recognition*

50.    Plaintiff Soul Quest Church holds the following federal and state tax treatments as a religious-based, non-profit entity:

a.  Soul Quest Church of Mother Earth Inc. (SQCME) – Non-Profit Corporation Federal Identification No.: 841402813, and Florida State Non-Profit Corporation, founded by Medicine Man, Pastor, Chief Elder and Counselor, Chris Young; and its Elder and Counselor, Verena Young.

b.  Soul Quest Ayahuasca Church of Mother Earth Retreat and Wellness Center (SQACME), as an independent branch or Free Church of SQCME; Florida State Non-Profit Corporation 501 IRS-compliant Non-Profit was first incorporated July 15, 2016, with its Charter Declaration also entered on July 15, 2016, recognizing its founders, Medicine Man,

Pastor, Chief Elder and Counselor Chris Young; and
Elder and Counselor Verena Young.

    2.        Plaintiff Soul Quest Church's Ayahuasca Sacrament

51.    The ayahuasca sacrament is performed three (3) times per month, with approximately 60-80 individuals in attendance, alongside approximately twenty, skilled (20) facilitators (spiritual counselors) also present throughout the sacramental ceremony. These facilitators work alongside a team – at the ceremony – which includes a licensed physician as medical director, a licensed paramedic, a licensed emergency medical technician [hereinafter "EMT"], a psychologist, and a research scientist.

52.    The ayahuasca sacrament involves the consumption of tea using the received wisdom and learning of Plaintiff Soul Quest Church to elevate its petitioners above the mundane world, and so bring them closer to the divine realm.

53.    Plaintiff Soul Quest Church limits attendance (and enhances the ratio of ceremonial facilitators) in order to maximize safety and security to all involved throughout the ritual.

54.    Plaintiff Soul Quest Church has designed and implemented safety and security protocols, intended to maximize the protection of those participants in Ayahuasca ceremonies.

55.    Those individuals designated to conduct and facilitate Plaintiff Soul Quest Church ceremonies must first prove that they have attained the requisite knowledge and expertise in the following areas:

        a.    The Pharmacology of Ayahuasca;
        b.    The Risks & Contra-Indications of Ayahuasca;
        c.    The Legal Implications Surrounding the Dispensing of
               Ayahuasca;
        d.    First Aid;

    e.    The Theory of Non-Ordinary States of Consciousness, and Therapeutic Approaches;

    f.    Possession of Extensive, Prior Personal Experience with Ayahuasca;

    g.    The Ability to Work as a Team Member; and

    h.    Understanding of Soul Quest's Religious Principles, Therapeutic Purposes of Consuming Ayahuasca, and the Fundamental Moral & Ethical Tenets.

56.    Additional measures are imposed to prepare Plaintiff Soul Quest Church members for participation in Ayahuasca ceremonies:

    a.    Prior to any ceremony, the Church transmits, via electronic mail, educational material on Ayahuasca to all members anticipating participation in the Ayahuasca ceremony. It is critical to ensure that members are well-informed regarding the ceremony, and the requirements for properly conducting themselves before, during and after the ceremony. The following information is conveyed to these Soul Quest members:

        i.    The properties of Ayahuasca, its composition, its effects and the potential risk.

        ii.    The implications of drinking Ayahuasca.

        iii.    The dietary restrictions before and after the session.

        iv.    The responsibilities of the staff and the participants.

        v.    The procedure and operation of the session.

        vi.    The process, in its entirety.

    b.    All Plaintiff Soul Quest Church members intending participation in the sacramental ceremonies involving ayahuasca are required to complete and return a medical form prior to participation, to ascertain whether or not there are potential medical limitations to such participation.

    c.    Plaintiff Soul Quest Church conducts individualized interviews with the member intending to participate in the ayahuasca ceremony. The purpose for these interviews is to:

        i.    Establish a rapport with the individual; ascertain their basis and willingness to

                participate in the sacred Ayahuasca ritual; and to qualitatively assess current psychological and physical status; and

    ii.    (Re)assess an individual who has previously participated in the ayahuasca ceremony.

d.    Plaintiff Soul Quest Church presents and explains the mandatory consent form.

e.    Plaintiff Soul Quest Church uses the information gathered through its described written and oral questions/interviews to determine whether or not to permit any given individual to participate in the Church's sacred ayahuasca ceremony. The acceptance of an individual's participation in the ceremony is premised upon:

    i.    Members demonstrating their understanding of the personal, religious process entailed by their participation.

    ii.    Accepting only members whose personal participation is unlikely to require greater assistance (in time or resources) than is available in the current context of the ayahuasca ceremony.

    iii.    Determining whether members perhaps require additional therapy prior to consuming the sacramental ayahuasca tea. Such additional therapy might potentially involve advising the member to seek appropriate, external professional assistance.

f.    In cases where any member's participation in the sacred ayahuasca ceremony is declined by the Church, Plaintiff Soul Quest Church provides that member with an explanation for its decision, and suggests alternative methods for achieving suitable religious and therapeutic fulfillment. If Plaintiff Soul Quest Church determines there to be doubts about any member's suitability, then participation in the ayahuasca ceremony is not permitted.

57.     Further details of the pre-ceremonial, ceremonial and post-ceremonial procedures involving the sacred ayahuasca ceremony are articulated within the Plaintiffs' DEA Exemption Application.  See Exhibit 1.

58.     Despite the efforts made to maximize safety throughout the ayahuasca sacrament, the Plaintiffs have fallen victim to actions by the Defendants to hold such ceremonies, thus abridging fundamental freedoms and statutory rights.

### 3.     Federal Prohibitions on Ayahuasca

59.     The Controlled Substances Act [hereinafter "CSA"] was enacted by Congress to erect prohibitions upon the use of a large variety of identified, controlled substances. 21 U.S.C. § 801, et seq.

60.     To be classified as a controlled substance, a substance must, among others, have a "high potential for abuse." 21 U.S.C. § 812(b)(1)(A).

61.     One of the substances classified as a controlled substance is dimethyltryptamine [hereinafter "DMT"].  21 U.S.C. § 812(c)(c)(6).

62.     DMT is a naturally-occurring substance found in many plants native to the Western Hemisphere, including North America.

63.     None of these plants containing DMT are listed as controlled substances, because the scientific evidence establishes that the DMT contained within these plants is not in a form with a "high potential for abuse." See 21 U.S.C. § 812(c)(a), et seq.

64.     Psychotropia viridis is a small plant, not listed within the CSA, containing trace amounts of DMT.  This plant is part of the Plaintiffs' sacramental tea.

65.     Upon information and belief, DMT is only considered a "substance with a high potential for abuse" when its synthetic form is either taken intravenously or inhaled.

66.     By contrast, the Plaintiffs' sacramental tea is a natural, organic, and non-synthetic sacrament. In addition, the natural processes of digesting this organic sacrament further reinforce and ensure that the DMT entering the body through the Plaintiffs' sacramental tea cannot become a substance with a "high potential for abuse."

   4.     <u>Defendants' Actions to Undermine the Plaintiffs' Rights</u>

67.     Consistent with the United States Supreme Court's decision in <u>O Centro</u> <u>supra</u>, the Plaintiffs – in August 2017 – submitted the aforementioned DEA Exemption Application to the Defendants.   Since that time, despite Plaintiffs' repeated efforts to gauge the status of their DEA Exemption Application, the Defendants have failed to act upon the application. Instead, the Defendants have locked up the DEA Exemption Application in a state of limbo.

68.     The Plaintiffs' DEA Exemption Application describes, in painstaking fashion, Plaintiff Soul Quest Church's eligibility for the faith-based exemption to the proscriptions imposed under the Drug Enforcement Act.  <u>See</u> <u>Exhibit 1</u>.

69.     The Defendants appear to have not even put into place any real procedure for processing the application, much less one narrowly tailored to minimize the impact upon the ability of citizens to freely exercise religious-based practices.

70.     The Plaintiffs assert that the failure of the Defendants to abide by the <u>O Centro</u> decision, and its jurisprudential progeny; the strictures of the RFRA; and even to established DOJ policies pertaining to the free exercise of religious practices have resulted in a direct abridgement of their rights, as articulated, herein. <u>See</u> <u>O Centro</u>, <u>supra</u>; 42 U.S.C. §

2000bb. et seq.  A copy of the established, internal DOJ policies that the Defendants' conduct violated is attached hereto, and incorporated by reference herein, as Exhibit 5 and Exhibit 6, respectively.

## COUNT ONE

## VIOLATION OF PLAINTIFFS' FIRST AMENDMENT RIGHTS TO FREEDOM OF RELIGION
### (42 U.S.C. § 1983)

71.     Plaintiffs re-allege, and incorporate by reference herein, the allegations of paragraphs 1-70, as if fully set forth herein.

72.     The Plaintiffs, as individual and corporate citizens of the United States of America, have an inalienable right to practice their religion freely.

73.     The Defendants, as the sole entities with the ability to grant religious exemptions to churches and faiths similarly-situated to the Plaintiffs, carry the burden of interpreting and enforcing the laws of the United States so as not to infringe upon valid exercises of the First Amendment right to freedom of religion.

74.     The Defendants' absolute silence upon Plaintiffs' DEA Exemption Application, a silence that has now extended for years without follow-up from the Defendants, constitutes an effective denial through silence of the Plaintiffs' application.

75.     For the reasons set forth in this Complaint and the attached Exhibits, the Plaintiffs' religious requirement to use ayahuasca is part of a legitimate religious ritual, and one with deep significance to the members of the Plaintiff Soul Quest Church.

76.     Therefore, the Defendants' denial through silence of Plaintiffs' valid application constitutes an infringement of the Plaintiffs' rights arising under the Freedom of Religion clause of the First Amendment to the United States Constitution.

## COUNT TWO

### VIOLATION OF THE RELIGIOUS FREEDOM RESTORATION ACT
#### (42 U.S.C. §§ 2000bb–2000bb-4)

77.     Plaintiffs re-allege, and incorporate by reference herein, the allegations of paragraphs 1-76 as if fully set forth herein.

78.     The Defendants have, through silence, burdened the Plaintiffs' legitimate exercise of their religion.

79.     The Religious Freedom Restoration Act obligates the Defendants to refrain from burdening the Plaintiffs' lawful exercise of their faith unless the Defendants can show that such a burden both furthers a compelling government interest, and is the least-restrictive means of furthering that compelling interest.  See 42 U.S.C. § 2000bb-1(b).

80.     Despite years of time in which to act, the Defendants have not been able to provide any evidence of a compelling governmental interest they are preserving, or any indicia to suggest that the Defendants' silence is the least-restrictive means of preserving that interest.

81.     Therefore, the Defendants have violated Plaintiffs' rights under the Religious Freedom Restoration Act.

### COUNT THREE

### VIOLATION OF THE PLAINTIFFS' RIGHTS TO PROCEDURAL DUE PROCESS
#### (42 U.S.C. § 1983)

82.     Plaintiffs re-allege, and incorporate by reference herein, the allegations of paragraphs 1-81, as if fully set forth herein.

83.     The Defendants have, as part of the judicial mandate to allow exemptions pursuant to RFRA to individuals like the Plaintiffs, promulgated a set of "guidelines" to the public, which purport to govern filings for this type of exemption.  See Exhibit 2.

84.     Upon information and belief, the Defendants continue to abide by these guidelines to the present day.

85.     Part of these guidelines obligate the Defendants to, if they accept an application for filing, to provide a "notice of acceptance" to the applicant.  See Exhibit 2.

86.     If the Defendants should deny an application, these guidelines obligate the Defendants to return the application to the applicant "with a statement of the reason for not accepting the petition for filing."  See Exhibit 2.

87.     However, as discussed, supra, the Defendants have taken neither step with regards to the Plaintiffs' application, and, instead, the Defendants have remained silent upon the Plaintiffs' application for several years, effectively denying it without granting the Plaintiffs access to a fair and timely consideration of their application.

88.     Therefore, the Defendants have violated the Plaintiffs' right to procedural due process, arising under the Fourteenth Amendment to the United States Constitution.

## COUNT FOUR

## VIOLATION OF THE PLAINTIFFS' RIGHT TO SUBSTANTIVE DUE PROCESS
### (42 U.S.C. § 1983)

89.     Plaintiffs re-allege, and incorporate by reference herein, the allegations of paragraphs 1-88 as if fully set forth herein.

90. The guidelines promulgated by the Defendants obligate the Defendants to provide reasons to the applicant for an exemption, both in case of a denial at the application stage, and in case of a final denial of the application.

91. However, at no point in Defendants' guidelines do the Defendants ever explain what they will be searching for in an application, or what reasons may compel the Defendants to refuse to accept an application for filing, or what may lead to a denial of an application.

92. The Defendants can, therefore, deny any application for any reason.

93. The Defendants' ongoing silence concerning the Plaintiffs' DEA Exemption Application constitutes a denial of the Plaintiffs' application through this silence.

94. As stated, supra, the Defendants have never provided any reasons for this denial to the Plaintiffs, nor is it clear from the Defendants' guidelines what any such "reason" would be or consist of.

95. Therefore, the Defendants' guidelines empower them to arbitrarily approve or deny an application for a religious exemption, like the Plaintiffs'.

96. In addition, nowhere in the Defendants' guidelines does it state how long the Plaintiffs, or another similarly-situated applicant, will be expected to wait for their application to be processed.

97. Thereby, even if Plaintiffs' application were accepted for filing, the Defendants could simply continue to remain silent for an indeterminate period of time.

98. Therefore, the Defendants' guidelines leave Plaintiffs with no idea of how their application will be judged, or how long it may take the Defendants to do so.

99.     Therefore, the processing of the Defendants' application under the Defendants' guidelines should be deemed an arbitrary one, in terms of both content evaluation and the time in which the Defendants have to respond to the Plaintiffs' application.

100.    Therefore, the Defendants' processing of the Plaintiffs' DEA Exemption Application under these guidelines constitutes an arbitrary government act, in violation of the Plaintiffs' right to substantive due process under the Fourteenth Amendment to the United States Constitution.

## COUNT FIVE

## VIOLATION OF PLAINTIFF'S RIGHT TO FREEDOM OF SPEECH
### (42 U.S.C. § 1983)

101.    Plaintiffs re-allege, and incorporate by reference herein, the allegations of paragraphs 1-100, as if fully set forth herein.

102.    As is fitting for a religion based around ayahuasca, the Plaintiffs' ongoing proselytization and promotional efforts around the United States feature ayahuasca heavily.

103.    As discussed, supra, the Defendants' denial through silence and inaction of the Plaintiffs' application for a religious exemption effectively functions as a prior restraint upon the Plaintiffs' speech.

104.    The Defendants' denial through silence and inaction of the Plaintiffs' application for a religious exemption therefore severely burdens the Plaintiffs' rights to freedom of speech, in violation of the First Amendment to the United States Constitution.

## PRAYER FOR RELIEF

WHEREFORE, for all the foregoing reasons, the Plaintiffs respectfully request that this Court grant the following relief:

a.      declare that the Defendants' actions in denying the Plaintiffs' application through silence are in violation of the Plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution, and the Religious Freedom Restoration Act;

b.      declare that the Defendants' promulgated guidelines to the public are an arbitrary government action, in violation of the Plaintiffs' rights under the Fourteenth Amendment to the United States Constitution;

c.      enter an Order that, within 30 days of the aforementioned declaratory relief, the Parties present to the Court a plan to effectuate the importation, distribution, and accounting for the Plaintiffs' sacramental tea consistent with the rights of the Plaintiff to use their sacramental tea in their religious services;

d.      enter an Order permanently enjoining the Defendants from enforcing the prohibitions of the Controlled Substances Act against the Plaintiffs for the Plaintiffs' sacramental use of ayahuasca;

e.      enter an Order awarding the Plaintiffs attorneys' fees, costs, and expenses, pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504, and the Civil Rights Attorneys' Fees Award Act of 1976, 42 U.S.C. § 1988; and

f.      award such other and further relief as this Court deems proper.

## VERIFICATION OF FACTUAL ALLEGATIONS IN COMPLAINT

With respect to the factual allegations in the instant Complaint, I, Christopher Young, Plaintiff herein, declare (certify, verify, or state) under penalty of perjury that the foregoing factual allegations are true and correct, as provided in 28 U.S.C. § 1746.

Executed on this _18th_ day of April, 2020.

**CHRISTOPHER YOUNG**

**Dated this _18_ day of April 2020.**

Respectfully submitted,

By: _s/Derek B. Brett_
**DEREK B. BRETT, ESQ.**
Fla. Bar No. 0090750
**BURNSIDE LAW GROUP**
109 Ilsley Avenue, Suite 9
Halifax, Nova Scotia B3B 1S8
Telephone:      (902) 468-3066
Facsimile:      (902) 468-4803
Email: dbb@burnsidelaw.net
Lead Counsel for Plaintiffs

s/A. Brian Phillips
**A. BRIAN PHILLIPS, ESQ.**
Fla. Bar No. 0067113
**A. BRIAN PHILLIPS, P.A.**
912 Highland Avenue
Orlando, Florida 32803
Telephone:      (407) 872-0777
Telecopier:      (407) 872-0704
Email: brian.phillips@phillips-law-firm.com
Local Counsel for Plaintiffs