UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| SOUL QUEST CHURCH OF MOTHER EARTH, INC., a Florida Domestic Non-Profit Corporation, on its own behalf and on behalf of its members; and CHRISTOPHER YOUNG, individually and as spiritual leader of Soul Quest Church of Mother Earth, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Case No. 6:20-cv- |
| WILLIAM BARR, Attorney General of the United States of America; UTTAM DHILLON, acting administrator of the U.S. Drug Enforcement Administration; and the U.S. DRUG ENFORCEMENT ADMINISTRATION, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## PLAINTIFFS' PETITION FOR
## PRELIMINARY INJUNCTION AND SUPPORTING MEMORANDUM OF LAW

COME NOW, the Plaintiffs, Soul Quest Church of Mother Earth, Inc., a Florida Domestic Non-Profit Corporation, on its own behalf and on behalf of its members, and Christopher Young, individually and as the spiritual leader of Soul Quest Church of Mother Earth (hereinafter, collectively, "Plaintiffs"), by and through the undersigned counsel, respectfully move, pursuant to Fed. R. Civ. P. 65 and M. D. Fla. Local Rules 4.05 and 4.06, for this Court to enjoin the Defendants from prosecuting and arresting the Plaintiffs, and the members of Plaintiff Soul Quest Church. As required by M. D. Fla. Local Rule 4.05, this

Petition is supported by a Verified Complaint, filed contemporaneously with this Motion, and by the Declaration of Plaintiff Christopher Young, attached hereto as <u>Exhibit 1</u>.  In support thereof, Plaintiffs state as follows:

## I.    **INTRODUCTION**

1.      Determined to exercise its authority without regard for judicial mandates or the Plaintiffs' valid, expressed religious needs, the Defendants have unlawfully impeded and, indeed, entirely barred Plaintiffs from practicing their religious faith.  The Defendants' conduct at issue here, as fully set forth in the Plaintiffs' Verified Complaint, show the lengths to which the Defendants have gone to persecute Plaintiffs' minority religion, and deny Plaintiffs their Constitutional right to practice their faith.

2.      The Defendants have violated, and continue to violate, the Plaintiffs' rights under the First Amendment to the United States Constitution to practice their religion and to free speech, and the Plaintiffs' rights under the Due Process Clause of the Fifth Amendment. The continuing threat of arrest and prosecution against the Plaintiffs, and the members of Plaintiff Soul Quest Church, Inc. (hereinafter, "Soul Quest Church"), and the continuing failure to process the Plaintiffs' request for a religious exemption, have placed the Plaintiffs into a position where they are unable to freely practice their sacred religious practices; likewise, there remains an ongoing, imminent threat of harm stemming from the prospect of arrest and prosecution.

3.      As set forth below, the Plaintiffs establish all four elements for entry of a preliminary injunction. "Because Plaintiffs' First Amendment rights are at risk via direct penalization by the government, an injunction is the proper remedy."  <u>The Complete Angler,</u>

LLC v. the City of Clearwater, 607 F. Supp. 2d. 1326, 1335 (M. D. Fla. 2009) (citing to KH

Outdoor, LLC v. City of Trussville, 458 So. 2d 1261, 1271-71 (11th Cir. 2006)).

      4.      First, the Plaintiffs are likely to succeed on the merits, as the Defendants'

conduct is unconstitutional both on its face and as-applied, as they have impermissibly

punished, and continue to seek to punish, the Plaintiffs for practicing their religion, in addition

to actively denying the Plaintiffs the right to seek redress of their grievances, and by insisting

that the Plaintiffs so petition through a byzantine and unclear system. Second, each day that

the Plaintiffs are prohibited from practicing their religion through these threats and denied

rights to fairly petition for redress of same, constitutes an irreparable injury that cannot be

redressed except through injunctive relief. Third, the Defendants' conduct does nothing to

protect the public interest. Finally, no bond should be required, as none is appropriate where

the Plaintiffs, as here, allege the infringement of a fundamental Constitutional right.

## FACTS

      5.      Plaintiff Soul Quest Church is a registered domestic non-profit corporation

incorporated under the laws of the State of Florida, with a principal office located in Orlando,

Florida.

      6.      A copy of Plaintiff Soul Quest Church's faith-based principles is attached

hereto, and incorporated by reference herein as Exhibit 2.

      7.      A copy of Plaintiff Soul Quest Church's fundamental moral and ethical tenets

is attached hereto, and incorporated by reference herein as Exhibit 3.

      8.      A copy of Soul Quest Church's scriptural and liturgical foundations, and Soul

Quest Church's mission statement, is attached hereto, and incorporated by reference herein

as Exhibit 4.

9.      A copy of Soul Quest Church's religious holiday calendar is attached hereto, and incorporated by reference herein as Exhibit 5.

10.     A copy of Soul Quest Church's dietary and fasting rituals is attached hereto, and incorporated by reference herein as Exhibit 6.

11.     A copy of Soul Quest Church's documents setting out its governance is attached hereto, and incorporated by reference herein as Exhibit 7.

12.     A copy of Soul Quest Church's documents setting out the roles and responsibilities of its members is attached hereto, and incorporated by reference herein as Exhibit 8.

13.     A copy of Soul Quest Church's federal and state incorporation documents, demonstrating its purpose as a religious non-profit institution, is attached hereto, and incorporated by reference herein as Exhibit 9.

14.     Sacramental use of ayahuasca plays a central role in Soul Quest Church's theology and religious practice, and the Spirit of Ayahuasca is the head of Soul Quest Church. See Exhibits 2-9.

15.     Ayahuasca is a sacramental beverage prepared from the Banisteriopsis caapi vine, and the Psychotropia viridis vine.

16.     Psychotropia viridis contains trace amounts of the substance N,N-5,5-dimethyltryptamine ("DMT").

17.     DMT is listed as a Schedule I controlled substance in the Controlled Substances Act ("CSA"). 21 U.S.C. § 812(c)(c)(6).

18.     Therefore, the Plaintiffs are not able to import substances containing DMT, including the Plaintiffs' sacramental ayahuasca.

19.    In light of ayahuasca's importance to the Plaintiffs' sincere religious beliefs, and the Controlled Substances Act's prohibition upon DMT, the Plaintiffs filed a religious exemption application with the Defendants on or about August 21, 2017.  A copy of the Plaintiffs' application for a religious exemption is attached hereto, and incorporated by reference herein as Exhibit 10.

20.    In drafting this application, the Plaintiffs made use of a "guide" to the filing of religious exemptions, proffered to the public by the Defendants as a purported aid to follow during the process. A copy of this "guide" is attached hereto, and incorporated by reference herein as Exhibit 11.

21.    While Plaintiffs' application for a religious exemption is pending, the Plaintiffs are prohibited by the Defendants from importing their sacramental ayahuasca. See Exhibit 11 at § 7.

22.    From the day the Plaintiffs filed their application to the present, the Plaintiffs have routinely made inquiries to the Defendants as to the status of their application.

23.    Despite the Plaintiffs' diligent efforts in preparing and submitting an application, the Plaintiffs have never received any sort of notification that their application has ever been "accepted for filing." See Exhibit 11 at § 4.

24.    The passage of time does not appear to have led to progress upon the Plaintiffs' religious exemption application, as routine efforts by the Plaintiffs to inquire about the status of their religious exemption application have never received a firm response as to its status.

25.     After years spent pursuing an exemption application, apparently in vain, while their rights are being denied them, futilely waiting for the Defendants to take action, the Plaintiffs have turned to this Court, seeking relief.

## PLAINTIFFS MEET ALL REQUIREMENTS FOR A PRELIMINARY INJUNCTION

### A.     Plaintiffs are Likely to Succeed on the Merits.

As discussed, supra, ayahuasca plays a central role within the Plaintiffs' religion. See Exhibits 2-9. The Plaintiffs believe that, through careful and measured consumption of ayahuasca within a religious ritual, they become closer to the divine. Id. Therefore, the Defendants' conduct prohibiting the Plaintiffs from practicing their religion without interference violates the Plaintiffs' rights under both the First Amendment of the United States Constitution, and the Religious Freedom Restoration Act.

In addition, the Defendants' conduct also infringes upon the Plaintiffs' rights to procedural and substantive due process, due to unrestrained arbitrariness within the Defendants' "guide" to those filing religious exemption applications, and the Defendants' failure to provide Plaintiffs notice and a chance to be heard before effectively denying their religious exemption application through inaction.

Finally, the Defendants' conduct infringes upon the Plaintiffs' rights to freedom of speech by creating an unlawful prior restraint, without a compelling interest. In addition, the actions taken by the Defendants to restrict the Plaintiffs' rights are far from the least restrictive means.

1.    <u>The Defendants' Conduct Violates Plaintiffs' Rights to Freedom of Religion, Under the First Amendment and the Religious Freedom Restoration Act.</u>

Jurisprudence surrounding the Free Exercise Clause of the First Amendment to the United States Constitution was upended in 1990, when the Supreme Court decided the case of <u>Employment Div., Dept. of Human Resources of Oregon v. Smith</u>, 494 U.S. 874 (1990). This case "largely repudiated the method of analyzing free-exercise claims that had been used in cases like <u>Sherbert v. Verner</u> and <u>Wisconsin v. Yoder</u>." <u>Burwell v. Hobby Lobby Stores, Inc.</u>, 573 U.S. 682, 691 (2014) (internal citations omitted). In response to <u>Employment Div., Dept. of Human Resources of Oregon v. Smith</u>, the United States Congress passed the Religious Freedom Restoration Act (hereinafter, "RFRA") three years later. 42 U.S.C. § 2000bb(a)(4).

RFRA operates to explicitly restore the "compelling-interest test as set forth in <u>Sherbert v. Verner</u>, and <u>Wisconsin v. Yoder</u>." 42 U.S. Code § 2000bb(b)(1). To succeed upon a free-exercise claim under this test, the Plaintiff[s] must show the existence of three separate elements:

(1)    That the Plaintiff[s]' religious practice has been substantially burdened by a governmental act;

(2)    Once the Plaintiff[s] have demonstrated that their religious practice has been substantially burdened by governmental acts, the Defendants must demonstrate that its actions serve a compelling governmental interest; and

(3)    The Defendants must also show that the governmental acts performed in furtherance of this compelling interest are the least restrictive means available to further that governmental interest.

<u>Hobby Lobby Stores</u>, 584 U.S. at 692.

As will be demonstrated, the Defendants undoubtedly <u>have</u> substantially burdened the Plaintiffs' religious practice by refusing to grant the Plaintiffs a religious exemption to the Controlled Substances Act. In addition, the government will be unable to demonstrate that its actions serve a compelling governmental interest. Finally, the government will be unable to show that the means it has chosen to employ against the Plaintiffs are the least restrictive means.

As discussed, <u>supra</u>, ayahuasca plays a major role in the Plaintiffs' religious beliefs and traditions. <u>See Exhibits 1, 2, & 10</u>. Not only do Plaintiffs believe that consumption of sacramental ayahuasca elevates them closer to the divine, a significant portion of the Plaintiffs' liturgy stems from the revelations that the Plaintiffs have received from the spirit of ayahuasca. <u>Id.</u> The Plaintiffs sincerely believe that they are divinely commanded to consume ayahuasca to become closer to the divine, and to spread the truths of the Spirit of Ayahuasca to the world. <u>Id.</u> The Defendants' actions therefore substantially burden the Plaintiffs' religious practices in at least two ways: (1) the Plaintiffs are denied the ability to speak the truth of a significant aspect of their religious beliefs to others; and, (2) the Plaintiffs are prevented from consuming their religious sacraments. <u>Id.</u> Therefore, the Defendants' actions undoubtedly place a substantial burden upon the Plaintiffs' religious practices.

In a case very similar to the present case, the Defendants claimed that their application of the Controlled Substances Act furthered three compelling governmental interests: "protecting the health and safety of UDV members, preventing the diversion of [ayahuasca] from the church to recreational users, and complying with the 1971 United Nations Convention on Psychotropic Substances, a treaty signed by the United States and implemented by the Act." <u>Gonzales v. O Centro Espírita Beneficente União do Vegetal</u>, 546 US 418, 426

(2006). However, the Supreme Court rejected such a categorical recitation of compelling interests, instead requiring the Defendants to "demonstrate that the compelling interest test is satisfied through application of the challenged law 'to the person' —the particular claimant whose sincere exercise of religion is being substantially burdened." Id. at 430-431. As will be demonstrated, the Defendants cannot make such a showing.

In O Centro Espirita, the Supreme Court observed that the mere fact that Congress had "determined [the psychotropic component of ayahuasca] should be listed [as a Schedule I controlled substance]" of the Controlled Substances Act was an insufficient showing to relieve the Defendants of their burden under RFRA. O Centro Espirita, 546 U.S. at 432. Similar logic should control in the instant case, and operate to deny any and all efforts by the Defendants to justify their actions under the Controlled Substances Act, because the Plaintiffs' religious use of sacramental ayahuasca is not only carefully controlled and managed by the Plaintiffs, but also because religious exemptions to Schedule I drugs are expressly contemplated by RFRA. Id. at 433 (discussing the long-standing religious exemption for the religious use of peyote, another drug regulated by the Controlled Substances Act).

In the past, the Defendants have also raised the compelling governmental interest of preventing diversion of ayahuasca from religious use. Id. at 426. In the present case, the Plaintiffs have made a verified showing of their policies and procedures designed to both ensure that none of the Plaintiffs' religious sacraments are diverted to any other use, and that medical health facilities are readily available in case of emergency. See Exhibit 10. Even if the Defendants should be able to muster evidence to the contrary, the Supreme Court has held that equality in evidence is not sufficient for the Defendants to have demonstrated a compelling governmental interest. O Centro Espirita, 546 U.S. at 426-427. To date, the

Defendants have provided the Plaintiffs with no evidence whatsoever that would make diversion a compelling government interest in the present case.

The Supreme Court has also observed that the claim of a compelling governmental interest, and reliance, upon the 1971 United Nations Convention on Psychotropic Substances (hereinafter, the "Convention"), even if ayahuasca is included therein, is a tenuous claim at best because the Controlled Substances Act implements the Convention in American law. Id. at 438. Therefore, to properly advance a compelling government interest arising from the need to enforce American obligations under the Convention, the Defendants would need to introduce "evidence addressing the international consequences of granting a[] [religious] exemption for the Plaintiff[s]." Id. To date, the Defendants have provided the Plaintiffs with no evidence whatsoever that would make international consequences a compelling government interest in the present case.

Nor can it be said that the Plaintiffs' sacramental tea poses any significant health risks. The Plaintiffs' sacramental ayahuasca is chemically akin to the Daime tea consumed by members of the Santo Daime faith, in that both are prepared from the Banisteros caapi vine and the leaves of the Psychotropia viridis plant using the same methodology. Church of the Holy Light of the Queen v. Mukasey, 615 F. Supp. 2d. 1210, 1215 (D. Oregon 2009) (hereinafter, "CHLQ"). This method of preparation has been observed to make the DMT in Daime tea, and the Plaintiffs' sacramental ayahuasca, "far less potent" than synthetic injection or inhalation of DMT in its pure form. Id. at 1215. At this level of potency, consumption of Daime tea and similar beverages has actually been observed to have the following positive effects:

1)   Assistance in overcoming alcohol dependency and abuse; and,

2) Loss of interest in 'habitual use of alcohol, cocaine, and other addictive substances'; and,

3) Amelioration of anxiety and panic symptoms.

Id. at 1215-1218; see also United States v. Hoffman, 4:19-cr-00693, at pp. 6-14 (D. Ariz., 2020) (holding that the provision of aid could be a religious activity entitled to RFRA protection).

In addition, there was no evidence adduced to suggest that the consumption of Daime tea, or the chemically similar sacramental ayahuasca that the Plaintiffs employ, could contribute to any form of a psychotic episode. CHLQ, 615 F. Supp. 2d, at 1216. Therefore, the Defendants cannot reasonably claim that the consumption of the Plaintiffs' sacramental ayahuasca is likely to cause any form of adverse health effects.

Even if the Defendants could demonstrate that they had a compelling government interest, the Defendants must also justify the means they have chosen to further that compelling interest as being the least restrictive means available. See, e.g., Hobby Lobby Stores, 573 U.S. at 720; Sherbert v. Verner, 374 U.S. 398, 406 (1963). The Defendants are unlikely to be able to do this, because the Plaintiffs – entirely on their own initiative, and out of respect for their belief in the sacred nature of ayahuasca and the health of the members of their church – have already implemented considerable policies and procedures to both prevent against diversion, and to ensure the health of its members. Exhibit 10, at pp. 14-17.

Therefore, the Plaintiffs have a strong likelihood of success at trial on the merits of their claims arising under the First Amendment to the United States Constitution and the Religious Freedom Restoration Act, and thereby meet this element of the test for issuance of a preliminary injunction with regards to these claims.

2.    The Defendants' Conduct Violates the Plaintiffs' Rights to
Procedural Due Process.

The Fifth Amendment to the United States Constitution clearly states that no individual's liberty or property is to be taken from them without "due process of law." U.S. Const. Amend. V.  Procedural due process, an aspect of the overall right to due process of law, "imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth. . . Amendment." Mathews v. Eldridge, 424 U.S. 319, 332 (1976). In determining whether or not a plaintiff's right to procedural due process has been violated, courts answer the following three questions:

(1)    Have the Plaintiffs suffered an identifiable loss of liberty or deprivation of property?

(2)    If so, is the liberty lost or property taken within the contemplation of the Due Process Clause?

(3)    Once it has been determined that due process applies, what procedure is due?

Morrissey v. Brewer, 408 U.S. 471, 481 (1973).

Here, the Plaintiffs have undeniably suffered a recognizable loss of liberty.  As discussed, supra, the Defendants' unexplainable delay in processing the Plaintiffs' application for a religious exemption, or communicating with them upon its merits, operates as a functional denial – thereby leaving the Controlled Substances Act's prohibition of ayahuasca in effect, and the Plaintiffs unable to fully practice their sincere religious beliefs. See Exhibit 10, at § 7.

Through this arbitrary and unexplainable silence upon even the status, much less the essentials, of the Plaintiffs' religious exemption application – a silence that has now lasted over

two and a half years – the Defendants have completely denied the Plaintiffs their right to notice and to be heard before a final decision is made. <u>Fuentes v. Shevin</u>, 407 U.S. 67, 80 (1972) (citing to <u>Baldwin v. Hale</u>, 1 Wall. 223, 233 (1863); <u>Windsor v. McVeigh</u>, 93 U.S. 274 (1876); <u>Hovey v. Elliott</u>, 167 U.S. 409 (1897); and <u>Grannis v. Ordean</u>, 234 U. S. 385 (1914)). Consequently, the Plaintiffs have suffered, and continue to suffer, an identifiable loss of liberty. The Defendants have denied the Plaintiffs their right to notice and be heard.

Unquestionably, the right to notice and to be heard is within the contemplation of the Due Process Clause. The United States Supreme Court held that the right to notice and to be heard is a "fundamental requirement of due process." <u>Armstrong v. Manzo</u>, 380 U.S. 545, 552 (1965). Additionally, the lack of proper notice and/or an opportunity to be heard has, standing alone, been deemed a sufficient reason to merit full reversal upon due process grounds. <u>Armstrong</u>, 380 U.S. at 552. Therefore, the Constitutional right to notice and be heard in a reasonable time and manner is within the contemplation of the Due Process Clause.

In determining what procedures are due, the Plaintiffs respectfully request this Court observe that the Defendants' own proffered "guide" does <u>attempt</u> to set out several procedures, of which notice and the right to be heard are a part. <u>See</u> Exhibit 11. However, as discussed, <u>infra</u>, the Defendants' "guide" does not contain any requirement whatsoever that these notices and opportunities to be heard be granted at <u>any</u> time, much less a reasonable or meaningful one. <u>See</u>  Exhibit 11 at §§ 4 (Petitioners <u>should</u> receive notice of any acceptance or incompleteness in their religious exemption applications, but no timeframe for this is provided), 8 (Petitioners <u>should</u> receive notice of the final determination of their application, <u>including a statement of the reasons</u> relied upon by the Defendants in making their final decision, but no timeframe for this is provided). Therefore, the Plaintiffs therefore request

this Court issue a judgment declaring that the Defendants must grant applicants for religious exemptions their Constitutional rights to notice and an opportunity to be heard within a reasonable time and in a meaningful manner.

Therefore, the Plaintiffs are likely to succeed at trial upon their procedural due process claim, due to the Defendants' actions denying the Plaintiffs their Constitutional right to notice and to be heard without due process of law.

<blockquote>3.    <u>The Defendants' Conduct Violates the Plaintiffs' Rights to Substantive Due Process</u>.</blockquote>

The Due Process Clause of the Fifth Amendment reads as follows: "No State shall . . . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV. The right to "worship God according to the dictates of [an individual's] own conscience" has long been held to be one of these fundamental liberties protected by the Due Process Clause. <u>Meyer v. Nebraska</u>, 262 U.S. 390, 399-400 (1923).

Yet, this is precisely what the Plaintiffs seek to do in the instant case, and are being barred from doing by the Defendants' constitutionally unjustifiable actions that directly hamper the Plaintiffs' sincere religious beliefs. <u>See, e.g.</u>, <u>Wisconsin v. Yoder</u>, 406 U.S. 205, 235-236 (1972). In order to ensure that Americans receive due process of law, courts have recognized that the guarantee of due process extends beyond the procedural aspect of law, to encompass the underlying, substantive elements of these procedures. <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 836 (1998).

The constitutional right to substantive due process of law requires that government acts which deprive an individual of life, liberty, or property be done in a fair and just manner, and be governed by appropriate standards, to remove arbitrariness and unfettered discretion

by government officials. <u>See, e.g.</u>, <u>Santosky v. Kramer</u>, 455 U.S. 745, 762 (1982) (deeming unconstitutional those procedures which were "unusually open to the subjective values of the" factfinder. <u>Meyer</u>, 262 U.S. at 403  (deeming unconstitutional laws which were "arbitrary and without reasonable relation to any end"); <u>Wolff v. McDonnell</u>, 418 U.S. 539, 558 (1974) (observing that the "touchstone of due process is protection of the individual against the arbitrary actions of government"). In the present case, there can be no doubt that the Plaintiffs have a right to practice their religion as they see fit, and that the Defendants are acting to deny Plaintiffs this right via the arbitrary and unreasonable guidelines by which the Defendants evaluate religious exemption applications, like the one filed by the Plaintiffs in the instant case. <u>Exhibit 11</u>.

As the Defendants' "guide" to the public seeks to tell the tale, the process of filing a religious application is a straightforward one.  Individuals must:

1)    Develop a petition containing an argument discussing why the Plaintiffs are entitled to this religious exemption;

2)    Sign this petition under penalty of perjury;

3)    Have their petition be accepted for filing by the DEA;

4)    Supply any and all additional information the DEA requests; and

5)    Refrain from "engag[ing] in any activity prohibited under the Controlled Substances Act" until receiving the DEA's final determination.

<u>See Exhibit 11</u>.

However, upon closer review, the subjectivity and arbitrariness of the Defendants' religious exemption "guide" becomes apparent.

The subjective and arbitrary nature of the Defendants' religious exemption application process is made apparent very early on, when an applicant has submitted their application and

is waiting to hear if it has been accepted for filing. In their "guidance," the Defendants have stated that only a "complete" application will be accepted for filing, while an incomplete application will be rejected. Exhibit 11, at § 4. However, the Defendants never state what an applicant must provide for an application to be complete, instead merely stating what an applicant "may" provide - and then moot even that very low bar, by stating that a petitioner is "not limited to the topics" the Defendants' "guide" suggests. Exhibit 10, at § 2. Even at this most basic level, of simply determining whether or not an application is "complete" enough to be accepted for filing - much less any form of actual review - the Defendants' version of this process is "unusually open to the subjective values" of whomever is examining such an application for completeness due to the lack of standards defining a "completed" application, and is therefore a violation of the Plaintiffs' right to substantive due process under the United States Constitution. Santosky, 455 U.S. at 762 (1982).

Even upon a cursory review, the lack of standards governing how the Defendants purport to evaluate the voluminous information they request be part of a religious exemption application is apparent. Exhibit No. 11, at § 2. The Defendants suggest that applicants submit information upon a wide variety of complex topics, ranging from historical data to canonical law and its interpretations, even to physical security measures and import/export policies. Id. Consolidating such widely disparate subjects and technical subjects into one opinion, without established guidelines, undoubtedly crosses the line into prohibited arbitrariness by granting an unknown, unqualified decisionmaker unfettered authority to employ their own, subjective, judgment.[1]

---

[1] The Defendants' "guide" permits an applicant to supply "any and all information [they] believe relevant to the DEA's determination." Exhibit 11, at § 2. Given this unlimited scope

Another significant omission from the Defendants' "guide" is the lack of mention of time constraints or estimations. See, e.g., Exhibit No. *11*, at § 4 (requiring Defendants to give notice, but not stating a timeframe for the issuance of this notice), Id. at § 8 (never stating when an applicant can expect a final determination). This carries particular weight in context of the Defendants' expressed desire that applicants not practice their religion until a final determination has arrived. Exhibit 11, at § 7. Without mention of a time constraint, even in the most general language,[2] the Defendants have granted themselves the ability to infringe upon an applicant's First Amendment rights for an indeterminate and arbitrary period of time, simply by remaining silent upon an application or claiming that it is "being processed" or "still under review." See Exhibit 11.

Effectively, what has resulted from the Defendants' lack of any substantive guidelines over the consideration of and standards for religious exemption applications have left such a process as hopelessly, constitutionally defective.  It is well-settled that the government cannot give public officials unbridled discretion to determine whether a would-be speaker has good cause to speak, or – in the case-at-bar, whether a particular religion can be impacted from the free exercise of its fundamental religious practices.  This is because "unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in

---

of incoming information, an official's reversion to their own subjective judgment appears inevitable under the standards of the Defendants' "guide." It may also be observed that an infinite scope of response, as the Defendants' "guide" contemplates, would require an infinite amount of policies or procedures to properly account for these infinite possibilities.

[2] The Administrative Procedures Act obligates the Defendants to "conclude a matter presented to it," like a request for a religious exemption, in a "reasonable time." 5 U.S.C. § 555(b). This language is not present in the Defendants' guide, and - given the delay of years in the present case - the Defendants have clearly not processed the Plaintiffs' application in a reasonable timeframe.

censorship." <u>Lakewood v. Plain Dealer Publishing Co.</u>, 486 U.S. 750, 757 (1988); <u>see</u> <u>also</u> <u>Saia v. New York</u>, 334 U.S. 558 (1948); <u>Niemotko v. Maryland</u>, 340 U.S. 268 (1951); <u>Kunz v. New York</u>, 340 U.S. 290 (1951); <u>Staub v. City of Baxley</u>, 355 U.S. 313 (1958); <u>Freedman v. Maryland</u>, 380 U.S. 51 (1965); <u>Cox v. Louisiana</u>, 379 U.S. 536 (1965); <u>Shuttlesworth v. Birmingham</u>, 394 U.S. 147 (1969); <u>Secretary of State of Maryland v. Joseph H. Munson Co.</u>, 467 U.S. 947 (1984); <u>FW/PBS, Inc. v. City of Dallas</u>, 493 U.S. 215 (1990); <u>Forsyth County. v. Nationalist Movement</u>, 505 U.S. 123 (1992).

The Supreme Court acknowledged over sixty (60) years ago that

> it is settled by a long line of recent decisions of this Court that an ordinance which . . . makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official—as by requiring a permit or license which may be granted or withheld in the discretion of such official—is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms.

<u>Staub</u>, 355 U.S. at 322. Yet, here, in the case-at-bar, this is exactly what is occurring; the Defendants' religious exemption application process – directly in defiance of the Supreme Court's edicts in <u>O Centro Espirita</u> and even its own departmental directives – permits for unfettered discretion of its officials to deny or 'virtually' pocket veto any religious group's legitimate request for religious exemption.

The hallmark of this unconstitutional state of affairs is borne out by the Defendants' failure to define even the most basic elements of a religious exemption application, having established no standards for the evaluation of religious exemption applications like the Plaintiffs', and having a completely arbitrary amount of time to do so. Consequently, Plaintiffs submit that this constitutes a clear violation of their rights to Due Process under the Fifth Amendment.

4.      The Defendants' Conduct Clearly Violates the Plaintiffs' Rights to Freedom of Speech by Facially Establishing an Impermissible Prior Restraint Upon the Plaintiffs' Speech.

It is axiomatic, and long-standing, law that the "danger of censorship and of abridgment of our precious First Amendment freedoms is too great where officials have unbridled discretion over a forum's use." Southwestern Promotions, Ltd. v. Conrad, 420 US 546, 553 (1975). As discussed, supra, and in Plaintiffs' Verified Complaint, Plaintiff Soul Quest Church actively engages in street-level ministry and proselytization by and through, among other activities, the distribution of flyers discussing the key scriptural and liturgical foundations of the Plaintiffs' religion. A copy of this flyer is attached hereto, and made a part of this motion as Exhibit 12. City streets have long been recognized as public forums, and as such prior restraints upon speech occurring on the street are unlawful. Kunz, 340 U.S. at 293.

In Kunz, the appellant's permit allowing him to perform street-level ministry and proselytization was revoked, due to evidence that the appellant had spoken out against other faiths. Kunz, 340 U.S. at 292. Feeling compelled by faith to proselytize even despite a permit, the Kunz appellant would later be convicted for failure to possess a permit. Id. at 293. In reviewing the record, the Supreme Court observed that there were no applicable standards by which a reviewing official could deny permits "on the basis of his interpretation." Id. The Supreme Court described the New York ordinance before it as one which "gives an... official discretionary power to control in advance the right of citizens to speak on religious matters on the streets." Id. The Supreme Court held the granting of this arbitrary, discretionary, power to constitute an unlawful prior restraint on speech. Id.

Kunz and the present case share many factual similarities, and as such the same logic should control. Like the appellant in Kunz, the Plaintiffs are actively engaged in street-level

ministry and proselytization by and through the dissemination of information about the Plaintiffs' religious beliefs. Exhibits 4-12. Like the officials in Kunz, the Defendants have, under color of authority, effectively barred the Plaintiffs from speaking the truth of their religion, and their viewpoint on the sacred and beneficial aspects of ayahuasca, in a public forum, by subjecting the Plaintiffs to the continued threat of arrest via the provisions of the Controlled Substances Act.

Based upon these similarities, this Court - like the Supreme Court in Kunz - should hold that the Defendants' actions constitute a prior restraint upon the Plaintiffs' speech, and are therefore unconstitutional, for no government can "vest restraining control over the right to speak on religious subjects in an administrative official where there are no appropriate standards to guide his action." Kunz, 340 U.S. at 295.

> **B.     The Balance of Equities Tips in the Plaintiffs' Favor, and a Preliminary Injunction is the Appropriate Remedy.**

Because the Plaintiffs' First Amendment rights are at risk via direct penalization by the government, an injunction is the proper remedy. KH Outdoor, LLC v. City of Trussville, 458 F.3d 1261, 1271-1272 (11th Cir. 2006). There is not, and cannot be, an adequate remedy at law, for "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Id.; Elrod v. Burns, 427 U.S. 347, 373 (1976) (plurality opinion).

A similar balancing of the equities in consideration of the Plaintiffs' claims arising under the Due Process Clause and the Freedom of Speech clause, in light of the most serious

possible injury for each party,[3] similarly favors the Plaintiffs. If the Court should grant Plaintiffs' request for a preliminary injunction, the most serious injury the Defendants can suffer is a judicial mandate to do something that the Defendants are already under judicial, and statutory, mandate to do - come to the bargaining table, and discuss the Plaintiffs' application for a religious exemption. O Centro Espirita, 546 U.S. at 434 (obligating the Defendants to consider and issue requests for religious exemptions). By contrast, the Plaintiffs' most serious injury is already ongoing – as discussed, supra, the Plaintiffs have suffered, and continue to suffer, ongoing irreparable injuries from the deprivation of their Constitutional and statutory rights.

Therefore, the Plaintiffs meet the second prong necessary for issuance of a preliminary injunction, as the balance of equities favors this Court's prevention of further infringement of the Plaintiffs' Constitutional and statutory rights.

   C.      A Preliminary Injunction is in the Public Interest.

The Eleventh Circuit has issued rulings supportive of the principle that an unconstitutional application of laws cannot be said to be in the public interest. See, e.g., The Complete Angler, LLC v. City of Clearwater, Fla., 607 F. Supp. 2d 1326, 1335 (M. D. Fla. 2009). The Defendants' actions, as discussed, supra, violate the Plaintiffs' rights under the First Amendment to the United States Constitution, as well as the Due Process Clause of the Fifth Amendment. See supra. Each of these amendments was enacted and applied to the Constitution in order to prevent precisely the conduct the Defendants are herein engaged in -

---

[3] The Supreme Court of the United States has permitted such a method of balancing the equities in considering whether to grant preliminary injunctions. Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 378 (2008).

the unlawful infringement upon the rights of American citizens. See, e.g., Griswold v. Connecticut, 381 U.S. 479, 493 (1965) (stating that the reason for the enactment of the Bill of Rights was to protect against governmental intrusion into "fundamental personal liberties").

The Plaintiffs therefore meet the third, and final, prong of the test needed for preliminary injunction.

### D.    No Bond Should Be Required.

Pursuant to Fed. R. Civ. P. 65(c), courts "may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." However, "[d]espite the mandatory nature of this language, 'federal courts have come to recognize that the district court possesses discretion over whether to require the posting of security.'" The Complete Angler, 607 F. Supp. 2d at 1335 (*quoting* Popular Bank of Fla. v. Banco Popular de Puerto Rico, 180 F.R.D. 461, 463 (S.D. Fla. 1998).

"Waiving the bond requirement is particularly appropriate where a plaintiff alleges the infringement of a fundamental constitutional right." 607 F. Supp. 2d at 1335-36 (citing All States Humane Game Fowl Org. v. City of Jacksonville, Fla., No. 3:08-CV-312-J-33MCR, 2008 WL 2949442, at *13 (M. D. Fla. July 29, 2008); Johnston v. Tampa Sports Authority, No. 8:05-CV-2191-T-27MAP, 2006 WL 2970431, at *1 (M. D. Fla. Oct. 16, 2006).

Accordingly, Plaintiffs respectfully request that this Court exercise its discretion to waive the bond requirement.

## CONCLUSION

For the reasons set forth above, a preliminary and permanent injunction should issue to enjoin the Defendants as follows:

(a)      from arresting, prosecuting, or threatening Plaintiffs and members of Plaintiff Soul Quest Church with arrest, prosecution, and/or imprisonment for importing, distributing and ingesting the sacramental tea solely at Plaintiff Soul Quest Church services;

(b)      ordering that within 30 days after the date of issuance of declaratory relief, the parties present the Court with a plan to effectuate the importation, distribution, and accounting for the sacramental tea consistent with the rights of the Soul Quest Church members to use the sacramental tea in ceremonies;

(c)      awarding the Plaintiffs' attorneys' fees, costs and expenses pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504 and The Civil Rights Attorneys Fees Award Act of 1976, 42 U.S.C. § 1988; and

**THIS SPACE LEFT INTENTIONALLY BLANK**

(d)     granting such other and further relief as the Court may deem just and proper.

**Respectfully submitted this** _22nd_ **day of April 2020.**

By: _s/Derek B. Brett_
**DEREK B. BRETT, ESQ.**
Fla. Bar No. 0090750
**BURNSIDE LAW GROUP**
109 Ilsley Avenue, Suite 9
Halifax, Nova Scotia B3B 1S8
Telephone:     (902) 468-3066
Facsimile:     (902) 468-4803
Email: dbb@burnsidelaw.net
Lead Counsel for Plaintiffs


s/A. Brian Phillips
**A. BRIAN PHILLIPS, ESQ.**
Fla. Bar No. 0067113
**A. BRIAN PHILLIPS, P.A.**
912 Highland Avenue
Orlando, Florida 32803
Telephone:     (407) 872-0777
Telecopier:     (407) 872-0704
Email: brian.phillips@phillips-law-firm.com
Local Counsel for Plaintiffs