# EXHIBIT 1

U. S. Department of Justice
Drug Enforcement Administration
8701 Morrissette Drive
Springfield, Virginia 22152

www.dea.gov

Christopher Young
Soul Quest Church of Mother Earth Inc.
1371 Hancock Lone Palm Road
Orlando, Florida 32828

Dear Mr. Young:

 This letter sets forth the Drug Enforcement Administration's (DEA's) response to the petition which you submitted to DEA as the owner of Soul Quest Church of Mother Earth, Inc. (Soul Quest). The petition requests an exemption from the Controlled Substances Act (CSA) to allow members of Soul Quest to import, possess, and distribute plants containing dimethyltryptamine (DMT), a Schedule I controlled substance, in order to make ayahuasca. DEA has evaluated Soul Quest's petition in accordance with the framework set forth in the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb-1; the Attorney General's guidance memorandum, "Federal Law Protections for Religious Liberty" (October 6, 2017) (AG Memorandum)[1]; the Supreme Court decision in *Gonzales v. O Centro Espirita Beneficente Uniao de Vegetal,* 546 U.S. 418 (2006) (*O Centro*); DEA's "Guidance Regarding Petitions for Religious Exemption from the Controlled Substances Act Pursuant to the Religious Freedom Restoration Act"[2]; and subsequent case law.

 According to RFRA, the "Government shall not substantially burden a person's exercise of religion" unless the Government can demonstrate "that application of the burden to the person (1) is in furtherance of a compelling governmental interest and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1; AG Memorandum at 3. To establish a prima facie case for an exemption from the CSA under RFRA, a claimant must demonstrate that application of the CSA's prohibitions with respect to a specific controlled substance would (1) substantially burden, (2) religious exercise (as opposed to a philosophy or way of life), (3) based on a belief that is sincerely held by the claimant. *O Centro*, 546 U.S. at 428. Once the claimant has established these threshold requirements, the burden shifts to the government to demonstrate that the challenged prohibition furthers a compelling governmental interest by the least restrictive means. This "compelling interest test" must be satisfied through application of the CSA to the particular claimant who alleges that a sincere exercise of religion is being substantially burdened. *Id.* at 430-31.

 DEA has carefully considered the petition, supplemental submissions, and accompanying documentation, as well as the exhibits to Soul Quest's pleadings in *Soul Quest v. Garland*, Action

---

[1] https:///justice.gov/opa/pr/attorney-general-sessions-issues-guidance-federal-law-protections-religious-liberty.

[2] https://www.deadiversion.usdoj.gov//GDP/(DEA-DC-5(EO-DEA-007) (Version2) RFRA_Guidance_(Final)_11-20-2020.pdf.

Christopher Young                                                                                                          Page 2

No. 6:20-cv-701 (M.D. Fla.). DEA has also considered the results of DEA's preregistration investigation which included, among other things, extensive interviews of Soul Quest leadership and other relevant persons, review of Soul Quest's online videos, and review of Soul Quest's website. After full consideration of this information, DEA has determined that the request must be denied for the reasons set forth below.

Sincere Religious Belief and Exercise

DEA's investigation indicates that Soul Quest has offered inconsistent information about the religious basis for its petition. You have repeatedly stated that, in a series of visions, you adopted as Soul Quest's foundational text the "Ayahuasca Manifesto: Ayahuasca and its Planetary Mission, in 2012." *See, for example*, page 102 of your January 29, 2021 deposition in *Begley v. Soul Quest*, Case No. 2020-CA-003387 (9th Jud. Cir. Fla.). You described the "Manifesto" as playing a role in Soul Quest akin to the Bible or the Koran, *id*., while at page 9 of a letter counsel sent to DEA on August 21, 2017, it is compared to the Jewish Talmud and Mishnah. However, in the background information provided to DEA by multiple Soul Quest leaders and members interviewed over the course of six months, the Ayahuasca Manifesto was mentioned only once.

Soul Quest does not require individuals to profess belief in Soul Quest's Ayahuasca Manifesto (or any other religion, such as the Christian syncretic religion professed in paragraph one of the FAC) before participating in a Soul Quest ayahuasca retreat. February 18, 2021, DEA-6. Nor does Soul Quest require or expect individuals to have any continuing involvement with Soul Quest or membership in any congregation or other group of believers, and, in fact, individuals frequently participate only once in Soul Quest's ayahuasca retreats. *Id.* An individual who wishes to consume ayahuasca in a Soul Quest ceremony must complete various intake forms, including a medical questionnaire, a consent form to participate in activities involving the use of Schedule I controlled substances (such as a waiver of the individual's right to take legal action against Soul Quest), and a form in which the applicant becomes a member of Soul Quest's alleged "church." *Id*. However, membership in Soul Quest appears to be a purely pro forma matter to obtain access to ayahuasca, rather than an expression of sincere religious devotion.[3]

During interviews with Soul Quest's leadership conducted on January 12, 2021, DEA gathered additional information regarding the Soul Quest organization and weekend-retreat ceremonies. Dr. Scott L. Irwin, Ph.D., the "Senior Minister" and a corporate officer of Soul Quest, described Soul Quest's use of ayahuasca not in religious terms but instead as a natural or "integrative" medicine or therapy, designed to help people deal with trauma or other issues such as depression. February 18, 2021, DEA-6. Dr. Irwin never mentioned the Ayahuasca Manifesto, a document which Soul Quest

---

[3] In contrast, an Oregon federal district court concluded that the plaintiff there, the Church of the Holy Light of the Queen (CHLQ), had established that ayahuasca use was a part of its sincere religious exercise in part because, "[i]n its screening process, CHLQ attempts to select only those who are serious about the Santo Daime religion, and to turn away would-be recreational users or thrill-seekers." *Church of the Holy Light of the Queen v. Mukasey*, 615 F. Supp. 2d 1210, 1216 (D. Or. 2009*), vacated on other grounds sub nom. Church of Holy Light of Queen v. Holder*, 443 F. Appx 302 (9th Cir. 2011). Moreover, the district court observed that "CHLQ demands a serious commitment of time and energy from members, requiring attendance three or four times per month at services lasting several hours and sometimes almost all night." *Id.* at 1216-17.

identifies as its sacred text, in this interview.  *Id.*  Rather, Dr. Irwin described ayahuasca use as 5, 15, or 20 years of "psychotherapy in a weekend."  He explained that spiritual "integration" sessions are offered to "unpack your experience" in either individual or group therapy.  Dr. Irwin stated that the "psycho-spiritual" side falls under the ministry and that there are up to 20 different aftercare groups meeting Monday through Friday, primarily online.  When interviewed, Dr. Irwin explained that Soul Quest does not tell people what to believe; he also conceded that participants could "leave after their weekend retreat is over and have no further required contact or investment with the group."  *Id.*

Similarly, Soul Quest's website and public advertisements also do not support the claim that Soul Quest offers ayahuasca solely for religious purposes and only to members who are exercising religion pursuant to a sincerely held religious belief.  January 9, 2017, DEA-6; Non-drug exhibits N-1, N-2.  Soul Quest does business as the Soul Quest Ayahuasca Retreat and Wellness Center (Wellness Center).  The Wellness Center offers a broad range of alternative medicinal and wellness services; ayahuasca ceremonies are one item on an extensive menu of services ranging from yoga and acupuncture to marital counseling.  *Id.*  Soul Quest offers weekend ayahuasca retreats that are open to any individual who is willing to sign various forms and pay a fee ranging from $350 to $900.00 for the retreat.  Feb. 18, 2021, DEA-6.

When interviewed, Dr. Irwin explained that, while he is the "Senior Minister" and a corporate officer of Soul Quest, he is actually employed by the Soul Quest Natural Healing Center (SQNHC), a for-profit company.  Feb. 18, 2021, DEA-6.  SQNHC and its employees are contracted by Soul Quest.  In materials provided to DEA by counsel for Soul Quest on February 3, 2021, Soul Quest is described as an IRS compliant 501c(3) non-profit organization, while the Wellness Center is described as an independent branch or "Free Church" of Soul Quest.  It would therefore appear that, despite its denials, Soul Quest sells ayahuasca as part of its for-profit secular offerings to the general public.

According to its website, Soul Quest uses SQNHC, an "independent medical service," to provide medical support throughout the retreat; Soul Quest also reportedly offers "psycho-spiritual integration" services, before, during, and after its retreats, including "transformational coaching services" intended to support recovery from addictions, post-traumatic stress disorder (PTSD), and other conditions.  Under the FAQ section of Soul Quest's website, it is stated that "Ayahuasca is used primarily as a medicine… It is a natural remedy for depression, anxiety, posttraumatic stress, anxiety, drug addiction, and it also releases emotional blocks."  January 9, 2017 DEA-6, Exhibits N-1, N-2 (FAQ, www.ayahuascachurches.org).  This language from the website supports a conclusion that Soul Quest understands and advertises the use and distribution of ayahuasca to the public as fundamentally medicinal.

On its website and in interactions with the public and prospective participants, Soul Quest describes the ayahuasca ceremony as plant medicine, a tool for physical health and spiritual growth, an "add-on" to whatever journey the individual chooses, and as treatment for use with whatever counseling methodology a person wishes to pursue.  Exhibits N-1, N-2.  Internet reviews and public comments left by participants in Soul Quest retreats consistently speak of the psycho-social, medicinal, and therapeutic properties of the ayahuasca experience, rather than of a religious experience.  *Id.*  The same is true of participants interviewed during the preregistration investigation and in "(Un)well," a documentary series about the wellness industry that premiered on Netflix.

Episode 5 of the series is titled "Ayahuasca"; it focuses on use of ayahuasca, and includes, among other things, interviews and footage of Soul Quest leadership, members, and ayahuasca retreats. The individuals interviewed in the episode described the use of ayahuasca by Soul Quest participants as an aid in their healing journeys and for wellness, as opposed to a religious experience.  In practice, Soul Quest thus promotes ayahuasca to the public for self-help and therapeutic reasons, rather than solely to fellow believers for the religious ritual purposes described in the Ayahuasca Manifesto.  DEA therefore concludes that Soul Quest's promotion of ayahuasca to the public in this manner does not constitute a sincere exercise of religion under RFRA.  Moreover, even if the organizers, officers, and leadership of Soul Quest could establish the sincerity of their own individual religious belief in the use of ayahuasca (which they have not established), they cannot establish that the participants in their ceremonies are using ayahuasca as part of a sincere religious exercise given the ease with which those participants can gain access to controlled substances in Soul Quest events, without meaningful commitment to a coherently religious practice.[4]

Soul Quest's historical associations also call into question its sincerity claims.  When DEA first contacted Soul Quest on or about August 2, 2016, about its lack of authorization to obtain, handle, or distribute controlled substances under the CSA, the organization operated under the name "Oklevueha Native American Church Somaveda of Soul Quest, Inc."  The Oklevueha Native American Church (ONAC) does not consider the Ayahuasca Manifesto to be its foundational text, but offers a Code of Ethics.  It provides support and legal defense of the ceremonial use of various natural plant medicines by its member churches, ranging from peyote, ayahuasca, San Pedro, and psilocybin to cannabis.  *See* www.nativeamericanchurches.org.

In response to DEA's initial contact, you called then-DEA Unit Chief James Arnold and asked him not to address the letter to the Oklevueha Native American Church (ONAC), Soul Quest, but to the Soul Quest Church of Mother Earth, Inc.  You explained to Mr. Arnold that you and your group were disassociating yourself from ONAC and explained that you would be submitting a petition under the organization's current name.  *See* August 26, 2016, Form DEA-6, Report of Investigation. When subsequently interviewed by DEA, you confirmed that Soul Quest had affiliated with ONAC to obtain legal coverage for Soul Quest's use of ayahuasca and other substances.  Feb. 19, 2021 DEA-6.  You also conceded that you had purchased the right to use ONAC documents which you incorporated into your own writings as founder and leader of Soul Quest.  *Id.* at 175.  These facts suggest that Soul Quest changed its religious affiliation in order to use RFRA's legal protections to enable Soul Quest to obtain and distribute controlled substances, rather than an expression of a consistently and sincerely held religious belief.

In sum, Soul Quest has not satisfied its burden under RFRA of demonstrating that its use of ayahuasca is pursuant to a religious exercise and based on a sincerely held religious belief.

---

[4] In reaching this conclusion, DEA does not pass judgment on the potential medical benefits of ayahuasca or other "plant medicines."  DEA states only that a RFRA petition is not the appropriate forum in which to assess a substance's potential medical benefits.  In the CSA, Congress established a procedure by which scientists and health care practitioners can apply to DEA for registration to possess controlled substances in order to conduct research.  DEA encourages such applications.

<u>Least Restrictive Means of Furthering Compelling Governmental Interests</u>

   DEA's mission requires it to prevent diversion of controlled substances outside of the comprehensive regulatory scheme established by Congress.  As explained above, DEA finds that Soul Quest has not demonstrated the existence of a sincere religious exercise; it has therefore necessarily also failed to show that application of the CSA to its use of ayahuasca would substantially burden a sincere religious exercise.  Accordingly, DEA need not, under RFRA, consider whether application of the CSA's prohibitions with respect to ayahuasca would impose on Soul Quest a substantial burden under RFRA, and DEA need not demonstrate that the CSA's prohibitions with respect to Soul Quest's proposed use of ayahuasca further a compelling governmental interest by the least restrictive means.  However, even if Soul Quest had established all three elements for establishing a prima facie case under RFRA, DEA finds the CSA's prohibitions on Soul Quest's importation of plants containing the Schedule I controlled substance DMT, use of those plants to manufacture an herbal tea containing DMT, and distribution of that tea are the least restrictive means of furthering two compelling governmental interests:  the need to protect public health and safety from potentially dangerous substances, and the need to prevent diversion of controlled substances into the illicit market.

   The psychoactive ingredient in the ayahuasca tea, DMT, is a Schedule I controlled substance.  As such, it has a high potential for abuse, no currently accepted medical use in treatment in the United States, and lacks established safety for use under medical supervision.  21 U.S.C. § 812(c), Schedule I(c).  Clinical effects of ingestion include hallucinations, agitation, tachycardia, confusion, heightened blood pressure, and vomiting.  Ingestion has been known in rare instances to cause seizures, respiratory arrest, and cardiac arrest.  *See* Ayahuasca: Risks to Public Health and Safety (DEA Diversion Control Division, Drug and Chemical Evaluation Section, July 2020).

   Unlike the plaintiffs in *O Centro*, *supra*, and *Church of the Holy Light of the Queen*, *supra*, whose religious use of ayahuasca (also known as hoasca or Daime) DEA has accommodated within the CSA's comprehensive regulatory scheme by treating the plaintiffs as registered importer, Soul Quest does not import its tea directly from co-religionists in South America.[5]  Instead, Soul Quest obtains the plants from which the ayahuasca tea is made outside the CSA's regulatory framework from a business in the Netherlands, "Waking Herbs."  As described below, it is not possible for DEA to track these shipments to ensure that none are diverted into illicit channels.  Moreover, the manager of Waking Herbs, Philip van Schaik, confirmed to DEA investigators that its products are sold only for purposes of soap and candle making and ethnobotanical research and are not for human consumption.  Plant shipments intended for and/or received by Soul Quest bore labels such as "aromatic herbs," "samples," and "packaging materials."  Use of plants which are not intended for human consumption in teas or other preparations for human ingestion poses obvious potential risks to human health and safety.  Because DEA's attempts to obtain further information about Waking

---

[5] As the district court in *O Centro* explained, the plaintiff in that case was a U.S. branch of a religion based in Brazil, and imported hoasca from Brazil.  *See O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 282 F. Supp. 2d 1236, 1240 (D.N.M. 2002).  Similarly, the district court in *Church of the Holy Light of the Queen* explained that "[t]he Santo Daime church brews Daime tea in Brazil," and "ship[s] it to CHLQ in Ashland[, Oregon]."  *Church of the Holy Light of the Queen v. Mukasey*, 615 F. Supp. 2d 1210, 1213 (D. Or. 2009), *vacated sub nom. Church of Holy Light of Queen v. Holder*, 443 Fed. App'x 302 (9th Cir. 2011).

Herbs were rebuffed, it is not possible to determine the level of risk involved in use of these plant materials.

Under the CSA and DEA regulations, controlled substances that are imported into the United States must be directly shipped to the DEA registrant to keep the controlled substances within the closed system and to comply with Federal law. On November 18, 2019, while screening international mail, a Customs and Border Protection (CBP) Officer at the Chicago Customs and Border Protection Mail and Inspection Center inspected a parcel containing a dry green leafy substance that tested positive for DMT by the CBP Chicago Laboratory. The parcel, which was seized by the Department of Homeland Security (DHS), contained six bags with a total weight of approximately 7,866.3 grams. The parcel sender was located in the Netherlands. The addressee was Dr. Irwin's father in Nebraska, who subsequently shipped the bags to Soul Quest in Florida. January 24, 2020 DEA-6. Dr. Irwin's father is not a DEA registrant. DEA learned that the November 2019 shipment was not an isolated incident but that similar packages had been previously illegally shipped in this manner to Soul Quest. *Id.*

On August 27, 2020, DEA inspected Soul Quest's controlled substance storage unit, located at Security Self Storage, 12280 E. Colonial Drive, Orlando, Florida, 32826. Investigators noted that boxes of plant material received by Soul Quest bore the address of Palosanto Shop, a business using a virtual mailbox located at 1297 Grand Avenue, PMB #1032, Baldwin, New York, 11510. The plant material had been shipped from www.wakingherbs.com in the Netherlands to Palosanto Shop and were then transferred to Soul Quest in Orlando, Florida. Palosanto Shop is not registered with DEA as an importer. February 12, 2021, DEA-6.

Because Soul Quest's sources are not DEA registrants, and because neither they nor Soul Quest will answer questions on the subject, DEA cannot determine how much of the controlled substance is being imported, or inspect its chain of custody within the United States to determine if diversion has occurred.[6]

Candor is essential to the closed regulatory scheme established by Congress to prevent diversion of controlled substances from authorized channels. Millions of individual health care practitioners and researchers, institutions, and companies hold DEA registrations, and DEA's resources limit the scope and frequency of inspections and audits of registrants. For this reason, DEA "places great weight on a registrant's candor, both during an investigation and in any subsequent proceeding." *See, e.g.*, Belinda R. Mori, N.P.; Decision and Order, 78 Fed. Reg. 36,582-02, 36,589 (2013) (citing Robert H. Hunt, 75 Fed. Reg. 49,995, 50,004 (2010)). It is well-settled that "[c]andor during DEA investigations, regardless of the severity of the violations alleged, is considered by the

---

[6] Based on the record before it in 2006 in *O Centro*, the Supreme Court (reviewing the grant of a preliminary injunction) found little risk of diversion of the *hoasca* or ayahuasca tea into illicit channels because the UDV Church had fewer than 200 members in the United States and because the tea caused vomiting. Since that time, however, experimentation with and recreational and/or self-help use the tea has grown exponentially, both in the United States and around the world. The globalization of ayahuasca raises complex questions, including how to distinguish cultural appropriation and commodification of indigenous cultural practices from sincere cultural integration and syncretism, and has inspired a growing body of research and analysis. *See*, the Chacruna Institute, "The Commodification of Ayahuasca: How Can We Do Better?" (2019).

DEA to be an important factor when assessing whether a [respondent's] registration is consistent with the public interest," and "[t]he DEA properly considers the candor of the [respondent] and his forthrightness . . . in determining whether the [respondent's] registration should be revoked." *Hoxie v. DEA*, 419 F.3d 477, 483 (6th Cir. 2005).

During the preregistration investigation, Soul Quest made no commitment to lawfully import or acquire the plant material containing DMT within the comprehensive regulatory system established under the CSA. Soul Quest representatives refused even to discuss importation, citing the Fifth Amendment prohibition against self-incrimination. This failure to provide essential information evidencing specific plans and a concrete commitment to the legal importation of the plant material constitutes a lack of candor which is fatal to the Soul Quest petition. This failure, moreover, is not justified by the Fifth Amendment. DEA's RFRA petition guidance clearly requests information about a petitioner's future plans, rather a confession of previous unlawful activity. *Supra* p. 1 n.1 (requesting the name of the controlled substance the party "wishes to use" and details about its "anticipated" handling of the substance).

In its petition and supporting materials, moreover, Soul Quest described detailed screening procedures for participants, as well as monitoring of ayahuasca consumption by trained health care professionals. However, DEA's investigation revealed troubling allegations that Soul Quest has failed to follow its own procedures. In 2018, for example, a participant named Joseph Begley died after ingesting both ayahuasca and kambo (the secretion of a South American frog). Mr. Begley's estate has sued Soul Quest for wrongful death, and in that ongoing litigation, Mr. Begley's father alleges that a three-hour delay in summoning medical aid contributed to his son's death. *See Begley v. Soul Quest*, Case No. 2020-CA-003387 (9th Jud. Cir. Fla). A participant in a September 26, 2020 ayahuasca "Warrior Quest" retreat also recently reported to DEA that, after she began experiencing adverse effects from an unknown substance also administered to her during an ayahuasca ceremony, Soul Quest staff members delayed calling 911; she also alleged that hospital emergency room personnel had told her that Soul Quest staff members had repeatedly dropped off customers experiencing adverse reactions off at the emergency room. April 2, 2021 DEA-6.[7] While DEA has served an administrative subpoena upon the local hospital to corroborate these reports, it has not yet received any response.

DEA's preregistration investigation revealed that Soul Quest currently lacks adequate measures to safeguard either the imported plants in its custody or the tea, once manufactured. During interviews, Soul Quest leaders expressed willingness to improve physical security. DEA does not question Soul Quest's expressed willingness to purchase and install alarms and other appropriate security equipment. February 18, 2021 DEA-6. However, given Soul Quest's lack of candor and apparent inconsistency in following its own procedures to protect the health of participants in its retreats, DEA is not satisfied that Soul Quest would in practice store plants containing DMT or its ayahuasca tea only at the reported secure site or would administer the tea only at the reported fixed location. DEA therefore concludes that maintaining the CSA's prohibition on the importation and possession of DMT as applied to petitioners is the least restrictive means of preventing diversion of a Schedule I controlled substance into illicit channels and protecting the public health.

---

[7] As explained above, ingestion of ayahuasca poses significant known potential health risks. Combination of DMT with kambo or other unknown mind-altering chemicals necessarily increases those health risks.

Case 6:20-cv-00701-WWB-DCI   Document 38-1   Filed 05/10/21   Page 9 of 9 PageID 1022

Christopher Young                                                                                                  Page 8

    Based upon a thorough review of the entire record, DEA therefore concludes that Soul Quest's practices, even assuming arguendo that those practices constitute a religious exercise, cannot be accommodated in a manner that would allow DEA to preserve its compelling interests in public health and safety and in preventing illegal diversion of ayahuasca.  Indeed, to the extent Soul Quest and its customers use ayahuasca for purposes other than sincere religious exercise, their own use constitutes unlawful diversion.  Maintaining the CSA's prohibition on the importation, possession, manufacture, and distribution of DMT is the least restrictive means of protecting the public health and safety and preventing diversion of DMT into illicit channels.

    This letter is a final determination under 21 U.S.C. § 877.

Sincerely,

WILLIAM MCDERMOTT
Digitally signed by WILLIAM MCDERMOTT
Date: 2021.04.16 12:41:43 -04'00'

William T. McDermott
Assistant Administrator
Diversion Control Division