# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

SOUL QUEST CHURCH OF MOTHER )
EARTH, INC., a Florida Domestic )
Non-Profit Corporation, on its own )
behalf and on behalf of its members; and )
CHRISTOPHER YOUNG, individually )
and as spiritual leader of Soul Quest )
Church of Mother Earth, )
                                Plaintiffs, )
                                         )
vs. ) Case No.: 6:20-cv-00701-WWB-DCI
                                         )
MERRICK B. GARLAND, Attorney )
General of the United States of America; )
D. CHRISTOPHER EVANS, Acting )
Administrator of the U.S. Drug )
Enforcement Administration, )
                                Defendants. )
_____ )

## JOINT NOTICE OF PARTIES
### (In Compliance with District Court Order)

COME NOW, the Parties, by and through their respective, undersigned counsel, and in compliance with the District Court's Order dated May 11, 2021 (ECF No. 41), and provide the following Joint Notice with respect to the relative positions of each Party on the subject of an evidentiary hearing on Plaintiffs' Renewed Petition for Preliminary Injunction ("Plaintiffs' Motion") (ECF No. 31), and further state as follows:

### I.    INTRODUCTION

On May 27, 2021, in compliance with the District Court's directive, Counsel for the Parties conferred on their respective positions regarding the need for an evidentiary hearing on the Plaintiffs' Motion. Counsel also discussed the contours of any possible

evidentiary hearing, *i.e.*, whether such an evidentiary hearing might require witness testimony or, alternatively, whether such a hearing might proceed with reliance on sworn affidavit evidence as provided by the Parties in their respective filings on this matter and be accompanied by oral arguments.

Plaintiffs asserted that they may need to supplement this notice to the extent Defendants' Response in Opposition to Plaintiffs' Renewed Petition for Preliminary Injunction ("Defendants' Opposition"), which is due today, June 1, 2021, identifies any factual disputes not already known to the Plaintiffs. Defendants noted that they would not object to such supplementation. Defendants additionally asserted that, in the event that Plaintiffs, after reviewing Defendants' Opposition, intended to advise the Court that an evidentiary hearing was necessary and identify disputed issues of material fact or credibility determinations to be presented at such a hearing, Defendants may also need to supplement this notice to respond to Plaintiffs' supplemental position and, as appropriate, identify rebuttal witnesses. Accordingly, the Parties agreed to present their tentative positions, herein, but to respectfully request that the Court grant them the opportunity to amend their positions on or before Monday, June 14, 2021.

## II.     PLAINTIFFS' POSITION

The position of the Plaintiffs is that an evidentiary hearing in this matter is necessary.  The nature of these proceedings, involving the real prospect of the Plaintiffs being targeted with criminal prosecution for the exercise of their religious freedoms is real and continuing.  The Defendants have – since issuing a "determination" on exemption application – positioned themselves so as to assert the adoption of an *ad hoc*, unpublished, unapproved procedure – contrary to federal law – to make determinations

on the sincerity of the Plaintiffs' religious beliefs, as well as for assessing control-diversion.

The Plaintiffs assert that the Defendants' positions are contrary to rule of law. Likewise, the Defendants' positions run directly contrary to what is contemplated under the Religious Freedom Restoration Act and the Free Exercise Clause of the First Amendment: an abiding conviction that everyone professing a sincere belief in their religious convictions and practices, regardless of how unorthodox such convictions and practices might be perceived by others, would be safeguarded under law and free from governmental intrusion.

These principles pre-date the founding of the Republic, and were originally codified in Thomas Jefferson's Statute for Religious Freedom (passed in 1786), serving as the model for the rights enshrined within the First Amendment just five (5) years later. *See The Autobiography of Thomas Jefferson, 1743-1790* (G.P. Putnam's Sons 1914 ed.), at p. 127. These principles also found support in the writings of James Madison, where the Founding Father unambiguously asserts the equality of all religious sects. *See Letter from James Madison to Edward Livingston* (July 10, 1822), in 5 The Founders' Constitution 105-106 (P. Kurland & R. Lerner eds. 1987). In the case-at-bar, the Plaintiffs are asserting the Government's usurpation of their fundamental religious liberties – something the First Amendment and the Religious Freedom Restoration Act were designed to prevent.

Supreme Court jurisprudence from as recently as April 9, 2021, supports the propositions of these Founding Fathers. In *Tandon v. Newsom*, 593 U.S. ___, 2021 WL 1328507 (2021), the Court – in a *per curiam* decision – addressed the constitutionality of

3

California's COVID-19 restrictions on religious worship gatherings. *Tandon* provides perhaps the most contemporary perspective on the Court's position regarding state regulation of religious activities.

The Court – in reversing the Ninth Circuit's decision, below – began by articulating the relevant aspects of its previous jurisprudence. First, "government regulations are not neutral and generally applicable, and therefore target strict scrutiny under the Free Exercise Clause, whenever they treat *any* comparable secular activity more favorably than religious exercise. *Id.* at 1 (citing *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. ___ (2020) (*per curiam*) (slip op. at 3-4) (Emphasis included). In the case-at bar, the Defendants do not even maintain any actual government regulations, making any assertion of neutrality and general applicability likely impossible.

Next, the *Tandon* Court asserted that "whether two activities are comparable for purposes of the Free Exercise Clause must be judged against the asserted government interest that justifies the regulation at issue." *Id.* at 2 (citing *Roman Catholic Diocese*, 592 U.S. at ___ (slip op., at 3). Again, in the present case, there are no official regulations that have ever been promulgated, thus rendering impossible any effort by the Defendants to assert such official interests.

Third, "the government has the burden to establish that the challenged law satisfies strict scrutiny. To do so in this context, it must do more than assert that certain risk factors 'are always present in worship, or always absent from the other secular activities' the government may allow." *Id.* (quoting *South Bay United Pentecostal Church v. Newsom*, 592 U.S. __ (2021) (statement of Gorsuch, J.) (slip op., at 2); *id.*, at ___ (Barrett, J., concurring)). The *Tandon* Court continued that

> [i]nstead, narrow tailoring requires the government to show that measures less restrictive of the First Amendment activity could not address its interest in reducing the spread of COVID. Where the government permits other activities to proceed with precautions, it must show that the religious exercise is more dangerous than those activities even when the same precautions are applied. Otherwise, precautions that suffice for other activities suffice for religious exercise too.

*Id.* (citing to *Roman Catholic Diocese*, 592 U.S. at ___ (slip op., at 4-5); *South Bay*, 592 U.S., at ___ (statement of Gorsuch, J.) (slip op., at 3).

Effectively, the Court is providing that Government must provide a religious exemption if a law contains a secular exemption for comparable activities. In the case-at-bar, the Defendants have abjectly failed to provide any such religious exemption, despite the passage of fifteen (15) years since the Supreme Court's precedential holding in *Gonzalez v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006). As the *Tandon* Court further acknowledged, "[t]he State cannot 'assume the worst when people go to worship but assume the best when people go to work." *Tandon*, 593 U.S. __, (slip. op., at 3) (quoting *Roberts v. Neace*, 958 F.3d 409, 419 (6th Cir. 2020) (*per curiam*)). Nor can "officials with a track record of 'moving the goalposts' retain authority to reinstate [or (re)impose] those heightened restrictions at any time." *Tandon,* 593 U.S. __, (slip. op., at 3) (quoting *South Bay*, 592 U.S. at ___ (statement of Gorsuch, J.) (slip op., at 6)).

Yet, in the case-at-bar, that is exactly what the Government now purports to do – impose unpromulgated and unlawful restrictions, lacking any definition and permitting for the Defendants to continuously 'move the goalposts.' Further, as the *Tandon* Court acknowledged, even if the Government "withdraws or modifies a [] restriction in the course of litigation, that does not necessarily moot the case," or an applicant's

5

entitlement to emergency injunctive relief." *Id.* at 3 (slip op.).  This is especially so where the applicant[s] "'remain under a constant threat' that government officials will use their power" to (re)impose challenged restrictions.  *Id.* at 3 (slip op.) (quoting *Roman Catholic Diocese*, 592 U.S. at ___ (slip op., at 6).

The Plaintiffs believe that an evidentiary hearing would provide it with a further opportunity to discuss recent jurisprudence, as well as rebut the scope and effect of the Defendants' presently unarticulated positions on the Renewed Motion.  Indeed, for purposes of the District Court's determinations of the factors necessary for issuance of a preliminary injunction, the Plaintiffs would assert that the Court is better-served by hearing arguments and, potentially, testimony prior to rendering any decision on a subject involving asserted constitutional freedoms, and the alleged encroachment by Government on such freedoms.

The issues being brought to the forefront of this case are original and have not been previously confronted in this form.  The Plaintiffs have waited nearly four (4) years to receive consideration over its rights under the First and Fourteenth Amendments and under the Religious Freedom Restoration Act.  Over the course of the past year, the Government was to have been involved in working toward a mutually-suitable, out-of-court resolution to the matter.

Instead, the Government – using an unknown, undefined process – was working in pursuit of its *ad hoc* process.  This endeavor has not – to the best knowledge of undersigned counsel – ever been deployed in this context.  Indeed, what the past year of delay now reflects – as provided in both the Plaintiffs' Renewed Motion for Preliminary Injunction, as well as its Second Amended Complaint – is a further highlighting of how the

Nation's drug enforcement arm is using its own, unestablished, unratified measures to prevent Soul Quest Church and its adherents, including Plaintiff Christopher Young, from being able to practice their solemn, genuine, sincere expression of religious faith via the consumption of its sacramental tea.

The Plaintiffs assert that the District Court would be better-able to assess these issues, and the legitimacy of each Party's respective assertions on this matter, through an actual hearing, whether in-person or – considering the nature of current pandemic protocols and the location of lead counsel for the Plaintiffs – via video hearing.  In closing, the entire history of the underlying facts upon which this Renewed Motion is premised has been in the dark; similarly, the Plaintiffs assert that the Government's actions since case inception remain in the dark.  The Government should be made to account to the Court and be subject to the Court's questioning during arguments, as to the legality of its positions; similarly, the Plaintiffs would welcome the Court's questions on its own positions in its Renewed Motion.

### III.     DEFENDANTS' POSITION

The Court instructed the parties to "file a joint notice, not to exceed ten pages, informing this Court if an evidentiary hearing is necessary in this matter." May 11, 2021 Order, ECF 41. Pursuant to the Court's order, "[a]ny party requesting an evidentiary hearing shall: (1) identify with particularity all disputed issues of material fact or credibility determinations that are expected to impact the resolution of the Motion; (2) the names of any witnesses that the party anticipates calling at a hearing; and (3) the estimated length of the requested hearing." *Id.*

Plaintiffs have not complied with the Court's order. After filing an overlong, 35-page motion for a preliminary injunction, Plaintiffs have utilized this notice to make additional legal arguments rather than address whether an evidentiary hearing is necessary. The closest Plaintiffs come to answering the Court's question is to say that they "believe that an evidentiary hearing would provide it with a further opportunity to discuss recent jurisprudence, as well as rebut the scope and effect of the Defendants' presently unarticulated positions on the Renewed Motion."

The Supreme Court issued its decision in *Tandon v. Newsom*, 593 U.S. ___, 2021 WL 1328507 (2021), on April 9, 2021. Plaintiffs filed their motion for a preliminary injunction on May 7, nearly a month after that decision was issued without any mention of *Tandon*. Plaintiffs had ample "opportunity" in their 35-page brief to "discuss" then-existing jurisprudence. An evidentiary hearing is not the proper forum "to discuss recent jurisprudence," which presents questions of law. And it is entirely inappropriate for Plaintiffs to utilize this notice to supplement purely legal arguments which they could have but failed to include in their motion. In any event, *Tandon* is about comparable activities, one secular and one religious, being treated differently. Plaintiffs make no argument that secular therapeutic activities receive more lenient treatment under the CSA. Indeed, Plaintiffs point to no example of DMT or ayahuasca being used in a secular setting. But in any event, to the extent DMT has been approved for a medical purposes, such a use would not be a "comparable" purpose as the term is used in *Tandon*. *Id.*

Nor do Defendants believe an evidentiary hearing is necessary for the Court to adjudicate Plaintiffs' Motion. The thrust of Plaintiffs' case is that DEA's final determination violates RFRA. That determination, under 21 U.S.C. § 877, is to be reviewed in the first

8

instance by the "United States Court of Appeals for the District of Columbia or for the circuit in which [the petitioner's] principal place of business is located." Pursuant to Section 877, DEA's "[f]indings of fact, . . . if supported by substantial evidence, shall be conclusive." 21 U.S.C. § 877. This provision not only requires that this case have been filed in the court of appeals, it also dictates that DEA's factual findings not be disturbed so long as they are supported by substantial evidence. And for good reason: DEA performs an extensive investigation before making registration and exemption determinations. Here, for example, DEA investigators have spent months interviewing Soul Quest leaders, participants, and suppliers. DEA experts have also been personally reviewing Soul Quest's security measures, assessing the risk that DMT will be diverted while in transit to Soul Quest, from the Netherlands through Nebraska or New York to Florida, as well as from Soul Quest's facilities to non-adherents.

An evidentiary hearing is also unwarranted because Plaintiffs have not identified any disputed issues of material fact. While the parties agreed that Plaintiffs may need to supplement their request after reviewing Defendants' opposition, Plaintiffs have not pointed to any disputed factual questions—particularly or otherwise—notwithstanding that they have known the basis for DEA's final determination for six weeks. To the extent Plaintiffs believe that DEA's final determination presents any disputed issues of material fact, Plaintiffs possess the information necessary to identify those disputes for the Court at this time. Having not done so, Defendants respectfully oppose Plaintiffs' request for an evidentiary hearing.

Finally, as to the timing of any hearing on Plaintiffs' Motion, Defendants submit that judicial economy would be served by combining any such hearing with a hearing on

9

Defendants' Motion to Dismiss ("Defendants' Motion"), which will argue, *inter alia*, that this Court lacks subject-matter jurisdiction over all of Plaintiffs' claims by virtue of § 877, and which Defendants will file today contemporaneously with filing Defendants' Opposition. Defendants respectfully request that no hearing on either motion be set until briefing on Defendants' Motion is completed. In that regard, Defendants reserve their right to seek the opportunity to file a reply in support of Defendants' Motion after reviewing Plaintiffs' response thereto, in accordance with Local Rule 3.01(d).

Respectfully submitted this 1st day of June 2021.

| | |
|---|---|
| By: */s/Derek B. Brett* <br> **DEREK B. BRETT, ESQ.** <br> Fla. Bar No. 0090750 <br> **BURNSIDE LAW GROUP** <br> 109 Ilsley Avenue, Suite 9 <br> Halifax, Nova Scotia B3B 1S8 <br> Telephone: (902) 468-3066 <br> Facsimile: (902) 468-4803 <br> Email: dbb@burnsidelaw.net <br> Lead Counsel for Plaintiffs <br><br> */s/A. Brian Phillips* <br> **A. BRIAN PHILLIPS, ESQ.** <br> Fla. Bar No. 0067113 <br> **A. BRIAN PHILLIPS, P.A.** <br> 912 Highland Avenue <br> Orlando, Florida 32803 <br> Telephone: (407) 872-0777 <br> Telecopier: (407) 872-0704 <br> Email:brian.phillips@phillips-law-firm.com <br> Local Counsel for Plaintiffs | BRIAN M. BOYNTON <br> Acting Assistant Attorney General <br><br> BRIGHAM J. BOWEN <br> Assistant Director <br> Civil Division, Federal Programs Branch <br><br> */s/ Julie Straus Harris* <br> JULIE STRAUS HARRIS <br> DC Bar # 1021928 <br> Senior Trial Counsel <br><br> MICHAEL J. GAFFNEY <br> DC Bar # 1048531 <br> Trial Attorney <br><br> United States Department of Justice <br> Civil Division, Federal Programs Branch <br> 1100 L Street NW, Room 11514 <br> Washington, D.C. 20005 <br> Tel: (202) 353-7633 <br> Fax: (202) 616-8470 <br> E-mail: julie.strausharris@usdoj.gov <br><br> *Counsel for Defendant* |