**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

_____

| | |
|---|---|
| SOUL QUEST CHURCH OF MOTHER EARTH, INC. and CHRISTOPHER YOUNG, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| | ) No. 6:20-cv-701-WBB-DCI |
| v. | ) ) |
| MERRICK B. GARLAND, Attorney General of the United States of America, and D. CHRISTOPHER EVANS, Acting Administrator of the U.S. Drug Enforcement Administration, | ) ) ) ) ) |
| Defendants. | ) ) ) |

_____)

**DEFENDANTS' MOTION TO DISMISS AND MEMORANDUM IN SUPPORT**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................... 1

BACKGROUND ........................................................................................... 2

    I.    Statutory and Regulatory Background ............................................. 2

    II.   Administrative Background .............................................................. 4

    III.  The Instant Litigation ..................................................................... 6

STANDARD OF REVIEW ............................................................................ 7

ARGUMENT ............................................................................................... 8

    I.    THIS COURT LACKS JURISDICTION OVER PLAINTIFFS'
         CLAIMS BECAUSE 21 U.S.C. § 877 VESTS EXCLUSIVE
         JURISDICTION IN THE COURTS OF APPEALS........................ 8

                A.   Under Section 877, jurisdiction over plaintiffs' claims
                      lies exclusively in the court of appeals. ............................... 11

                      1.   Plaintiffs' challenges to the Guidance and the CSA.... 11

                      2.   Challenge to DEA's denial of Plaintiffs' Exemption
                           Request.......................................................... 13

                B.   Alternate statutory provisions do not override § 877's
                      exclusive review provision to confer subject matter
                      jurisdiction over plaintiffs' claims.......................................... 16

    II.   PLAINTIFFS' CONSTITUTIONAL CLAIMS MUST BE DISMISSED
         UNDER RULE 12. ...................................................................... 18

                A.   Plaintiffs' free exercise claim must be dismissed
                      because the CSA is a neutral law of general
                      applicability............................................................................ 18

                B.   Plaintiffs' procedural due process claim fails because
                      plaintiffs were afforded notice and an opportunity to
                      be heard prior to the DEA's Final Determination and
                      because § 877 grants federal appellate courts judicial
                      review of the Determination. ................................................ 20

C.      Plaintiffs fail to state a substantive due process claim
        because their claims are covered entirely by the First
        Amendment. ........................................................................... 22

D.      Plaintiffs' free speech claim must be dismissed
        because they have not alleged a prior restraint. .................. 24

CONCLUSION ......................................................................................................... 25

Defendants Merrick B. Garland, in his official capacity as U.S. Attorney General, and D. Christopher Evans, in his official capacity as Acting Administrator, U.S. Drug Enforcement Administration (DEA), hereby move to dismiss Plaintiffs' Second Amended Verified Complaint for Declaratory and Permanent Injunctive Relief (Compl.), ECF No. 42, under Federal Rule of Civil Procedure 12(b)(1) or, in the alternative, Rule 12(b)(6).

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

In the Controlled Substances Act (CSA), Congress gave the Attorney General authority to issue, deny, suspend, or revoke registrations for the importation, manufacture, and distribution of controlled substances. By regulation, the Attorney General delegated this authority to DEA. Pursuant to that authority, DEA considers requests for religious exemption from the CSA. This suit challenges DEA's Final Determination that plaintiffs were not entitled under the Religious Freedom Restoration Act (RFRA), 42 U.S.C. §§ 2000bb *et seq.*, to a religious exemption from the CSA, and DEA's conclusions as to the framework for considering religious exemptions. By statutory mandate, jurisdiction over this dispute lies exclusively in the courts of appeals. 21 U.S.C. § 877. Section 877 vests the courts of appeals with exclusive jurisdiction over claims such as these relating to DEA's administration and application of the CSA. That provision bars district courts from exercising jurisdiction over challenges to final determinations under the CSA. Dismissal of the entire action is warranted for this reason alone.

Even if plaintiffs could clear this jurisdictional bar, their constitutional claims must be dismissed under Rule 12. Plaintiffs' Free Exercise claim fails because the CSA is a neutral and generally applicable law, and the right of free exercise does not relieve an

individual of the obligation to comply with such a law on the ground that the law proscribes what one's religion requires. Plaintiffs' procedural due process claim fares no better because DEA provided plaintiffs with notice and an opportunity to be heard, and § 877 provides a sufficient post-deprivation remedy. And because plaintiffs' claims are governed entirely by the Free Exercise and Free Speech clauses, their substantive due process claim also lacks merit. Finally, plaintiffs lack standing for their First Amendment prior restraint claim and, moreover, have not alleged facts sufficient to support such a claim. For these reasons, this court should dismiss the Second Amended Complaint.

## BACKGROUND

I.      Statutory and Regulatory Background

RFRA provides that the federal government "shall not substantially burden a person's exercise of religion" unless "it demonstrates that application of the burden to the person … is in furtherance of a compelling governmental interest; and … is the least restrictive means of furthering that compelling governmental interest." *Id.* § 2000bb-1(a)–(b). RFRA applies to "all Federal law, and the implementation of that law," *id.* § 2000bb-3(a), and authorizes persons whose religious exercise has been substantially burdened to "assert that violation as a claim … in a judicial proceeding," *id.* § 2000bb-1(c).

The CSA, 21 U.S.C. §§ 801-971, provides a comprehensive federal scheme to regulate controlled substances. The CSA makes it unlawful to "manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance," except as authorized by the Act. *Id.* § 841(a)(1). Congress enacted the CSA based on a finding that "[t]he illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on

2

the health and general welfare of the American people." *Id.* at § 801(2). The CSA created five "schedules" of controlled substances, and placed dimethyltryptamine (DMT) in Schedule I. *See id.* § 812(a), (b)(1), (c) sched. I (c)(6). For placement in Schedule I, DEA must make findings that a substance: "has a high potential for abuse"; "has no currently accepted medical use in treatment in the United States"; and is one for which "[t]here is a lack of accepted safety for use … under medical supervision." *Id.* § 812(b)(1).

The CSA authorizes the Attorney General to "promulgate rules and regulations . . . relating to the registration and control of the manufacture, distribution, and dispensing of controlled substances and to listed chemicals." 21 U.S.C. § 821. The Attorney General has delegated this authority to the Drug Enforcement Administration. *See id.* § 871(a); 28 C.F.R. § 0.100. DEA has promulgated regulations related to controlled substances in Title 21, Chapter II of the Code of Federal Regulations. *Id.* §§ 1300-1316.

The CSA authorizes the Attorney General to "by regulation, waive the requirement for registration of certain manufacturers, distributors, or dispensers if he finds it consistent with the public health and safety." 21 U.S.C. § 822(d). 21 C.F.R. § 1307.03 provides that "[a]ny person may apply for an exception to the application of any provision of [the DEA regulations]" by filing a written request with the DEA Administrator, and delegates discretionary authority to the DEA Administrator to grant an exception. This waiver process allows DEA to consider individual requests for exemptions from regulation under the CSA, including exemptions based on RFRA. *See generally* Off. of Diversion Control, DEA, Guidance Regarding Petitions for Religious Exemption from the CSA Pursuant to the Religious Freedom Restoration Act (2009, updated Feb. 26, 2018) ("Guidance"), attached to Compl. as Ex 2, ECF No. 42-2.

3

II.     Administrative Background

Plaintiff Christopher Young received a letter dated August 1, 2016, sent by DEA to Oklevueha Native American Church Somaveda of Soul Quest, Inc., at the business address of plaintiff Soul Quest. *See* Compl., Ex. 5 ¶ 22, ECF No. 42-5; *see also* Compl., Ex. 6 at 4, ECF No. 42-6 (noting that in August 2016, Soul Quest operated under the name Oklevueha Native American Church Somaveda of Soul Quest, Inc.); DEA Letter of August 1, 2016 ("DEA Letter"), ECF No. 13-3. The letter stated that it had "come to [DEA's] attention" that the predecessor to plaintiff Soul Quest was "involved in offering 'retreats' through [its] website, www.soulquest-retreat.com," at which ayahuasca, as well as Schedule I controlled substances ibogaine and mescaline, are provided to "clientele." DEA Letter at 1. The letter explained that, pursuant to RFRA, DEA considers religious-based petitions for exemption from the CSA, citing applicable statutory, regulatory, and caselaw authorities. *Id.* DEA invited the recipient to submit a petition for an exemption under RFRA for DEA to "consider it based on the specific facts regarding [the recipient's] plans to distribute controlled substances," and attached a copy of the applicable Guidance. *Id.* at 1 (noting attachment of then-current Guidance to letter), 3-6 (Guidance). Finally, DEA "encourage[d] [the recipient] to file a petition and obtain a response to [the recipient's] request for an exemption before engaging in the distribution of DMT under the assumption that this conduct qualifies as an exempt religious exercise." *Id.*

By letter through counsel dated August 21, 2017, plaintiff Soul Quest submitted to DEA a Request for Religious-Based Exemption to Controlled Substances Act ("Plaintiffs' Exemption Request"), "as it pertains to the ritual use by Soul Quest of ayahuasca for its sacramental activities." Compl. Ex. 1 at 1, ECF No 42-1. As the basis for its eligibility for

4

an exemption, Soul Quest asserted RFRA and *O Centro Espirita Beneficente Uniao Do Vegetal v. Gonzalez*, 546 U.S. 418 (2006) ("*O Centro*"). *Id.* Plaintiffs' Exemption Request stated that "Soul Quest and its adherents hold a common set of beliefs regarding the cause, nature, and purpose of the universe, asserting that the creation of all things is the result of the divine of the Great Spirit. … Soul Quest and its adherents sanctify and uphold this core religious belief through its devotional and ritual observances." *Id.* The Request detailed the "common set of beliefs" held by "Soul Quest and its adherents," *id.* at 3-13, and stated as a "requirement for membership" in Soul Quest that the "individual must express a belief in the foundation principles of the Soul Quest Church," *id.* at 21. The Request also described protocols for "Safety and Security" and "Storage and Use" related to "Sacramental Use of Ayahuasca." *Id.* at 13-19.

By letter dated April 16, 2021, from DEA to Christopher Young and Soul Quest, DEA set forth its response to Plaintiffs' Exemption Request. Compl., Ex. 6 ("Final Determination"). The Final Determination stated that DEA had "determined that the request must be denied," *id.* at 2, for two reasons based on DEA's preregistration investigation of Soul Quest. *Id.* First, on the basis of DEA's investigation, DEA found that "Soul Quest has not satisfied its burden under RFRA of demonstrating that its use of ayahuasca is pursuant to a religious exercise and based on a sincerely held religious belief." *Id.* at 4. As to this finding, DEA explained, *inter alia*, "[i]n practice, Soul Quest . . . promotes ayahuasca to the public for self-help and therapeutic reasons, rather than solely to fellow believers for . . . religious ritual purposes," *id.*, including through language from Soul Quest's website that "supports a conclusion that Soul Quests understands and advertises the use and distribution of ayahuasca to the public as fundamentally

medicinal," *id.* at 3. Accordingly, "DEA . . . conclude[d] that Soul Quest's promotion of ayahuasca to the public in this manner does not constitute a sincere exercise of religion under RFRA." *Id.* at 4. Second, "[b]ased upon a thorough review of the entire record, DEA . . . conclude[d] that Soul Quest's practices . . . cannot be accommodated in a manner that would allow DEA to preserve its compelling interests in public health and safety and in preventing illegal diversion of ayahuasca." *Id.* at 8. As to this finding, DEA noted that "to the extent Soul Quest and its customers use ayahuasca for purposes other than sincere religious exercise, their own use constitutes unlawful diversion." *Id.* Finally, DEA stated that "[t]his letter is a final determination under 21 U.S.C. § 877." *Id.*

III.    <u>The Instant Litigation</u>

On April 22, 2020, plaintiffs filed their original complaint, ECF No. 1, and motion for preliminary injunction, ECF No. 2. On May 4, 2020, before defendants responded to plaintiffs' original complaint or motion, plaintiffs filed their Verified Amended Complaint for Declaratory and Permanent Injunctive Relief, ECF No. 13, and Plaintiffs' Amended Petition for Preliminary Injunction, ECF No. 15.

On June 15, 2020, the parties jointly moved the Court to stay this case "to allow time for Defendant the [DEA] to conduct the fact-finding that is necessary for it to adjudicate Plaintiffs' pending petition for a religious exemption from the [CSA]." ECF No. 23. The Court granted the parties' motion. ECF No. 24 at 2. On October 16, 2020, the parties advised the Court that they "have been actively pursuing resolution of the current matter" and DEA expected to "issue a final determination on Plaintiffs' petition within one-hundred-twenty (120) days of the date of a Court order extending the stay in this case." ECF No. 25 at 2. Accordingly, the parties jointly requested that the Court extend the stay

for an additional 120 days. *Id.* The Court extended the stay. ECF No. 26. On February

22, 2021, the parties filed a joint status report advising the Court that "DEA expects that

it will be in a position to issue a final determination on Plaintiffs' petition on or about April

15, 2021." ECF No. 27 at 3. The Court extended the stay "pending resolution of Plaintiffs'

petition by the DEA." ECF No. 28. The Court further denied Plaintiffs' Amended Petition

for Preliminary Injunction, ECF No. 15, and ordered that "Plaintiff shall notify this Court

within **fourteen days** of the resolution of proceedings before the DEA." ECF No. 28.

Plaintiffs did not notify the Court of DEA's issuance of the Final Determination Letter by

April 30, 2021. Instead, on May 3, 2021, plaintiffs filed Plaintiffs' Notice of Intention to File

Renewed Motion for Preliminary Injunction, which did not mention the Final Determination

Letter. ECF No. 29. On May 7, 2021, plaintiffs filed Plaintiffs' Motion for Leave to Amend

Complaint Under *Fed. R. Civ. P.* 15, ECF No. 30, and Plaintiffs' Renewed Petition for

Preliminary Injunction, ECF No. 31.[1] On May 11, 2021, the Court granted plaintiffs leave

to amend their complaint, Order, ECF No. 41, and plaintiffs filed the Second Amended

Complaint, ECF No. 42. In the Second Amended Complaint, plaintiffs assert against

defendants the same five counts as asserted in the First Amended Complaint: (1)

Freedom of Religion, Compl. ¶ 93; (2) RFRA, *id.* ¶¶ 95, 97; (3) Procedural Due Process,

id. ¶ 104; (4) Substantive Due Process, *id.* ¶¶ 115, 117; (5) Prior Restraint, *id.* ¶¶ 119-21.

## STANDARD OF REVIEW

A court "must have both statutory and constitutional jurisdiction before it may

decide a case on the merits." *See Friends of the Everglades v. EPA*, 699 F.3d 1280, 1288

---

[1] Contemporaneous with this motion, defendants have filed their opposition to Plaintiffs' Renewed Petition for Preliminary Injunction (Defs.' Opp'n).

(11th Cir. 2012). A Rule 12(b)(1) motion should be granted if the complaint fails to allege facts sufficient to establish subject matter jurisdiction or if evidence external to the complaint refutes the jurisdictional facts alleged. *See McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). Plaintiffs bear the burden of demonstrating jurisdiction by a preponderance of the evidence. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *McCormick v. Aderholt*, 293 F.3d 1254, 1257-58 (11th Cir. 2002). In considering a 12(b)(6) motion, courts are not required to accept inferences unsupported by the facts or legal conclusions that are cast as factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## ARGUMENT

**I.  THIS COURT LACKS JURISDICTION OVER PLAINTIFFS' CLAIMS BECAUSE 21 U.S.C. § 877 VESTS EXCLUSIVE JURISDICTION IN THE COURTS OF APPEALS.**

Federal courts "are courts of limited jurisdiction" that "possess only that power authorized by the Constitution and statute," *Kokkonen*, 511 U.S. at 377, which "is not to be expanded by judicial decree." *United States v. Salmona*, 810 F.3d 806, 810 (11th Cir. 2016) (quoting *Kokoknen*, 511 U.S. at 377). Congress has the power to "prescribe the procedures and conditions under which, and the courts in which, judicial review of administrative orders may be had." *City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320, 335-36 (1958). One example is when Congress provides for exclusive review in a court of appeals of an administrative agency's actions. *See id.*; *see also Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 378-79 (2012). And although "[l]itigants generally may seek review of agency action in district court under any applicable jurisdictional grant," that presumption is displaced when Congress has established a "special statutory review scheme." *Jarkesy v. SEC*, 803 F.3d 9, 15 (D.C. Cir. 2015) (citing *Bowles v. Russell*, 551

U.S. 205, 212 (2007)). "It is well settled that if Congress … specifically designates a forum for judicial review of administrative action, that forum is exclusive." *Drummond Coal Co. v. Watt*, 735 F.2d 469, 475 (11th Cir. 1984); *see also Jarkesy*, 803 F.3d at 15.

Here, Congress explicitly determined that jurisdiction lies exclusively in the courts of appeals over the DEA's administration and application of the CSA. *See* 21 U.S.C. § 877. Specifically, Congress provided that:

> All final determinations, findings, and conclusions of the Attorney General under [the CSA] shall be final and conclusive decisions of the matters involved, except that any person aggrieved by a final decision of the Attorney General may obtain review of the decision in the United States Court of Appeals for the District of Columbia or for the circuit in which his principal place of business is located upon petition filed with the court and delivered to the Attorney General within thirty days after notice of the decision.

21 U.S.C. § 877.[2] Courts have repeatedly affirmed that § 877 channels review over the DEA's administration and application of the CSA exclusively into the courts of appeals. *See, e.g.*, *Sharma v. DEA*, 511 F. App'x 898, 903 (11th Cir. 2013); *John Doe, Inc. v. DEA*, 484 F.3d 561, 568 (D.C. Cir. 2007); *Oregon v. Ashcroft*, 368 F.3d 1118, 1120 & n.1 (9th Cir. 2004), *aff'd sub nom. Gonzales v. Oregon*, 546 U.S. 243 (2006); *Hemp Indus. Ass'n v. DEA*, No. 20-cv-2921-JEB, 2021 WL 1734920, at *1 (D.D.C. May 3, 2021). For example, the Eleventh Circuit has determined that § 877 vests exclusive jurisdiction in the courts of appeals over the DEA's termination of a physician's registration. *See Sharma*, 511 F. App'x at 903 (considering claims under "the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments"). The D.C. Circuit likewise has held that § 877 vests "exclusive jurisdiction in the courts of appeals over '[a]ll final determinations,

---

[2] The Attorney General has delegated his authority under the CSA to DEA. S*ee* 28 C.F.R. § 0.100(b).

findings, and conclusions' of the DEA applying the CSA." *John Doe*, 484 F.3d at 568 (considering Administrative Procedure Act and Due Process claims).

Where Congress has established a "special statutory review scheme"—as it did in § 877—courts assume that "Congress intended [for] that procedure to be the *exclusive means* of obtaining judicial review in those cases in which it applies." *Jarkesy*, 803 F.3d at 15 (emphasis added). Plaintiffs may not subvert the exclusive review scheme Congress established in § 877 by bringing their claims in district court. *See Green v. Brantley*, 981 F.2d 514, 521 (11th Cir. 1993) ("Where Congress has provided in the courts of appeals an exclusive forum for the correction of procedural and substantive administrative errors, a plaintiff may not bypass that forum by suing for damages in district court."). After all, an exclusive jurisdiction provision extends to "all issues inhering in the controversy." *City of Tacoma*, 357 U.S. at 335-36 (interpreting similarly worded exclusive-review statute and explaining that all objections to agency action encompassed by exclusive-review provision "must be made in the Court of Appeals or not at all"). In this Circuit, courts have looked at whether the merits of a plaintiff's claims are "intertwined" with a review of the merits of an agency's actions covered by an exclusive review provision. *Green*, 981 F.2d at 521; *Doe v. FAA*, 432 F.3d 1259, 1263 (11th Cir. 2005) (holding that constitutional claims "f[e]ll within the ambit" of an exclusive-review provision because such claims "necessarily require a review of the procedures and actions taken by the FAA with regard to the mechanics' certificates"). Only where "denial of review in the district court will truly foreclose all judicial review," would district court jurisdiction be proper. *George Kabeller, Inc. v. Busey*, 999 F.2d 1417, 1421-22 (11th Cir. 1993) (citation omitted). This is why "as a matter of practice," challenges to the DEA's interpretation of the CSA are almost always

"filed directly in the court of appeals." *John Doe*, 484 F.3d at 568.

As explained below, plaintiffs' claims are intertwined with DEA's determination about the CSA's application. As in *Kabeller*, "review is not precluded; review resides exclusively with the court of appeals." 999 F.2d at 1421-22. Because all of plaintiffs' claims fall comfortably within the scope of § 877, review of those claims "resides exclusively in the court of appeals," *id.*, and plaintiffs' claims should be dismissed for lack of jurisdiction.

### A. Under Section 877, jurisdiction over plaintiffs' claims lies exclusively in the court of appeals.

There can be no real doubt that plaintiffs challenge a "final determination[], finding[], [or] conclusion[]" made by DEA concerning DEA's application of the CSA when considering petitions for religious exemptions. 21 U.S.C. § 877. Indeed, plaintiffs' pleadings are replete with disagreements over DEA's findings, conclusions, and its Final Determination denying Plaintiffs' Exemption Request. These disagreements fall into two categories, both of which are covered under § 877. The first is a challenge to DEA's determination about the framework for considering petitions for religious exemptions from the generally applicable prohibitions of the CSA, a determination which is provided in the Guidance. The second is a challenge to DEA's Final Determination. Though plaintiffs' claims include constitutional, statutory, and procedural objections, these claims challenge DEA decisions about the CSA's application. As such, they must be brought exclusively "in the United States Court of Appeals for the District of Columbia or for the circuit in which his principal place of business is located." 21 U.S.C. § 877. Because this Court lacks jurisdiction over plaintiffs' claims, the claims must be dismissed.

### 1. Plaintiffs' challenges to the Guidance and the CSA

Plaintiffs' challenge to the Guidance falls within the ambit of § 877. Separate from

the denial of their petition, plaintiffs wish to overturn DEA's general process for petitions for religious exemptions, as articulated in the Guidance. *See* Compl. ¶¶ 99-117. Plaintiffs fundamentally disagree with the Guidance, arguing it "is unconstitutional both on its face and as-applied" under the First and Fourteenth Amendments. ECF No. 31 at 2-3. In that vein, plaintiffs contend that DEA "lacks [] the authority . . . to render decisions pertaining to religious exemption applications." *Id.* at 12. They lodge a range of procedural objections to DEA's decisional process for religious exemptions including complaints about the alleged "lack of standards," the "unlimited scope" of a pre-registration investigation, DEA's claim-processing time, and DEA's "failure to even attempt to establish a proper regulatory regime." *Id.* at 20, 26; *see also id.* at 17 ("Defendants have never developed rules and regulations, consistent with APA requirements."). Plaintiffs seek a declaration that "Defendants' promulgated guidelines" violate the APA and the Constitution.[3]

Plaintiffs also disagree with DEA's longstanding conclusion (as embodied in the CSA) that DMT, a Schedule I controlled substance, is a dangerous substance with a high potential for abuse and significant health risks. *See* 21 U.S.C. § 812(c), Schedule I(c)); *see also* Final Determination at 5; ECF No. 31 at 15 ("Nor can it be said that Plaintiffs' sacramental tea poses any significant health risks."). In that way, plaintiffs also seek to overturn Congress's prohibition against the import, distribution, and consumption of DMT

---

[3] Plaintiffs' facial challenges to the Guidance are barred for another reason: the six-year statute of limitations. *See* 28 U.S.C. § 2401(a); *Wind River Min. Corp. v. United States*, 946 F.2d 710, 715 (9th Cir. 1991). Under § 2401(a), if a plaintiff "wishes to bring a policy-based facial challenge to the government's decision," the suit must be brought within six years. *Wind River*, 946 F.2d at 715 (considering *ultra vires* claim). Because plaintiffs' facial challenges do not depend on the particular application of the Guidance to plaintiffs, they have been time barred since 2015. *See id.* (where "a challenger contests the substance of an agency decision as exceeding constitutional or statutory authority, the challenger may do so later than six years following the decision").

because plaintiffs believe they are entitled to a religious exemption. Plaintiffs' complaint seeks as relief "an order permanently enjoining the Defendants from enforcing the prohibitions of the Controlled Substances Act against the Plaintiffs for the Plaintiffs sacramental use of ayahuasca." Compl. Prayer for relief, d.

These claims challenge DEA's determination about its decisional process for considering petitions for religious exemptions from the CSA. Multiple courts have held that these sorts of claims challenging a DEA policy must be brought in the court of appeals. One district court, when considering a similar challenge, held that under § 877 plaintiffs must obtain judicial relief in a court of appeals even when the plaintiffs argued they were "not challenging a final action but the applicability of the regulation entirely." See Woods v. DEA, 283 F. Supp. 3d 649, 663 (W.D. Tenn. 2017). Likewise another court held that "Congress has provided an exclusive pathway for federal-court challenges to final DEA decisions such as the Interim Final Rule" because such a claim "challenges an assertion of agency authority." Hemp Indus., 2021 WL 1734920, at *1. Accordingly, this court lacks jurisdiction over plaintiffs' challenges to the Guidance and the CSA.

2.   <u>Challenge to DEA's denial of Plaintiffs' Exemption Request</u>

Plaintiffs also seek review of DEA's denial of Plaintiffs' Exemption Request through their RFRA and constitutional claims. Compl. ¶¶ 33, 88-98, 104, 110, 116, 121. These claims, too, must be brought in a court of appeals. As relief, Plaintiffs request a declaration "that the Defendants' actions in denying the Plaintiffs' application" violate the constitution and RFRA. Compl., Prayer for Relief (a). Plaintiffs wish to overturn DEA's determination that it would *not* grant plaintiffs a DEA registration, and ask this court to step into the shoes of DEA and order the parties to "present to the Court a plan to effectuate the

13

importation, distribution, and accounting for the Plaintiffs' sacramental tea." *Id.* at (c). Plaintiffs seek this relief because they contend that defendants have failed to "provide any evidence of a compelling governmental interest" in regulating ayahuasca. Compl. ¶ 97. But DEA determined otherwise after a full pre-registration investigation, *see* Defs.' Opp'n at Sec. II.A.2. The requested order is contrary to DEA's determination that plaintiffs are not entitled to a registration. And, because they did not qualify for an exemption, plaintiffs now seek an injunction preventing defendants "from arresting, prosecuting, or threatening Plaintiffs and members of Plaintiff Soul Quest Church with arrest, prosecution, and/or imprisonment for importing, distributing and ingesting the sacramental tea solely at Plaintiff Soul Quest Church services." ECF No. 31 at 33. But as the Eleventh Circuit concluded, plaintiffs "should have contested" the denial of "DEA registration by appealing to this court, pursuant to the scheme provided by the CSA." *Sharma*, 511 F. App'x at 903; *see also John Doe*, 484 F.3d at 570 ("The DEA's denial of Doe's permit is properly reviewable in [the D.C. Circuit] pursuant to 21 U.S.C. § 877.").

In sum, when distilled to its essence, the relief plaintiffs seek aims to nullify both the DEA's determination that plaintiffs did not demonstrate they qualify for a religious exemption and the Guidance interpreting the CSA as it applies to religious exemptions. As the District Court for the District of Columbia—in which the overwhelming majority of district court challenges to agency actions are brought—recently held, plaintiffs seeking "declaratory and injunctive relief that would functionally nullify" the "final determination" or "conclusion made by DEA," must "obtain review of that decision in the court of appeals" under § 877. *Hemp Indus.*, 2021 WL 1734920, at *6; *see also Otwell v. Ala. Power Co.*, 747 F.3d 1275, 1282 (11th Cir. 2014) ("The review entailed by Appellants' claims is

statutorily dedicated to the court of appeals, and the district court did not err by concluding it could not resolve the merits of Appellants' suit."). Because plaintiffs' claims belong in the court of appeals, this court must dismiss these claims for lack of jurisdiction.

Sound policy supports these rules. *See City of Rochester v. Bond*, 603 F.2d 927, 936 (D.C. Cir. 1979). Allowing plaintiffs to bring in district court, either on some alternative theory or by artful pleading what is, unavoidably in substance, a challenge to DEA determinations would "encourage[] forum shopping," *John Doe*, 484 F.3d at 570, and lead to "duplicative" review and accompanying delays. *Id.*; *see also John Doe, Inc. v. Gonzalez*, No. 06-CV-966-CKK, 2006 WL 1805685, at *21 (D.D.C. June 29, 2006) (noting similar reasons for exclusive court of appeals review, even when there is not a "final determination"), *aff'd*, *John Doe*, 484 F.3d 561. This is no less true for a pre-enforcement challenge to the CSA. *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994).

Indeed, essentially any challenge to a final decision about the CSA's application could be reframed as a challenge to the agency's authority to act in the first place, or as seeking a declaration that the activity affected by the final action is lawful or an injunction against enforcing the CSA. *Doe* is illustrative: there, the plaintiff sought to import what it contended was a Schedule III controlled substance; DEA denied an application for registration to do so on the grounds that the substance at issue was, in fact, in Schedule I. 484 F.3d at 564. The plaintiff raised APA and Due Process claims and argued that DEA was wrong to conclude that the substance at issue was not in Schedule III, and that DEA's denial of the application was therefore erroneous. *See id.* at 571. The D.C. Circuit held that such a claim could proceed only in a court of appeals. *Id.* at 568–70. The plaintiff in *Doe* could not simply have reframed its claim as one seeking declaratory relief that the

substance was in Schedule III, and then proceeded in district court. Nor could it have done so by framing its complaint as a claim that DEA was not authorized to enforce the CSA should the plaintiff choose to import the substance anyway. So too, here.

### B. Alternate statutory provisions do not override § 877's exclusive review provision to confer subject matter jurisdiction over plaintiffs' claims.

No statutory provision cited in the complaint confers subject-matter jurisdiction on this court. Plaintiffs first cite 28 U.S.C. § 1331. *See* Compl. ¶ 6 (citing 28 U.S.C. §§ 1331, 1343). But "[w]hen Congress provides for exclusive review in a court of appeals," as § 877 does, "that specific grant of jurisdiction displaces the general federal question statute, 28 U.S.C. § 1331." *Bold All. v. FERC*, No. 17-CV-1822-RJL, 2018 WL 4681004, at *4 (D.D.C. Sept. 28, 2018); *see also Mims,* 565 U.S. at 378–79 (general "principle" that "when federal law creates a private right of action . . . district courts possess federal-question jurisdiction under § 1331" does not "endure[ ]" where "Congress divests federal courts of their § 1331 adjudicatory authority"); *United States v. Fausto*, 484 U.S. 439, 448-49 (1988) (where a specific statute both provides subject matter jurisdiction and sets out the conditions under which substantive relief may be available, resort should not be made to the general federal question statute). This displacement applies with equal force where "Plaintiff's claims arise under the Controlled Substances Act." *John Doe, Inc.*, 2006 WL 1805685, at *17-18 (surveying cases holding that "challenges to DEA's determination under the CSA" must be brought in the court of appeals under § 877). The same is true here: the specific jurisdictional grant in § 877 overrides the general jurisdictional grant of § 1331.

That plaintiffs bring a RFRA claim does not alter this analysis. *See* Compl. ¶¶ 6-7. The Third Circuit recently considered whether a RFRA claim could be brought in district court where an exclusive-review provision applied. *Adorers of the Blood of Christ ("ABC")*

16

*v. FERC*, 897 F.3d 187, 198 (3d Cir. 2018) (considering exclusive-review provision of Natural Gas Act). The court held that "a claim under RFRA" brought under § 1331 "does not abrogate or provide an exception to a specific and exclusive jurisdictional provision prescribed by Congress for judicial review of an agency's action." *Id.*; *see also Gen. Fin. Corp. v. FTC*, 700 F.2d 366, 368 (7th Cir. 1983) (similar). The court expressly rejected the argument that RFRA grants plaintiffs the "statutory right to assert their RFRA claim in district court," determining that "[n]owhere does the text specifically confer jurisdiction to the federal district courts to hear RFRA claims." *ABC*, 897 F.3d at 194. Thus, the court held that the RFRA claim must be brought in the manner provided in the exclusive-review provision and affirmed dismissal of the RFRA claim for lack of jurisdiction. *Id.* at 190.

The same result follows here. RFRA does not require a claim to be brought in district court; it provides that an individual may assert a RFRA violation "as a claim or defense in a judicial proceeding." 42 U.S.C. § 2000bb-1(c). Only where "denial of review in the district court will truly foreclose all judicial review," is district court jurisdiction proper. *Kabeller*, 999 F.2d at 1421–22. Plaintiffs here may "assert [a RFRA] violation" "as a claim" in a court of appeals under § 877. 42 U.S.C. § 2000bb-1(c). As in *Kabeller*, "review is not precluded; review resides exclusively with the court of appeals." 999 F.2d at 1421-22.

Nor does 28 U.S.C. § 1343 confer jurisdiction. *See* Compl. ¶ 6 (relying on § 1343). Section 1343 is the jurisdictional correlate to 42 U.S.C. § 1983. *See Lynch v. Household Fin. Corp.*, 405 U.S. 538, 540 (1972). But a § 1983 claim may not be brought directly against a federal agency, where plaintiffs do not allege a deprivation of a right "under color of state law." *See FDIC v. Meyer*, 510 U.S. 471, 486 (1994); *West v. Atkins*, 487 U.S. 42, 48 (1988) ("To state a claim under § 1983, a plaintiff must allege the violation of

17

a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person *acting under color of state law.*") (emphasis added). Plaintiffs do not allege that defendants acted under color of state law and, in fact, the complaint does not mention any state law or official. Thus, plaintiffs have failed to state a claim under § 1983, *see* Compl. Counts 1, 3-5 (relying on § 1983), and § 1343 cannot serve as the jurisdictional basis for this suit.

## II. PLAINTIFFS' CONSTITUTIONAL CLAIMS MUST BE DISMISSED UNDER RULE 12.

As established above, all of plaintiffs' claims are subject to § 877. This includes their direct, merits-based challenges to the Final Determination and their constitutional claims. *See Green*, 981 F.2d at 521; *Doe*, 432 F.3d at 1263; *Kabeller*, 999 F.2d at 1421–22; *John Doe*, 484 F.3d at 568. Dismissal of the entire action is warranted for this reason alone. In the event the Court did have jurisdiction, however, the constitutional claims would still be subject to dismissal pursuant to Rule 12, as set forth below.

### A. Plaintiffs' free exercise claim must be dismissed because the CSA is a neutral law of general applicability.

Plaintiffs' Free Exercise claim should be dismissed. Plaintiffs contend that DEA violated the First Amendment by, first, effectively denying "through silence" their exemption petition and, second, by later expressly denying it. Compl. ¶ 93. As an initial matter, plaintiffs' allegedly religious exercise appears to have continued unabated throughout the pre-registration investigation, during which time Soul Quest hosted ayahuasca retreats, held services, and imported DMT through Nebraska and New York to Soul Quest's facilities in Florida. Compl. Ex. 6, ECF 30-1 at 92-99.

In any event, this claim fails for a more fundamental reason: the CSA is a neutral and generally applicable law, and "the right of free exercise does not relieve an individual

of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes" what one's religion requires. *Emp. Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 879 (1990). "[T]he threshold questions in analyzing a law challenged under the Free Exercise Clause are (1) is the law neutral, and (2) is the law of general applicability?" *First Assembly of God of Naples v. Collier Cnty.*, 20 F.3d 419, 423 (11th Cir. 1994). A law is neutral unless its "object . . . is to infringe upon or restrict practices because of their religious motivation*." Church of the Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 533 (1993). A law is generally applicable if the government does not "in a selective manner impose burdens only on conduct motivated by religious belief." *Id.* at 543. A neutral and generally applicable law "is presumed constitutional and the burden is on the plaintiff to prove that it is not rationally related to a legitimate government interest." *Keeton v. Anderson-Wiley*, 664 F.3d 865, 880 (11th Cir. 2011).

Plaintiffs do not dispute the CSA's neutrality or general applicability. *See* Compl. ¶¶ 83-93. Nor could they: Congress enacted the CSA to prevent "the diversion of drugs from legitimate channels to illegitimate channels." *United States v. Blanton*, 730 F.2d 1425, 1427 (11th Cir. 1984). The CSA's purpose is to ensure public health and safety, *see* 21 U.S.C. § 801, not to "suppress[] … religion or religious conduct," *Lukumi*, 508 U.S. at 533. The CSA is rationally related to legitimate public health and safety interests by ensuring an adequate supply of drugs with a "useful and legitimate medical purpose" while preventing the "illegal importation, manufacture, distribution, and possession and improper use of controlled substances," 21 U.S.C. § 801; *see O Centro Espirita Beneficente Uniao do Vegetal v. Mukasey*, No. CV 00-1647 JP/RLP, 2008 WL 11451470, at *1 (D.N.M. June 16, 2008). Because plaintiffs have failed to allege a Free Exercise

violation, the claim should be dismissed.

**B. Plaintiffs' procedural due process claim fails because plaintiffs were afforded notice and an opportunity to be heard prior to DEA's Final Determination and because § 877 grants federal appellate courts judicial review of the Determination.**

In Count Three, plaintiffs allege that defendants have violated plaintiffs' "right to procedural due process." Compl. ¶ 105. According to plaintiffs, this alleged violation takes two forms. First, plaintiffs allege that defendants' "silen[ce] upon" Plaintiffs' Exemption Request "effectively den[ied]" the request "without granting the Plaintiffs access to a fair and timely consideration of their application." *Id.* ¶ 104. Second, plaintiffs allege that defendants "adopted an *ad hoc* decision making process, without definition or substantive constitutional safeguards" to reach the Final Determination. *Id.* Neither alleged violation supports a claim under the constitutional guarantee of procedural due process.

When considering a procedural due process claim, after determining that the plaintiff had a protected liberty or property interest, to which he was entitled and that was infringed by government action, a court must determine if the individuals "receive[d] sufficient process regarding that deprivation." *Ross v. Clayton Cnty.,* 173 F.3d 1305, 1307 (11th Cir. 1999). It is well-established that "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge,* 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552 (1965)); *Reams v. Irvin,* 561 F.3d 1258, 1263 (11th Cir. 2009). "[E]ven where a governmental entity fails to follows its own regulations providing for procedural safeguards, it is not a denial of due process if the individual was provided with adequate notice such that his rights were not prejudiced." *Sharma*, 511 F. App'x at 902. Moreover, "there is no due process violation where the government has made available a post-

deprivation remedy sufficient to correct an alleged procedural deprivation." *Id.* (citing *Cotton v. Jackson,* 216 F.3d 1328, 1331 n.2 (11th Cir. 2000) (per curiam).

As to the first alleged violation—that defendants "effectively den[ied]" Plaintiffs' Exemption Request "without granting the Plaintiffs access to a fair and timely consideration of" that request through "silen[ce]," Compl. ¶ 104, the viability of any such claim was extinguished when, on April 16, 2021, after an extensive pre-registration investigation of plaintiffs over the course of many months, DEA issued to plaintiffs its Final Determination. In that sense, defendants did provide plaintiffs with adequate process before denying Plaintiffs' Exemption Request. *Reams,* 561 F.3d at 1263.

Once a plaintiff has—like plaintiffs here—been given notice and opportunity to be heard, he can no longer maintain a claim alleging a deprivation of those mechanisms. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 494 (2009). While it may have taken longer than plaintiffs liked, DEA's investigation and Final Determination extinguish any procedural due process claim that previously might have been available to plaintiffs.

Plaintiffs' second due process contention is effectively a challenge to DEA's process for considering a registration application under the CSA. Compl. ¶ 104 (alleging that defendants' determination process is "*ad hoc* … , without definition or substantive constitutional safeguards"). But this characterization cannot support a procedural due process claim either. As the Eleventh Circuit has held, in the context of decisions by the DEA to "deny, revoke, or suspend registrations"—like the Final Determination here—a sufficient post-deprivation remedy exists because § 877 grants appellate courts "jurisdiction to review the Attorney General's decision" on the registration. *Sharma*, 511 F. App'x at 902 (citing *Cotton,* 216 F.3d at 1331 n.2). Accordingly, plaintiffs have failed to

state a claim for violation of the constitutional guarantees of procedural due process.

**C. Plaintiffs fail to state a substantive due process claim because their claims are covered entirely by the First Amendment.**

In Count Four, plaintiffs allege that the "processing of [Plaintiffs' Exemption Request] under [the Guidance] constitutes an arbitrary government act, in violation of the Plaintiffs' right to substantive due process." Compl. ¶ 117. In support of this claim, plaintiffs allege that the Guidance does not "explain what [DEA] will be searching for in an application, . . . or what may lead to a denial of an application," *Id.* ¶ 108, and, accordingly, "empower[s] [DEA] to arbitrarily approve or deny an application for a religious exemption, just as the Defendants are now attempting to do to the Plaintiffs." *Id.* ¶ 112; *see also id.* ¶¶ 108-109 (similar). Plaintiffs' allegations fail to state a claim for relief under the constitutional guarantee of substantive due process.

In *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997), the Supreme Court reiterated the "established method of substantive-due-process analysis." The first step in assessing a substantive due process claim is to ascertain the specific liberty interest the plaintiff is invoking, *id.* at 722, of which the plaintiff must provide a "careful description." *Id.* at 720-21 (quoting *Collins v. Harker Heights*, 503 U.S. 115, 125 (1992), and *Reno v. Flores*, 507 U.S. 292, 302 (1993)). The only liberty interests plaintiffs describe are "to practice their religion freely," Compl. ¶ 89, and to engage in speech in the form of "ongoing proselytization and promotional efforts . . . featur[ing] ayahuasca heavily," *id* at ¶ 119.[4]

---

[4] *See also, e.g.*, *id.* at ¶ 4 (alleging that defendants' actions "burden the central practice of Plaintiffs' religion"), ¶ 40 (alleging that plaintiff Soul Quest "provides street-level ministry outreach, spiritual activities, and spiritual/faith-based education"), ¶ 74 (alleging that defendants' actions affect plaintiffs' ability to hold sacramental ayahuasca ceremonies "thus abridging fundamental freedoms and statutory rights"), ¶ 93 (alleging that defendants' actions "constitute[] an infringement of the Plaintiffs' rights arising under the

But plaintiffs cannot assert either of these rights under the banner of substantive due process, because each is defined entirely by a specific constitutional provision: the Free Exercise Clause and the Free Speech Clause. The Supreme Court and the Eleventh Circuit have repeatedly held that "where another provision of the Constitution 'provides an explicit textual source of constitutional protection,' a court must assess a plaintiff's claims under that explicit provision and 'not the more generalized notion of "substantive due process."'" *Conn v. Gabbert*, 526 U.S. 286, 293 (1999) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)); *West v. Davis*, 767 F.3d 1063, 1067 (11th Cir. 2014) (same). The First Amendment provides more specific sources of constitutional protection for claims of religious freedom, *see, e.g.*, *Warner v. City of Boca Raton*, 267 F.3d 1223, 1226 (11th Cir. 2001), and freedom of speech, *see, e.g.*, *Battiste v. Lamberti*, 571 F. Supp. 2d 1286, 1291 n.2 (S.D. Fla. 2008), and thus forecloses plaintiffs' substantive due process claims. *See Albright v. Oliver*, 510 U.S. 266, 273 (1994). Accordingly, the Court should dismiss plaintiffs' substantive due process claim.

Even if this claim were not so precluded, it would still fail. That is because the Supreme Court has rejected the suggestion to "largely abandon this restrained methodology, and instead ask 'whether [the challenged] statute sets up one of those "arbitrary impositions" or "purposeless restraints" at odds with the Due Process Clause of the Fourteenth Amendment.'" *Glucksberg*, 521 U.S. at 721 (quoting *Poe v. Ullman,* 367 U.S. 497, 543 (1961) (Harlan, J., dissenting)). Plaintiffs' allegations, which sound only in such terms of arbitrariness, do not state a claim under the "established method[ology]."

---

Freedom of Religion clause of the First Amendment to the United States Constitution"), ¶ 121 (alleging that defendants' actions "severely burden[] the Plaintiffs' rights to freedom of speech, in violation of the First Amendment to the United States Constitution").

**D. Plaintiffs' free speech claim must be dismissed because they have not alleged a prior restraint.**

Plaintiffs allege in the Fifth Count that defendants have "severely burden[ed] the Plaintiffs' rights to freedom of speech." Compl. ¶ 121. Plaintiffs offer few details about this alleged violation or any role of defendants therein; they allege only that because their "ongoing proselytization and promotional efforts . . . feature ayahuasca," DEA's denial of Plaintiffs' Exemption Request "effectively functions as a prior restraint upon the Plaintiffs' speech." *Id.* ¶¶ 119-20. This claim must be dismissed because plaintiffs have not alleged a First Amendment speech injury that is traceable to defendants. And even if they had, the claim fails because it "stretches the term 'prior restraint' well beyond the limits established by" caselaw. *Alexander v. United States*, 509 U.S. 544, 549–50 (1993).

This claim fails for lack of jurisdiction. Because plaintiffs identify no federal law or action that criminalizes or regulates speech concerning illicit drug use, generally, or plaintiffs' ayahuasca use specifically, plaintiffs lack standing to assert this claim. *See, e.g.*, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 419 (2013) (noting the absence of authority "hold[ing] or even suggest[ing] that plaintiffs can establish standing simply by claiming that they experienced a 'chilling effect' that resulted from a governmental policy that does not regulate, constrain, or compel any action on their part"). Significantly, plaintiffs do not allege that they have actually refrained or been chilled from speaking about ayahuasca. But even if they had alleged a chill, such an injury would not be traceable to defendants. *Id.* at 416 (plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending," because such injuries "are not fairly traceable to" the challenged government action).

For similar reasons, plaintiffs have not alleged facts to support a free speech claim.

As the Supreme Court explained, "the term prior restraint is used 'to describe administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur.'" *Alexander*, 509 U.S. at 550 (quoting M. Nimmer, Nimmer on Freedom of Speech § 4.03, p. 4-14 (1984)). "[C]ourt orders that actually forbid speech activities—are classic examples of prior restraints." *Id.* (citing Nimmer § 4.03, at 4-16). Similarly, a statute authorizing courts to issue injunctions prohibiting future expression is a prior restraint. *See Vance v. Universal Amusement Co.,* 445 U.S. 308 (1980); *N.Y. Times Co. v. United States,* 403 U.S. 713, 714 (1971).

But nothing plaintiffs actually challenge in their complaint—neither the CSA nor the Final Determination—restrains plaintiffs' expression in any way. No federal law criminalizes speech about illicit drug use, nor do plaintiffs allege that any does. Compl. ¶¶ 119-21. And neither the Final Determination nor any other cited communication from DEA to plaintiffs says anything about the permissibility of plaintiffs' "proselytizing and promotional efforts," or threatens an enforcement action on the basis of any such efforts. Compl., Ex. 6. Rather, much like the forfeiture order in *Alexander*, the Final Determination "does not *forbid* [plaintiffs] from engaging in any expressive activities in the future, nor does it require [them] to obtain prior approval for any expressive activities," and thus "imposes no legal impediment to—no prior restraint on—[plaintiffs'] ability to engage in any expressive activity [they] choose[]." 509 U.S. at 550–51. Thus, as in *Alexander*, plaintiffs' First Amendment speech claim must be rejected and dismissed.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Complaint.


Dated:  June 1, 2021                         Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Director
Civil Division, Federal Programs Branch

/s/ *Julie Straus Harris*
JULIE STRAUS HARRIS
    DC Bar # 1021928
Senior Trial Counsel

MICHAEL J. GAFFNEY
    DC Bar # 1048531
Trial Attorney

United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW, Room 11514
Washington, D.C. 20005
Tel: (202) 353-7633
Fax: (202) 616-8470
E-mail: julie.strausharris@usdoj.gov

*Counsel for Defendant*

## Certificate of Compliance with Local Rule 3.01(g)

By videoconference on May 4, 2021, and by email on May 28, 2021, undersigned counsel conferred in good faith regarding the relief requested by this motion. Counsel for plaintiffs advised that plaintiffs oppose the relief sought in this motion.

/s/ *Julie Straus Harris*
JULIE STRAUS HARRIS