UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SOUL QUEST CHURCH OF MOTHER )
EARTH, INC. and CHRISTOPHER )
YOUNG, )
)
       Plaintiffs, )
) No. 6:20-cv-701-WBB-DCI
  v. )
)
MERRICK B. GARLAND, Attorney )
General of the United States of America, )
and D. CHRISTOPHER EVANS, Acting )
Administrator of the U.S. Drug )
Enforcement Administration, )
)
       Defendants. )
)

DECLARATION OF CLAUDE M. REDD

I, Claude M. (Martin) Redd, declare:

1. I am an employee of the United States Department of Justice (DOJ), Drug Enforcement Administration (DEA), and have been employed by DEA since February 2005, in a series of increasingly responsible positions as a Diversion Investigator (DI), supervisory DI, and manager.

2. I currently serve as the Section Chief for the Registration and Program Support Section (DRR), Diversion Control Division, in DEA Headquarters. I have held this position since February 15, 2020. DRR is responsible for all registration programs and activities administered by the Diversion Control Division. DRR ensures registrant databases are maintained appropriately, conducts quality control and verification of

1

data, and provides management with reports and recommendations regarding registration activities and registrant information.

3. I previously served as a Diversion Program Manager for the Louisville Field Division from April 2018, to February 2020. Prior to the DPM position in Louisville, I served as the Unit Chief over the Basic Diversion Training at the DEA's Training Academy in Quantico, Virginia, from May 2016, to April 2018. Prior to the Academy, I was a Diversion Group Supervisor in the Louisville District Office from August 2010 to May 2016 and prior to becoming a Group Supervisor in the Louisville District Office, I was a Diversion Investigator in the Kansas City District Office from April 2005, to August 2010. I am therefore fully familiar with the planning, conduct, and oversight of diversion investigations, including pre-registration investigations.

4. I submit this declaration in support of the Defendants' opposition to the motion for a preliminary injunction filed by Plaintiffs in the above-captioned case. The information contained herein is based on my personal knowledge and on information available to me in my official capacity.

5. DEA's mission is the enforcement of the Controlled Substances Act (CSA), as amended, and other narcotics laws and regulations. The mission of DEA's Diversion Control Division is to prevent, detect, and investigate the diversion of controlled pharmaceuticals and listed chemicals from legitimate sources, while ensuring an adequate and uninterrupted supply for legitimate needs, including medical, commercial, scientific, and religious use.

6. The CSA created a closed regulatory system under which all businesses and other entities that import, export, manufacture, or distribute controlled substances, all

health care professionals licensed to dispense, administer, or prescribe controlled substances, and all pharmacies authorized to fill prescriptions for controlled substances must register with DEA. Registrants must comply with regulatory requirements relating to drug security and record-keeping. Diversion Investigators conduct pre-registration investigations when an entity applies for a registration. DIs also conduct audits and on-site inspections to deter or detect the diversion of controlled substances from legitimate into illegal markets.

7. By regulating the movement of controlled substances from importation or manufacture through distribution and delivery to the ultimate user, such as a patient, the closed regulatory system provides a chain of custody which helps ensure that controlled substances are not being diverted into illegal channels, and are not provided to the public in a manner that can threaten public health and safety.

9. I understand that, on April 16, 2021, DEA Assistant Administrator (AA) William T. McDermott, the head of the Diversion Control Division, issued a final determination denying a petition presented by Plaintiffs for exemption from otherwise applicable requirements of the CSA to enable Plaintiffs to import, possess, and distribute plants from which to manufacture and distribute an herbal tea called "ayahuasca" for religious purposes.

10. I am aware that the ayahuasca tea contains the hallucinogen dimethyltryptamine (DMT), a controlled substance listed in schedule I of the CSA and its governing regulations. *See* 21 U.S.C. § 812(c)(I)(c)(6); 21 C.F.R. § 1308.11(d)(19). Placement in schedule I means that DMT has (1) a high potential for abuse; (2) no currently accepted medical use in treatment in the U.S.; and (3) a lack of accepted

safety for use under medical supervision. 21 U.S.C. § 812(b)(1). Placement in schedule 1 also renders the unauthorized manufacture, distribution, or possession of DMT a criminal offense. 21 U.S.C. §§ 841(a)(1), 844(a). Accordingly, under federal law, ayahuasca tea and its main plant ingredients, which contain DMT, may not be imported, manufactured, possessed, or distributed within the United States outside the closed regulatory system created by the CSA. 21 U.S.C. §§ 841, 844, 952, 957, 960.

11. I also understand that, in the April 16, 2021, final determination, AA McDermott determined both that Plaintiffs had not established its importation, manufacture, and distribution of DMT constituted a sincere exercise of religion and that the CSA's prohibition on the importation and possession of DMT as applied to petitioners is the least restrictive means of preventing diversion of a Schedule I controlled substance into illicit channels and protecting the public health.

12. I am also advised that, in its motion for a preliminary injunction, Plaintiffs have asked the Court to enjoin DEA:

> (a) from arresting, prosecuting, or threatening Plaintiffs and members of Plaintiff Soul Quest Church with arrest, prosecution, and/or imprisonment for importing, distributing and ingesting the sacramental tea solely at Plaintiff Soul Quest Church services; [and]
>
> (b) ordering that within 30 days after the date of issuance of declaratory relief, the parties present the Court with a plan to effectuate the importation, distribution, and accounting for the sacramental tea consistent with the rights of Soul Quest Church members to use the sacramental tea in ceremonies.

ECF No. 31 at 33.

13. Even if Plaintiffs had established that their importation, manufacture, and distribution of the tea constituted a sincere religious exercise – and DEA concluded in the final determination that they had not done so – the requested injunction would effectively prevent DEA from enforcing any provision of the CSA as to the Plaintiffs'

importation and distribution of ayahuasca. This would subvert the closed regulatory system created by the CSA and pose significant risks of diversion of the drug and, in turn, risk to the public health and safety. If Plaintiffs were granted the relief they request, they would be allowed to, among other things, import, handle, and distribute ayahuasca tea and its main plant ingredients, outside the closed regulatory system created by the CSA. DEA could not ascertain how much plant material Plaintiffs imported, how much tea it manufactured, or how and to whom it distributed it, much less ensure that the Schedule I controlled substance was not distributed or dispensed by Plaintiffs in a manner that could lead to unauthorized diversion of the drug or place public health and safety at risk. It also would impede DEA's ability to determine and ensure the lawful manufacturing, importation, and distributing of ayahuasca and its plant materials by third-parties working to provide or distribute it to Plaintiffs; removing Plaintiffs from the closed regulatory system would make it significantly more difficult to DEA to track and monitor any ayahuasca tea or plant material that third-parties distribute or receive from Plaintiffs.

14. The requested order that the parties negotiate a plan to "effectuate" Plaintiffs' importation and distribution of a controlled substance is also inconsistent with the CSA. Plaintiffs submitted a petition to DEA pursuant to DEA's published Guidance and, in so doing, elected to participate in a pre-registration investigation. The April 16, 2021, letter was a final determination resulting from the culmination of the preregistration investigation. Plaintiffs' request for injunctive relief would render the April 16, 2021, final determination letter, and the pre-registration investigative process which led to that determination, a nullity. It would also contravene the CSA, in which

Congress provided parties such as Plaintiffs a specific remedy: appeal from the final determination to the appropriate Circuit Court of Appeals.

15. The requested order to negotiate with Plaintiffs over a plan to "effectuate" their importation and distribution of a Schedule I controlled substance also wrongly disregards the CSA's requirement that registration must be in the public interest, 21 U.S.C. § 823(a), as well as DEA's findings of fact and conclusions on that essential criterion.

16. In the final determination, DEA concluded that Plaintiffs' conduct during the investigation evidenced lack of candor, making registration inconsistent with the public interest. As of this writing, over 1.92 million businesses, other entities, and individuals hold DEA registrations. While the closed regulatory system includes audits and on-site inspections, DEA's limited resources do not permit close monitoring of every registrant. The regulatory system is based upon voluntary compliance by businesses and individuals who have demonstrated during the pre-registration process their integrity an willingness to comply with federal law. Compelling DEA to "effectuate" the importation and distribution of a Schedule I controlled substance by entities and individuals, such as Plaintiffs, who have been found to demonstrate lack of candor in their dealings with DEA is inconsistent with the closed regulatory system, which relies on the trustworthiness of registrants in voluntarily complying with regulatory requirements and would pose inherent risks to human health and safety, as well as diversion. Should the Court grant Plaintiffs' requested injunction, Plaintiffs' lack of candor, and their unwillingness to commit to legally import or acquire DMT going forward, will severely

obstruct DEA's effort to determine whether and to what extent Soul Quest is responsible for diversion, as well as assess the downstream consequences of such diversion.

    I declare that the foregoing statements made by me are true and correct to the best of my information and belief.

Sworn to and subscribed this 1st day of June 2021

_____
CLAUDE M. (MARTIN) REDD