UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| SOUL QUEST CHURCH OF MOTHER EARTH, INC., a Florida Domestic Non-Profit Corporation, on its own behalf and on behalf of its members; and CHRISTOPHER YOUNG, individually and as spiritual leader of Soul Quest Church of Mother Earth,<br><br>    Plaintiffs,<br><br>vs.<br><br>MERRICK B. GARLAND, Attorney General of the United States of America; D. CHRISTOPHER EVANS, Acting Administrator of the U.S. Drug Enforcement Administration,<br><br>    Defendants. | Case No.: 6:20-cv-00701-WWB-DCI |

## SUPPLEMENT TO JOINT NOTICE OF PARTIES

COME NOW, the Parties, by and through their respective, undersigned counsel, supplement their June 1 Joint Notice regarding an evidentiary hearing (ECF No. 43).

### I.     PLAINTIFFS' SUPPLEMENTARY POSITION

The position of the Plaintiffs remains that an evidentiary hearing in this matter is necessary. Atop the grounds stated in the original Joint Notice, *supra* (and incorporated, herein, by reference), this position is re-fortified by the contents of the Defendants' Response in Opposition to Plaintiffs' Renewed Petition for Preliminary Injunction. (ECF No. 45) (hereinafter, "Defendants' Opposition"). Therein, the Plaintiffs identified additional factual disputes, as well as one notable quasi-legal/quasi-factual dispute which, Plaintiffs would assert, requires the Court to entertain the staging of an evidentiary

hearing. At such an evidentiary hearing, it would be the intent of the Plaintiffs to call additional testimony by its affiant, Plaintiff Christopher Young, as well as to cross-examine both the Defendants' Affiant, Karen Moreno. (ECF No. 45-1) ("Declaration of Karen Moreno"), and its lead Diversion Agent, James Graumlich. The estimated hearing time for such would be approximately two (2) days.

First, the Defendants' Opposition contains, akin to the Defendants' contemporaneous filing in its Motion to Dismiss Second Amended Complaint (ECF No. 44) (hereinafter, "Motion to Dismiss"), a jurisdictional argument. The jurisdictional argument centers around the erroneous notion by Defendants that the District Court lacks jurisdiction pursuant to 21 U.S.C. § 877. Although the Plaintiffs had learned in advance from Defendants' counsel that such a ground would be asserted in its Motion to Dismiss, the assertion of such in the Defendants' anticipated Opposition, was unanticipated. The Plaintiffs' deserve an opportunity to rebut such, and advise of their intent to file a motion for leave to submit a Reply to the Defendants' Opposition on this, and on other points raised by the Defendants.

As the issues raised in both of the Plaintiffs' pleadings – both for preliminary and, separately, for permanent injunctive relief – implicate rights articulated under the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb through 42 U.S.C. § 2000bb-4 (1993), the Plaintiffs are entitled to 'their day in court,' as RFRA requires that adjudication of disputes exclusively involve a "claim or defense in a judicial proceeding." As the Plaintiffs plan to argue during any evidentiary hearing, this exclusivity does not extend to the Defendants' *ad hoc* administrative determination – much less any administrative determination. These arguments are intended to be bolstered via the

2

cross-examination of the Defendants' own witnesses through whom the DEA investigation was supposedly spearheaded Agent James Graumlich and Agent Karen Moreno.

Interestingly, in the case-at-bar, the Plaintiffs had engaged – in good faith – over the past year in what were deemed "negotiations," with the Defendants. Unbeknownst to the Plaintiffs, the Defendants were not engaging in good-faith throughout this period; instead, the Defendants were engaged in a surreptitious effort to conduct its *ad hoc* decision making without ever negotiating the terms for such. In the end, on April 16, 2021, the Defendants simply slapped a label on this as a "final determination," one – incidentally – bereft of any of the negotiation upon which it premised the abatement of the current action for a period spanning nearly a year. The unique circumstances further underlie the Plaintiffs' assertions that an evidentiary hearing before the District Court is required. Next, the Plaintiffs specifically dispute the Defendants' factual assertions in opposition including, but not necessarily limited to, the following:

    1.    <u>The Defendants' Factual Assertions Regarding the Plaintiffs' Sincere Religious Beliefs</u>

The Defendants' assertions regarding the sincere religious beliefs held by the Plaintiffs and other members of Plaintiff Soul Quest Church as being invalid. The testimony which is intended to be further elicited from Plaintiff Christopher Young, as well as examination of Agents Graumlich and Moreno, are intended to demonstrate that the Plaintiffs' RFRA claim is likely to succeed on the merits.

Likewise, the intent of such questioning during an evidentiary hearing will be to rebut the notion that DEA conducted any form of assessment of the Plaintiffs' sincere religious beliefs. This would stand in direct rebuttal to the statements made by Agent

3

Karen Moreno. Further, even if the Defendants' continue to make such claims, the Plaintiffs deserve an opportunity to test upon what standards the Defendants were doing so; Agent Moreno's Declaration alludes to something, but fails to articulate anything specific guiding the Defendants' decision making. In rendering what the Plaintiffs' assert are arbitrary and capricious determinations regarding the sincerity of religious beliefs, and thus dismissing the notion of the serious burden placed upon the Plaintiffs in doing so, the Defendants' witnesses should be subject to questioning during an evidentiary hearing.

Indeed, the Defendants' assessment of sincerity of religious beliefs – at all – not only seems to sidestep court jurisprudence but its own current guidelines as put into place by former Attorney General Jeff Sessions, *to wit*

> [The Religious Freedom Restoration Act] applies to all sincerely held religious beliefs, whether or not central to, or mandated by, a particular religious organization or tradition. Religious adherents will often be required to draw lines in the application of their religious beliefs, and government is *not competent* to assess the reasonableness of such lines drawn, *nor would it be appropriate for government to do so*. Thus, for example, a government administration *may not second-guess* the determination of a factory worker that, consistent with his religious precepts, he can work on a line producing steel that might someday make its way into armaments but cannot work on a line producing the armaments themselves. Nor may the Department of Health and Human Services second-guess the determination of a religious employer that providing contraceptive coverage to its employees would make the employer complicit in wrongdoing in violation of the organization's religious precepts.

*Federal Law Protections for Religious Liberty*, U.S. Attorney General Jeff Sessions, October 6, 2017, at 4. (Emphasis added).

These issues underlie all of the Defendants' assertions questioning the meritorious nature of the Plaintiffs' ability to succeed on the merits of their claims including, but not

4

limited to, the Defendants using as some type of shill the lack of mention of the Ayahuasca Manifesto during interviews with DEA officials – interviews which, incidentally, were attended by Plaintiffs' local counsel. *See, e.g.* Defendants' Opposition at 14-15. Essentially, the Defendants, in making their determinations, opted to 'cherry-pick' statements by Soul Quest Church leadership as evidence of trickery and fraud.  These same devices were used by the Defendants when second-guessing the Plaintiffs' sincere religious beliefs, the significance of the use of Ayahuasca in religious ceremonies, and the substantial burden placed upon Plaintiffs in not being able to perform and participate in their sacred Ayahuasca ritual.  Plaintiff Christopher Young's testimony, alongside cross-examination of Defendants' agents, is necessary to expose to the Court the arbitrary nature of the Defendants' actions, herein.

2. <u>The Defendants' Factual Assertions Regarding Its Standards on Control-Diversion by DEA Officials</u>

The Plaintiffs acknowledge, consistent with the Supreme Court's decision in *Gonzalez v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006), that the Government possesses some basis upon which to protect public health and safety via control-diversion measures, and so long as it does not undermine the protected rights to free exercise of religion.  Notwithstanding, in the case-at-bar, using *ad hoc*, unapproved, unpublished standards, the Defendants have arbitrarily declared their ability to abridge the Plaintiffs' RFRA and Free Exercise rights in the pursuit of such control-diversion measures.  The Declaration of Karen Moreno is, in part, designed to support such assertions.

For example, the Defendants' Opposition asserts, erroneously, that Plaintiff Soul Quest Church has improperly imported plants used in its Ayahuasca ritual.  *See*

5

*Defendants' Opposition,* at 18.  The Plaintiffs meanwhile assert that it has complied with all import standards for this legal plant material.  Additional testimony is required to test such issues.

Further, even in the absence of any regulated standards consistent with the Administrative Procedures Act, it is important for the Plaintiffs' to be able to test the entirety of the Defendants' assertions that it can somehow manage to stay within the purview of jurisprudence surrounding RFRA and the Free Exercise Clause in the absence of any such defined standards.  These types of questions are ripe for response from designated officials including Diversion Agents Graumlich and Moreno.

Finally, the Plaintiffs intend to – via the additional testimony of Plaintiff Christopher Young – provide full context in rebuttal to the Defendants' assertion in their Opposition that Plaintiffs have not demonstrated irreparable harm.  Underlying the Defendants' claims is – in part – the Defendants' assertion that Plaintiffs' voluntarily delayed seeking preliminary injunctive relief.  Yet, as will be fully established through Plaintiff Young's testimony, it was the failure of the Defendants to take any action on the Soul Quest Church exemption application, that delayed the prospect of relief being sought. Defendants' Opposition, at 32.

In this, an interesting quirk arises:  the Defendants are effectively asserting that the Plaintiffs should have challenged the Government's violations of RFRA, and the First and Fourteenth Amendments by taking the matter to federal court.  In one hand, the Defendants assert that it possesses the proper regulatory mechanisms and authority to grant a religious exemption to the Controlled Substances Act ("CSA") (something, incidentally, the DEA has never issued over the past fifteen (15) years; in the other hand,

6

the Defendants insinuate that the Plaintiffs should have known better and simply gone to court long ago.  Yet, the threat of irreparable harm remains via the threat of criminal prosecution against the Plaintiffs and against other members of Soul Quest Church. Testimony from witnesses, including Christopher Young and the Defendants' agents would – the Plaintiffs' assert – properly test the Defendants' assertions of no irreparable harm.

## II.     DEFENDANTS' SUPPLEMENTARY POSITION

On May 11, 2021, the Court instructed "[a]ny party requesting an evidentiary hearing" to "identify with particularity all disputed issues of material fact or credibility determinations that are expected to impact the resolution" of Plaintiffs' motion for a preliminary injunction. ECF 41 at 2. The court also required a requesting party to provide the names of expected witnesses and an estimated length of the proposed hearing. *Id.* On June 1, 2021, the parties filed a joint notice in which Defendants stated that they do not believe an evidentiary hearing is "necessary for the Court to adjudicate Plaintiffs' Motion." ECF 43 at 8. In that filing, Defendants noted, however, that they did not object to Plaintiffs' request to "supplement" the June 1 notice to the extent Defendants' opposition to Plaintiffs' motion for a preliminary injunction ("Defendants' Opposition") "identifie[d] any factual disputes not already known to the Plaintiffs." *Id.* at 1-2.

Plaintiffs have not demonstrated that an evidentiary hearing is necessary. As a preliminary matter, the thrust of Plaintiffs' case is that DEA's final determination violates RFRA. Pursuant to 21 U.S.C. § 877, that determination, and any claims related to or intertwined with review of that determination, are to be reviewed in the first instance by a court of appeals. *See, e.g.*, *City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320, 335-

7

36 (1958); *Doe v. FAA*, 432 F.3d 1259, 1263 (11th Cir. 2005); *Hemp Indus. Ass'n v. DEA*, No. 20-cv-2921-JEB, 2021 WL 1734920, at *1 (D.D.C. May 3, 2021). While Plaintiffs assert they are "entitled to 'their day in court,'" Congress has clearly vested the courts of appeals with exclusive jurisdiction to provide the judicial review Plaintiffs seek. Thus, Plaintiffs' claims should be dismissed for lack of jurisdiction. *See* ECF 44 at 8-18.

Plaintiffs contend that they "deserve an opportunity to rebut" Defendants' jurisdictional arguments at an evidentiary hearing. Plaintiffs' contention is wrong twice over. First, the Court must determine whether it has jurisdiction over Plaintiffs' claims *before* taking evidence. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) (requiring that jurisdiction be established as a threshold matter).[1] Second, an *evidentiary* hearing is the wrong forum to rebut Defendants' *legal* arguments.

Even if this Court determines that it has jurisdiction, the Court should not hold an evidentiary hearing on the merits of Plaintiffs' claims, all of which relate to DEA's denial of their petition for an exemption to the CSA. That question is one that should be answered by the Court based on the record that was before DEA. "The focal point for judicial review of an administrative agency's action should be the administrative record." *Pres. Endangered Areas of Cobb's Hist., Inc. v. U.S. Army Corps of Engineers*, 87 F.3d 1242, 1246 (11th Cir. 1996). "The role of the court is not to conduct its own investigation

---

[1] In light of the threshold jurisdictional issues Defendants raised in Defendants' Opposition and in Defendants' Motion to Dismiss (Defendants' Motion), ECF 44, Defendants submit that, should the Court determine that a hearing on Plaintiffs' Motion is warranted, judicial economy would be served by combining any such hearing with a hearing on Defendants' Motion. Defendants respectfully request that no hearing on either motion be set until briefing on Defendants' Motion is completed. In that regard, Defendants reserve the right to seek the opportunity to file a reply in support of Defendants' Motion after reviewing Plaintiffs' response thereto, in accordance with Local Rule 3.01(d).

and substitute its own judgment for the administrative agency's decision." *Id.* Here, DEA investigators spent months interviewing and otherwise investigating Soul Quest leaders, participants, and suppliers. ECF 45 at 15. DEA experts have also personally reviewed Soul Quest's security measures, assessing the risk that DMT will be diverted, either in transit from the Netherlands through Nebraska or New York to Soul Quest in Florida, or from Soul Quest's facilities to non-adherents. ECF 45 at 19-25. Just as if Plaintiffs had properly filed this case in the court of appeals, DEA's "[f]indings of fact" are to be conclusive "if supported by substantial evidence." 21 U.S.C. § 877. And if a court—by statute, a court of appeals—were to hold that DEA's determination did not satisfy the requisite standard, *see, e.g.*, *Morall v. DEA*, 412 F.3d 165, 177 (D.C. Cir. 2005), the appropriate recourse would be to remand to DEA for further action consistent with the court's holding, *see, e.g.*, *John Doe, Inc. v. DEA*, 484 F.3d 561, 570 (D.C. Cir. 2007); *see also, e.g.*, *Fry v. DEA*, 353 F.3d 1041, 1043 (9th Cir. 2003). Accordingly, the scheme for judicial review crafted by Congress creates no space for an evidentiary hearing as to the merits of Plaintiffs' claims, and this Court should not hold one.

Even if an evidentiary hearing were proper in a challenge to a DEA final determination, Plaintiffs have not identified any disputes of material fact that warrant one here. In the parties' joint notice, Plaintiffs did not point to any disputed issues of fact. *See* ECF 43 at 2-7. Instead, Plaintiffs presented legal argument about a Supreme Court decision issued a month before Plaintiffs filed their preliminary injunction motion. *Id.* at 6. Defendants did not oppose Plaintiffs supplementing their June 1 statement, but only to the extent Plaintiffs "identifie[d] any factual disputes *not already known*" to them. ECF 43 at 2 (emphasis added). As Plaintiffs' supplemental response demonstrates, they have not

9

identified any. The alleged disputed areas of material fact they point to now—the sincerity of Soul Quest participants and the sufficiency of Soul Quest's anti-diversion controls—were not only known to Plaintiffs on June 1, they were the two bases cited by DEA months ago in its April 16, 2021 final determination letter. *See* ECF 38-1.

In any event, even Plaintiffs' latest statement falls far short of the Court's order to identify "with particularity all disputed issues of material fact or credibility determinations that are expected to impact the resolution" of Plaintiffs' motion. ECF 41. Indeed, it does not appear that Plaintiffs have identified any disputes issues of material fact.

As to sincerity, Plaintiffs disagree with DEA's sincerity finding, but do not identify disputed issues of fact, let alone any that must be resolved for the Court to adjudicate Plaintiffs' Motion and that would be resolved through Mr. Young's testimony. The following factual assertions are nowhere contested by Plaintiffs: the Ayahuasca Manifesto does not serve as a sacred text for most of Soul Quest's leaders or participants; for most of Soul Quest's leaders and participants, ayahuasca serves more of a medicinal and therapeutic function rather than a sacramental one; many of Soul Quest participants do not subscribe to Soul Quest's religious tenets, but retain their own pre-existing religious beliefs; Soul Quest has shifted its religious affiliation in recent years. Even if Mr. Young were to testify that *he* believes that the Manifesto is a sacred text or that *his* use of ayahuasca is sincerely sacramental, that would not create a disputed issue of fact as to the beliefs and practices of *others*, such as Soul Quest's paying retreat participants, to whom Soul Quest distributes ayahuasca. None of the other reasons Plaintiffs provide—to "test" the "standards" that DEA used in assessing Plaintiffs' petition and to "expose to the Court the arbitrary nature" of DEA's determination—involve disputed issues of material fact.

As to the risk of diversion, Plaintiffs provide no support for their assertions that there are disputed issues of material fact. A number of the supposed disputes appear to be legal in nature. For example, Plaintiffs say an evidentiary hearing is necessary to "test the entirety of the Defendants' assertions that it can somehow manage to stay within the purview of jurisprudence surrounding RFRA and the Free Exercise Clause" by applying its Guidance to assess eligibility for religious exemptions. It is not clear where the factual dispute lies. Plaintiffs also assert that they use "legal" plant material. This, too, is not a factual dispute. The parties do not disagree about the kinds of plants Soul Quest imports; they dispute, apparently, whether those DMT-containing plants are controlled substances. To the extent Plaintiffs assert "they complied with all import standards" in acquiring these plants, Plaintiffs offer no evidence that contradicts DEA's finding that Soul Quest obtains DMT-containing plants via shipments from a business in the Netherlands to middlemen in the United States, including Dr. Irwin's father. *See* ECF 38-1 at 6-7.

Finally, Plaintiffs claim that an evidentiary hearing is warranted to bolster their assertion that they will be irreparably harmed absent a preliminary injunction. Notably, Plaintiffs do not suggest that Mr. Young or other Soul Quest leaders would testify to an "actual and imminent" threat of enforcement, which is what the law requires. *Siegel v. LePore*, 234 F.3d 1163, 1176–77 (11th Cir. 2000) (en banc). Nor do Plaintiffs dispute that Soul Quest continues to publicly advertise ayahuasca retreats on its website. *See* Defendants' Opposition at 32. Rather, Plaintiffs appear to suggest that Mr. Young will testify as to who is responsible for "delay[ing] the prospect of relief being sought." But the Complaint and the parties' briefing details the timeline of resolution of Plaintiffs' exemption petition, and Plaintiffs do not identify any specific dispute as to the timing of these

events. No further evidence is necessary for the Court to make the legal determination as to whether Plaintiffs "show[ed] reasonable diligence," *Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018), in seeking relief. *See also Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016). Once again, Plaintiffs fail to "identify with particularity" any dispute of material fact requiring the two-day evidentiary hearing that they request.

Respectfully submitted this 14th day of June 2021.

By: */s/Derek B. Brett*
**DEREK B. BRETT, ESQ.**
Fla. Bar No. 0090750
**BURNSIDE LAW GROUP**
109 Ilsley Avenue, Suite 9
Halifax, Nova Scotia B3B 1S8
Telephone:   (902) 468-3066
Facsimile:    (902) 468-4803
Email: dbb@burnsidelaw.net
Lead Counsel for Plaintiffs


/s/A. Brian Phillips
**A. BRIAN PHILLIPS, ESQ.**
Fla. Bar No. 0067113
**A. BRIAN PHILLIPS, P.A.**
912 Highland Avenue
Orlando, Florida 32803
Telephone:   (407) 872-0777
Telecopier:   (407) 872-0704
Email:         brian.phillips@phillips-law-firm.com
Local Counsel for Plaintiffs

BRIAN M. BOYNTON
Acting Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Director
Civil Division, Federal Programs Branch

*/s/ Julie Straus Harris*
JULIE STRAUS HARRIS
      DC Bar # 1021928
Senior Trial Counsel

MICHAEL J. GAFFNEY
      DC Bar # 1048531
Trial Attorney

United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW, Room 11514
Washington, D.C. 20005
Tel: (202) 353-7633
Fax: (202) 616-8470
E-mail: julie.strausharris@usdoj.gov

*Counsel for Defendant*