**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| SOUL QUEST CHURCH OF MOTHER EARTH, INC., a Florida Domestic Non-Profit Corporation, on its own behalf and on behalf of its members; and CHRISTOPHER YOUNG, individually and as spiritual leader of Soul Quest Church of Mother Earth, ) ) ) ) ) ) ) ) | |
| Plaintiffs, ) ) | |
| vs. ) ) | Case No.: 6:20-cv-00701-WWB-DCI |
| MERRICK B. GARLAND, Attorney General of the United States of America; D. CHRISTOPHER EVANS, Acting Administrator of the U.S. Drug Enforcement Administration, ) ) ) ) ) ) | |
| Defendants. ) | |
| _____) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS SECOND AMENDED COMPLAINT**

COME NOW, the Plaintiffs, by and through the undersigned counsel, file the following Response in Opposition to Defendants' Motion to Dismiss Second Amended Complaint (ECF No. 44) (hereinafter "Motion to Dismiss"). Plaintiffs have concurrently filed with this response, and as a matter of course, their *Third Amended Complaint for Declaratory and Injunctive Relief Pursuant to Rule 15(a)(1)* (ECF No. 54) (hereinafter, "Complaint").

## I.   <u>INTRODUCTION</u>

This is a gravely serious and urgent matter concerning the religious freedom rights of a small church, which Defendants have obliterated.  This case is now at a crisis point precipitated entirely by the Government's action in unlawfully adjudicating the sincerity of the Plaintiffs' religious beliefs during the pendency of this litigation.

The crux of the issue before the Court is Defendants' attempts to interfere with and deny Soul Quest Church's religious exercise with Ayahuasca, a brew made from the *Banisteriopsis caapi* vine and the *Psychotria viridis* shrub, and widely used in ceremonial settings during religious exercise in the U.S. and beyond. The sincerity of religious exercise with ayahuasca has been uniformly upheld by the courts.  *See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006) (hereinafter, *"O Centro"*); *Church of the Holy Light of the Queen v. Mukasey*, 615 F. Supp. 2d 1210 (D. Or. 2009).  As such, the Drug Enforcement Administration ("DEA") has consistently viewed religious exercise with Ayahuasca as a low law enforcement priority and one devoid of issues related to diversion, or health and safety to religious adherents or members of the general public.

In the case-at-bar, the Plaintiffs engaged in good faith over the past year in what were deemed by Defendants as negotiations.  Rather than negotiate, the Defendants instead issued an *ultra vires* and unlawful order constituting a "final determination" of Plaintiffs' rights under the Religious Freedom Restoration Act.  *See* Drug Enforcement Administration's Religious Freedom Restoration Act Order (April 16, 2021) (hereinafter, "DEA's RFRA Order"), attached hereto as Plaintiffs' Exhibit No. 1. The unique

circumstances further underlie the Plaintiffs' assertions that an evidentiary hearing before the District Court is required.

The DEA's RFRA Order, as well as the Defendants' conduct throughout the pendency of this litigation, are indicative of the Defendants' intention to unlawfully adjudicate Soul Quest's religious sincerity in an effort to deny Soul Quest's religious exercise with Ayahuasca.   According to DEA, the agency's RFRA Order was issued "in accordance with the framework set forth in the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb-1, *et seq.*; the Attorney General's guidance memorandum, 'Federal Law Protections for Religious Liberty' (October 6, 2017) (AG Memorandum); the Supreme Court decision in *O Centro*; DEA's 'Guidance Regarding Petitions for Religious Exemption from the Controlled Substances Act Pursuant to the Religious Freedom Restoration Act'; and subsequent case law."  Plaintiffs' Exhibit No. 1, at 1.  Notably, the Controlled Substances Act, 21 U.S.C. § 801, *et seq.* ("CSA"), was <u>not</u> part of the DEA's framework for adjudicating Soul Quest Church's religious sincerity.

On June 1, 2021, the Defendants filed their Motion to Dismiss seeking to deny Soul Quest the ability to avail itself of the fact-finding and record-developing capabilities of this District Court and have instead taken the position that a court of appeals would be in a better position to provide meaningful review of the types of claims raised in this litigation.  The Defendants' argument for dismissal is centered around the contention that the DEA's RFRA Order does not concern the "RFRA" and the DEA's unlawful adjudication of Soul Quest's religious sincerity, thereunder.  Rather, Defendants insist that its RFRA Determination concerns the DEA's administration and application of the CSA which, in the opinion of the agency, must be exclusively litigated in a court of appeals.

For the reasons set forth herein, Defendants' Motion to Dismiss should be rejected.

## II.   **STANDARD OF REVIEW**

In *Castro v. Secretary of Homeland Sec.*, 472 F.3d 1334, 1336 (11th Cir.2006), the Eleventh Circuit espoused the proper standard of review on a motion to dismiss.   Specifically, "[a] motion to dismiss is granted only when the movant demonstrates 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Spain v. Brown & Williamson Tobacco Corp.*, 363 F.3d 1183, 1187 (11th Cir. 2004) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)) (additional citations omitted).

Further, in *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007), the Eleventh Circuit further discussed the standard on a motion to dismiss, that according to:

> *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981), a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) can be based upon either a facial or factual challenge to the complaint. If the challenge is facial, "the plaintiff is left with safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised." *Id.* Accordingly, "the court must consider the allegations in the plaintiff's complaint as true." *Id.*

A "facial attack" on the complaint "require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)). " 'Factual attacks,' on the other hand, challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and

matters outside the pleadings, such as testimony and affidavits are considered.'
" *Id.* Furthermore, in *Williamson*, the former Fifth Circuit held that "[t]he district court has the power to dismiss for lack of subject matter jurisdiction on any of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Williamson*, 645 F.2d at 413.

In the case-at-bar, the Defendants have mounted a facial attack upon the Plaintiffs' Complaint. Accordingly, the District Court is required to assume the allegations within the Complaint as true for purposes of the Defendants' Motion to Dismiss. *See* Complaint ¶¶1-16, 26-88 (Plaintiffs' factual allegations). Upon additional review, the Plaintiffs assert that the Defendants are unable to surmount the high standard for motions to dismiss, thus requiring the District Court to deny the Defendants' Motion.

### III.   <u>LEGAL ARGUMENT</u>

### A.   **RFRA's Prescribed Remedy Mandates Court Jurisdiction**

The Religious Freedom Restoration Act provides for a single, exclusive remedy – that a claimant (such as the Plaintiffs) uses that law in a claim or defence in a judicial proceeding. Consequently, RFRA *does not* provide for an agency determination undercutting its strict scrutiny standard. Yet, effectively, this is what the Defendants are attempting to perpetrate in the case-at-bar, by subverting strict scrutiny and replacing it with an "arbitrary and capricious," and much more favorable, standard to be addressed before a federal appellate court.

This is contrary to the Supreme Court's determination in *O Centro*, 546 U.S. at 439, when it stated that

> [w]e have no cause to pretend that the task assigned by
> Congress to the courts under RFRA is an easy one. Indeed,
> the very sort of difficulties highlighted by the Government here
> were cited by this Court in deciding that the approach later
> mandated by Congress under RFRA was not required as a
> matter of constitutional law under the Free Exercise Clause.
> See *Smith [v. Employment Div. Dept. of Human
> Resources],* 494 U.S., at 885-890. But Congress has
> determined that courts should strike sensible balances,
> pursuant to a compelling interest test that requires the
> Government to address the particular practice at issue.

Ironically, the DEA has – just this year, no less – embraced the argument now

being asserted by the Plaintiffs.  The DEA has asserted, in a case presently before the

Ninth Circuit, that a specific lack of statutory authority prevents its ability to take action

under the Controlled Substances Act, 21 U.S.C. § 801, *et seq.* In *Advanced Integrative

Medicine Science Institute vs. DEA*, Docket No. 21-70544 (9th Cir. 2021) (hereinafter,

"AIMS case") the plaintiffs challenged an administrative ruling involving the

compassionate use of psilocybin.  In the DEA's refusal to grant an exemption under what

are deemed "Right to Try" ("RTT") laws, the DEA asserted that "*absent an explicit

statutory exemption to the Controlled Substances Act (CSA), DEA has no authority to

waive any of the CSA's requirements to the RTT [Act].*"  AIMS, *supra,* at ECF No. 18, pp.

16-17 (Petitioner's Opening Brief, quoting DEA correspondence); and at ECF No. 19, pp.

8-9 (correspondence of DEA Deputy Asst. Administrator, Diversion Control Division

Thomas Prevoznik).  (Emphasis added).[1]  At a minimum, the DEA's assertion in the AIMS

---

[1] The DEA makes this assertion under the CSA, where its authority seems rather clear –
as opposed to the void of any such authority under the RFRA to make such
determinations.  Of course, if Defendants are – as seems apparent from their Motion to
Dismiss – resting their argument entirely on the CSA, which contains no language
regarding its applicability to religious uses of controlled substances, and which Plaintiffs
assert is otherwise inapplicable in terms of the matters currently before the District Court,
it is notable that DEA has taken a contrary position on its empowerment to act in the
absence of an enabling statute.

case is consistent with its approach taken in earlier case challenges.  *See Olsen v. DEA*, 878 F.2d 1458, 1460-61 (D.C. Cir. 1989).[2]

DEA's incongruous approach between what the Defendants assert in the case-at-bar, versus what it asserts in the AIMS case, demonstrates the Defendants' propensity to argue whatever it requires to justify its end game.  Whereas Defendants assert, herein, that the DEA strongly asserts its authority to rule on a subject where there is zero Congressional grant of authority (specifically, as pertains to religious uses of controlled substances), in the AIMS case, the DEA strongly rejected any such authority to rule upon a subject lacking a specific grant of authority by Congress – in any statute or regulation.

Relatedly, none of the Defendants' filings in the case-at-bar reveal that its authority over granting registrations is, in fact, limited to "legitimate medical, scientific, research or industrial uses."  21 U.S.C. § 823.  In other words, as argued throughout the Plaintiffs' filings, the DEA has never been provided with any official authority over religious uses. *See* Complaint ¶¶ 102-124 (Claims 2 and 3).  The exclusion of such information from the Defendants' filings is telling; it reflects a lack of candor and a blatant subterfuge – one resembling its tack in earlier religious exemption cases.  *See, e.g.*, *Church of the Holy Light,* 615 F.Supp.2d at 1217-18 (reflecting the Government's propensity to inject random, irrelevant facts without proper support or foundation); *O Centro*, at 435-36 (noting

_____

[2]  *Olsen* is also notable for then-Judge (later Justice) Ginsberg's acknowledgment that "even if the DEA were not empowered or obliged to act, Olsen would be entitled to a judicial audience.  Ultimately, the courts cannot escape the obligation to address his plea that the exemption he seeks is mandated by the first amendment's religion clauses." *Id.* at 1460.

Government's habit of raising concerns assuming 'slippery slope' argument, rather than focusing "on the statutory program at issue").

Notwithstanding Defendants' strategic maneuvering, the Plaintiffs would assert that it is unquestionable that the DEA's decision herein is reflective of an *ultra vires* action premised upon an *ad hoc* agency licensing mechanism that directly violates RFRA, the Administrative Procedures Act and is unconstitutional. *See* Complaint ¶¶ 89-124 (Claims 1 - 3). Further, the Defendants defied the court's authority when it indicated its intent to negotiate case resolution while – unbeknownst to the Plaintiffs and throughout the period of case abeyance – conducting a surreptitious investigation designed entirely to make provide a façade of legitimacy to its unlawful actions. The Defendants' assertion of § 877 is    simply another method intended to further its subterfuge.

### B.    DEA Illegally Adjudicated Religious Sincerity -- Defendants' Assertions of Authority Under the CSA are Diversionary.

In its Motion to Dismiss, the Defendants argue that its authority under the CSA is dispositive, and cites to several cases in support. Motion to Dismiss, at pp. 11-18. The problem with this is that – once again – the CSA is not the law under which this litigation is premised and upon which the challenges asserted by the Plaintiffs are premised. *See* Complaint ¶¶ 89-124 (Claims 1 - 3). Rather, in the absence of any specific authority under the CSA as pertains to religious exemptions and the ability of the Defendants to regulate such subject matter, the issue is not whether the CSA grants exclusive jurisdiction over agency decision making under the CSA.

<u>No</u>. The Defendants' assertion of the CSA as being its basis for being able to issue any decision which would implicate § 877, exists only in a void – one which would require the District Court to ignore the Defendants' lack of explicit authority to make

determinations under RFRA.   This mischaracterization – this subterfuge – is constant in the first two-thirds of the Defendants' arguments in its Motion to Dismiss, where RFRA is not even mentioned.  Motion to Dismiss, at pp. 11-16.  All case law cited in those pages apply exclusively to the Defendants' decision making authority under the CSA, not RFRA.  *See, e.g.*, John Doe, Inc. v. DEA, 484 F.3d 561, 568 (D.C. Cir. 2007) ("21 USC Sec. 877 vests exclusive jurisdiction in the courts of appeals over "[a]ll final determinations, findings, and conclusions" of the DEA applying the CSA.")  (Emphasis added); *Sharma v. DEA*, 511 F. App'x, 898, 903 (11th Cir. 2013) (referring to the CSA as a closed regulatory system).

Later, in order to mount its evasion of RFRA, the Defendants simply dismiss its applicability.  Motion to Dismiss, at pp. 16-17.  However, in order for this argument to stick, the Defendants would need to (a) ignore their own internal guidance regarding the handling of RFRA claims, as reflected in the Sessions Memorandum, *supra*; (b) ignore the Supreme Court's jurisprudence in *O Centro*;[3] (c) ignore the APA and the jurisprudence

---

[3]  As Chief Justice Roberts, writing for the Court in *O Centro* remarked, at 546 U.S. at 436-37:

> that the very reason Congress enacted RFRA was to respond to a decision denying a claimed right to sacramental use of a controlled substance. See 42 U.S.C. § 2000bb(a)(4). And in fact the Government has not offered evidence demonstrating that granting the UDV an exemption would cause the kind of administrative harm recognized as a compelling interest in *Lee, Hernandez,* and *Braunfeld.*  The Government failed to convince the District Court at the preliminary injunction hearing that health or diversion concerns provide a compelling interest in banning the UDV's sacramental use of *hoasca*. It cannot compensate for that failure now with the bold argument that there can be no RFRA exceptions at all to the Controlled Substances Act. *See* Tr. of Oral Arg. 17 (Deputy Solicitor General statement that exception could not be made

surrounding its applicability whenever there is an absence of any Congressional authorization to create an agency statutory review scheme for RFRA matters (*see Jarkesy*, 803 F.3d 9, 15 (D.C. Cir. 2015) (speaking of Congress' *intent* being required for a procedure to be exclusive means of obtaining a specific type of judicial review); and (d) ignore its own RFRA Determination from April 16, 2021, where it explicitly states that its decision was rendered under RFRA, the Supreme Court's decision in *O Centro*, and per the DEA's own RFRA Guidance.  It also requires for the District Court, herein, to believe that – despite the clearly contrary language in RFRA – that the Defendants alone are, somehow, empowered to adjudicate someone's religious sincerity.  Pardon the pun, but the Defendants are clearly praying for the District Court to engage in a "leap of faith," in order to capture the circuitous nature of their arguments.

Simply stated, none of the laws on which the DEA's RFRA Order was based empower Defendants to adjudicate Plaintiffs' religious sincerity or prohibit Plaintiffs free exercise of religion with ayahuasca.  *See Complaint* ¶¶102-133 (*citing* 5 U.S.C. § 558(b) ("[a] sanction may not be imposed or a substantive rule or order issued except within jurisdiction delegated to the agency and as authorized by law.").

---

> even for "rigorously policed" use of "one drop" of substance "once a year"). (Internal citations omitted).

The *O Centro* Court later, at 546 U.S. at 439, further rejected the Government's repeated invocations to Congressional findings and purposes underlying the CSA, and asserted that

> Congress had a reason for enacting RFRA, too. Congress recognized that "laws `neutral' toward religion may burden religious exercise as surely as laws intended to interfere with religious exercise," and legislated "the compelling interest test" as the means for the courts to "strik[e] sensible balances between religious liberty and competing prior governmental interests." 42 U.S.C. §§ 2000bb(a)(2), (5).

The one case the Defendants cite in support of this contention is simply irrelevant. In *Bold All. v. FERC,* 2018 WL 4681004 (D.D.C. 2018), the court addressed action under the *National Gas Act*, not under RFRA.   In *Bold All.*, there was a clear, statutorily-established, public process.   The *Bold All.* plaintiff had failed to avail themselves of the procedures established by the National Gas Act.   In contrast, in the case-at-bar, the Defendants possess no statutory authority to adjudicate RFRA matters . . . period.

### C.    Rebuttal to Defendants' Jurisdictional Challenge

The Defendants erroneously maintain that the District Court lacks jurisdiction to hear the Plaintiffs' case.  The Defendants attempt to support this erroneous     assertion through its citation to 21 U.S.C. § 877 (hereinafter, "§ 877").  Through the issuance of the DEA's RFRA Order, the Defendants purport that jurisdiction for this case as a whole now properly lies with the Eleventh Circuit. See generally Defendant's Motion to Dismiss.  This is an erroneous statement of law.

There are two fundamental failures with Defendants' § 877 assertions:

1.    Although, perhaps, under the guise being suggested by the Defendants', this might be deemed a 'final determination' under the Controlled Substances Act, there is no legislative-endorsed process under which the Defendants are enabled to issue any determination – final or otherwise – pursuant to the Religious Freedoms Restoration Act    – the latter being  the act under which the DEA has issued its April 16, determination letter; and,

2.    Notwithstanding, the fatal issue in No. 1, above, the Defendants findings are not supported by "substantial evidence."

The Defendants have no lawful basis to assert the application of § 877 in the absence of any enabling authority to render any determination under the RFRA.  The Defendants are

taking the proverbial round peg and attempting to jackhammer it into a square, and unconstitutional, hole.

1.      The Defendants' Lack Authority to Issue a Final Determination Under RFRA

Per the Supreme Court in *Bennett v. Spears*, 520 U.S. 154, 178 (1997), established the two requirements for an agency action to be considered "final," *to wit:*

1.  The action must mark the consummation of the agency's decision-making process; and,

2.  The action must be one by which rights or obligations have been determined, or from which legal consequences will flow.

As applied to the case-at-bar, the first *Bennett* requirement, where the decision must mark the "consummation of the agency's decision-making process," the DEA has never brought the issue of a religious exemption to a culmination.  There are two factual bases reflecting such a reality.

First, since August 2017, Plaintiff Soul Quest Church's application for religious exemption under RFRA – premised entirely on the DEA's 1½ page "*Guidance Regarding Petitions for Religious Exemption from the Controlled Substances Act Pursuant to the Religious Freedom Restoration Act*" (hereinafter, "DEA RFRA Guidance") (attached hereto as Plaintiffs' Exhibit No. 2) – was never acted upon and, Plaintiffs would assert, has not been acted upon through the present date.

Rather, the Defendants have – since this case's inception in May 2020 – premised the abatement of this action upon the negotiation with the Plaintiffs of the grounds upon which a religious exemption would be issued in resolution to the litigation. *See, e.g.,* Joint Motion to Stay All Proceedings for 120 Days (ECF No. 23), at 1.  This did not arise, and this is due entirely to the failure of the Defendants to negotiate the terms upon which Soul

Quest Church would receive its exemption in good faith.  Instead, surreptitiously and unconstitutionally, the Defendants contrived to create a favorable outcome, one in which it would declare "final agency action," under the pretense that it would negotiate in good-faith with the Plaintiffs.  Historic communications between the Parties reflect continued requests by Plaintiffs to discuss and negotiate such terms, while the Defendants continued to 'kick the can,' until it issued its April 16, "determination."  *See, e.g.,* Emails between Counsel for Plaintiffs and Counsel for Defendants (October 8, 13, 2021) (reflecting the Defendants' failure to negotiate terms for issuance of any exemption, followed by its attempt to impose standards upon the Plaintiffs), and attached hereto as Plaintiffs' Exhibit No. 3.  Some form of *ad hoc, ultra vires* "action" under the purview of pending litigation simply does not satisfy such a requirement.

Second, the Defendants cannot claim the laurels of a "consummation of agency decision making" when any such process needs to be clearly reflected under law.  So, although the Defendants assert that its determination dated April 16, 2021, was a "final agency action," the problem persists that any such "final action" lacks any official authority under the RFRA; the Defendants have never been empowered with authority to make such determinations under RFRA; the only authority the Defendants possess, as they argue, is under Congressional authority granted within the Controlled Substances Act.

This is insufficient.  It is also unlawful.  The April 16, 2021, correspondence from DEA to Plaintiff Soul Quest Church, rejecting any religious exemption is declared as having been made under authority of the RFRA.  However, there is no enabling statute providing the Defendants with such formal authority.  Fifteen (15) years have passed since the Supreme Court's ruling in *O Centro, and* the Defendants have never bothered

to promulgate appropriate regulations (requiring, among other aspects, a public comment period) pursuant to the Administrative Procedures Act.  5 U.S.C. § 500, *et seq.* ("APA").

 In this case, there are no existing governing regulations, no proposed governing regulations, only the aforementioned "Guidance."  The DEA's denial of any exemption fails even the most basic statutory analysis.  Pursuant to the APA, at § 553(b)(2), when a government agency acts, it must be able to cite to an enabling statute.  This enabling statute is a demonstration that the agency has been provided Congressional authority to act in a particular way, to do a particular thing, to regulate and pass rules regarding a particular aspect of life.

The Department of Justice has described the foundational purpose of the APA – something that it obviously ignores in the case-at-bar.  Per the *Attorney General's Manual on the Administrative Procedure Act*, drafted after the 1946 enactment of the APA, the basic purposes of the APA are the following:

1. to require agencies to keep the public informed of their organization, procedures and rules;
2. to provide for public participation in the rulemaking process, for instance through public commenting;
3. to establish uniform standards for the conduct of formal rulemaking and adjudication;
4. to define the scope of judicial review.

U.S. Department of Justice (1947). "Attorney General's Manual on the Administrative Procedure Act."[4]  There is no evidence that any such process has occurred – because, well, it has never occurred as pertains to the Defendants' ability to issue determinations under RFRA.

---

[4]  Located at https://fall.fsulawrc.com/admin/1947cover.html.

*Nowhere* in the DEA's RFRA Order – or in any pleading filed by the Defendants, nor in the DEA RFRA Guidance – does DEA identify the source of its Congressional authority to rule on the issues of sufficiency of religiosity and sincerity, much less to impose other requirements upon a religious institution seeking religious exemption.

Ironically, the only RFRA guidance in existence pertains exclusively to the deference that both Defendants are supposed to accord religious institutions.  Internal department guidelines instituted by former Attorney General Jeff Sessions, conclusively establish that:

> [The Religious Freedom Restoration Act] applies to all sincerely held religious beliefs, whether or not central to, or mandated by, a particular religious organization or tradition.  Religious adherents will often be required to draw lines in the application of their religious beliefs, and government is *not competent* to assess the reasonableness of such lines drawn, *nor would it be appropriate for government to do so*. Thus, for example, a government administration *may not second-guess* the determination of a factory worker that, consistent with his religious precepts, he can work on a line producing steel that might someday make its way into armaments but cannot work on a line producing the armaments themselves. Nor may the Department of Health and Human Services second-guess the determination of a religious employer that providing contraceptive coverage to its employees would make the employer complicit in wrongdoing in violation of the organization's religious precepts.

*Federal Law Protections for Religious Liberty*, U.S. Attorney General Jeff Sessions, October 6, 2017, at 4 (emphasis added); *see* Executive Order No. 13798, May 4, 2017, 82 F.R. 21675, requiring the Attorney General to "issue guidance interpreting religious liberty protections in Federal law."  The Defendants run completely afoul of their own guidelines establishing how the Department of Justice and the DEA should be handling

RFRA matters.  The Defendants' filings thus far, and supportive documents such as the Moreno Declaration, do nothing but arbitrarily second-guess the sincere religious beliefs of the Plaintiffs and the other members of Soul Quest Church, despite the written acknowledgment in the above Memorandum that they are incompetent to do so.

    2.    <u>Applicable Case Jurisprudence Establishes that the DEA's RFRA Guidance is Non-Binding & Unenforceable</u>

As asserted above, the DEA RFRA Guidance – the 1½ pages in existence over the past 12-15 years and the only pronouncement by that agency of anything pertaining to RFRA – is non-binding and unenforceable, lacking any force and effect of law, whether independently or by reference.[5]  Court jurisprudence further supports this reality.

In *Western Radio Servs. Co. v. Espy*, 79 F.3d 896, 901 (9th Cir. 1995), *cert. denied*, 519 U.S. 822 (1996) (hereinafter, "*Western Radio*") the Ninth Circuit established a two-part test for determining whether administration guidance documents have the independent force and effect of law.  Specifically, the administration pronouncement must (1) prescribe substantive rules—*not* interpretive rules, general states of policy or rules of administration organization, procedure or practice; <u>and</u> (2) conform to certain procedural requirements. To satisfy the first requirement the rule must be legislative in nature, affecting individual rights and obligations; to satisfy the second, it must have been promulgated pursuant to a specific grant of authority and in conformance with the

---

[5]  In perhaps yet another of a series of ironies, the Defendants dedicated considerable time in their section of the Supplemental Joint Notice, filed on June 14, 2021, to criticizing the Plaintiffs for some failure to provide a step-by-step guide to how it intends to discredit the Defendants' assertions in the latter's Response in Opposition to Plaintiffs' Renewed Petition for Preliminary Injunction.  Yet, after fifteen (15) years, a Supreme Court decision in *O Centro, supra*, a significant District Court decision in *Church of the Holy Light of the Queen, supra*, and all the resources that a powerful federal department possesses, it has been unable to development anything more than the DEA RFRA Guidance.  There are no specifications, no regulations, no proposed regulations, nothing.

procedural requirements imposed by Congress. *Western Radio Servs. Co.,* 79 F.3d at

901 (*quoting*, *U.S. v. Fifty-Three Eclectus Parrots*, 685 F.2d 1131, 1136 (9th Cir. 1982).

(Emphasis added).

      The *Western Radio Court* ruled that the government's purported regulations –

contained in a manual and handbook

> are not promulgated in accordance with the procedural
> requirements of the Administrative Procedure Act. Neither is
> published in the Federal Register or the Code of Federal
> Regulations. *See Parker v. United States*, 448 F.2d 793, 797
> (10th Cir.1971), *cert. denied*, 405 U.S. 989, 92 S.Ct. 1252,
> 1255, 31 L.Ed.2d 455 (1972). They are not subjected to notice
> and comment rulemaking; they are not regulations. *Hi-Ridge
> Lumber Co. v. United States*, 443 F.2d 452, 455 (9th
> Cir.1971) (Manual "does not rise to the status of a regulation").
>
> Nor are the Manual and Handbook promulgated pursuant to
> an independent congressional authority. The National Forest
> Management Act authorizes the Secretary to promulgate
> regulations, but the Manual and the Handbook are not
> regulations from the Secretary. 36 C.F.R. § 200.4(d)(1) (1995)
> (Chief of Forest Service promulgates rules in Manual and
> Handbook). The Manual and Handbook provisions are
> contemplated in a Service regulation, not in a congressional
> statute.

*Id.* at 900-01.  Accordingly, the *Western Radio* court concluded that the Government's

rules did "not have the independent force and effect of law."  *Id.* at 901.  This standard

has been subsequently adopted by other courts. *See, e.g., McGrail & Rowley, Inc. v.

Babbitt*, 986 F.Supp. 1386, 1393-94 (S.D. Fla. 1997) (holding the agency had failed to

conform with APA procedural requirements and, consequently, such principles "lacks the

force of law and leaves refuge managers considerable discretion in implement guidelines

….").

In the case-at-bar, while the DEA RFRA Guidance might prescribe substantive rules, it was *not* promulgated in accordance with the procedural requirements of the APA, and therefore cannot rise to the status of a binding administration regulation or law.   In other words, it is completely unenforceable, as are actions taken under the pretense of its execution.

First, the DEA RFRA Guidance admittedly prescribes substantive rules for seeking an exemption from the CSA and mandates that religious adherents first obtain a "certificate of registration" from DEA prior to engaging in any activity "prohibited under the Controlled Substances Act or its regulations."   *See* Plaintiffs' Exhibit No. 2, at   ¶¶ 2, 6, 7.  The DEA's petitioning process requires submission of "both a written statement and supporting documents" demonstrating how the application of the CSA to the religious adherent's activity would "(1) be a substantial burden on (2) his/her sincere (3) religious exercise." *See Id.*, at ¶ 2. Further, the DEA RFRA Guidance argues that religious adherents are "bound by all applicable laws and Controlled Substances Act regulations" governing registration of persons undertaking medical, scientific, research, and industrial activities related to Schedule I substances. *See id.*, at ¶ 6.

However, *none* of the administration petitioning and registration requirements are mandated or even suggested by an act of Congress or administration regulation. Neither the CSA nor the RFRA establish an administrative petitioning process for religious adherents seeking a religious exemption from the CSA for activities involving controlled substances.  Instead, RFRA specifically authorizes persons whose religious exercise has been burdened by the CSA to "assert that violation as claim or defense *in a judicial proceeding* and obtain appropriate relief against the government."

Further, while registration is required under the CSA, 21 U.S.C. § 823(a)(1), (b)(1), for persons who manufacture, distribute, dispense, and import or export-controlled substances, registration is *only* authorized for "legitimate medical, scientific, research and industrial purposes," which DEA regulations classify as "business activity." *See, e.g.*, 21 C.F.R. §1301.13(e)(1).  There is *no* allowance for a "certificate of registration" from the DEA for constitutionally protected religious exercise, which is not contemplated as a registered activity under the CSA and administration regulations.  In other words, the DEA RFRA Guidance establishes a new, substantive requirement for DEA registration for religious exercise where none currently exists under Federal law.

Moreover, the DEA mandates that all religious exercise involving controlled substances cease until such time as a certificate of registration has been granted by the administration. This prior restraint on the free exercise of religion involving controlled substances is an additional, substantive legal requirement mandated by the administration.  In the case of the Plaintiffs, that would mean – based around the original August 2017, religious exemption request filing – a delay of nearly four (4) years.

Second, the DEA RFRA Guidance was not promulgated in accordance with the procedural requirements of the APA. The guidance was not published in the Federal Register, is not found in the Code of Federal Regulations, and is not contemplated in a congressional statute.  *Western Radio Servs. Co.,* 79 F.3d at 901.  Importantly, despite the substantive requirements of the guidance requiring petitioning and registration, the DEA RFRA Guidance was not subjected to public notice and comment rulemaking procedures of the APA; a perquisite for establishing enforceable administration

regulations. *Id.* As such, the DEA RFRA Guidance fails the second prong of the Ninth Circuit's two-part test, and does not have the independent force and effect of law.

In sum, despite the fact that the DEA RFRA Guidance prescribes substantive requirements for religious adherents to seek exemption from the CSA for religious exercise involving controlled substances, the guidance was not promulgated pursuant to a specific grant of authority and in conformance with the procedural requirements imposed by Congress. Thus, the DEA RFRA Guidance is non-binding and unenforceable.

3.   Section 877 is Not Exclusive in its Scope

Further, even if this Court would find that § 877 might be applicable, it is not a statute of exclusivity. In other words, it does not mandate that the District Court must decline jurisdiction over matters of constitutional and statutory import.

In *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991), the Supreme Court examined an Immigration and Nationality Act provision that, similar to section 877, provided for only a single level of review in the courts of appeals. In ruling that the district court retained jurisdiction to hear constitutional and statutory challenges to INS procedures, the Court explained that

> it is unlikely that a court of appeals would be in a position to provide meaningful review of the types of claims raised in this litigation. * * * Not only would a court of appeals * * * most likely not have an adequate record * * * but it also would lack the factfinding and record-developing capabilities of a federal district court. * * * [S]tatutes that provide for only a single level of judicial review in the court of appeals "are traditionally viewed as warranted only in circumstances where district court factfinding would unnecessarily duplicate an adequate administrate record--circumstances that are not present * * * where district court factfinding is essential given the inadequate administrative record."

*Id.* at 497 (citation omitted).

The *McNary* decision should be deemed endgame to the Defendants' efforts to undermine the District Court's jurisdiction in the case-at-bar.  Under RFRA, Congress provided for one exclusive method for adjudicating such claims: within the courts.  Here, in the case-at-bar, the Plaintiffs are squarely asserting the violations made by the Defendants under RFRA and directly implicating protected religious freedoms under the First Amendment.  The Plaintiffs properly seek court relief in the District Court in the absence of any actual administrative regulatory scheme, and in the wholesale absence of any 'administrative record.'  *See Catholic Diocese of Beaumont v. Sebelius*, 10 F.Supp.3d 725, 729 (E.D. Tex. 2014) (citing to *McNary* in a case with RFRA implications and stating that "[s]ince Plaintiffs are alleging interference with important constitutional rights, the court will consider the evidence presented by Plaintiffs").[6]

The Plaintiffs' Third Amended Complaint, submitted contemporaneously with this Response in Opposition, includes a cause of action premised upon the Defendants' violation of the Administrative Procedures Act.  This additional aspect to the Plaintiffs' case explicitly drives the matter into the ambit of where the District Court should exercise jurisdiction over DEA decisions purporting to implement the CSA.  There are several federal cases where the district courts have continued to exercise jurisdiction, concluding there is a sphere of DEA activity that falls within the APA's "final agency action," but outside § 877's "final determinations, findings, and conclusions."  *See, e.g., DK Labs Inc.*

---

[6]  Also of relevance the *Catholic Diocese* Court, *id.* at 734-35, also recognized the significance of substantial burdens being imposed by the Government (akin to Plaintiffs' exposure to the dangers of criminal prohibitions) by noting the "pressures [to] the adherent to significantly modify his religious behavior and significantly violate his religious beliefs," and by further recognizing that even "indirect compulsion that infringes upon free exercise can be substantial."  (Internal citations omitted).

*v. Reno*, 134 F.Supp.2d 24 (D.D.C.2001); *Oregon v. Ashcroft*, 192 F.Supp.2d 1077 (D.Or.2002), *vacated for lack of jurisdiction*, 368 F.3d 1118, 1121 n.1 (9th Cir.2004), *aff'd*, 546 U.S. 243 (2006); *McNary*, *supra* (supporting the conclusion that the denial of an exemption would fall within that interstitial space).

Accordingly, Plaintiffs submit that, even if this Court were to reject the overwhelming evidence of the non-existence of any lawful authority being exercised in the case-at-bar, and somehow adopt – in part – the Defendants' arguments regarding § 877, that statute does not limit the ability of the District Court to maintain jurisdiction.

4.    Defendants' Determination is Not Supported by Substantial Evidence

Even though the Defendants' 'determination' fails the first element of the test articulated under § 877, as discussed in Section III(A), *supra*, it also fails the second, required element of analysis.  Indeed, in a case involving the exercise of fundamental, sincere religious beliefs, the stakes are undoubtedly high.  The Government should be, and is, required to muster substantial evidence in order to establish its burden in limiting protected rights.

Defendants failed to properly and fully investigate such issues.  As evidenced from the Declaration of Karen Moreno, the Defendants did not even bother to investigate, and render findings of fact on the issues of *substantial burden* and *religious exercise*, as required by RFRA.  (ECF No. 45-1).  Instead, the Defendants rely entirely on the remaining factor of sincerity of religious belief.  They do so by 'cherry-picking' statements made by Soul Quest Church leadership as some form of evidence of trickery or fraud.

A good example of this is found in the Defendants using as some type of shill the lack of mention of the Ayahuasca Manifesto during interviews with DEA officials –

interviews which, incidentally, were attended by Plaintiffs' local counsel. *See, e.g.,* Defendants' Opposition at 14-15.  In so doing, the Defendants unconstitutionally relied upon their own private *ad hoc* beliefs as to what the Plaintiffs' religion "should be."  Similar devices were used by the Defendants when second-guessing the Plaintiffs' sincere religious beliefs, the significance of the use of Ayahuasca in religious ceremonies, and the substantial burden placed upon Plaintiffs in not being able to perform and participate in their sacred Ayahuasca ritual.

Further, the Defendants uses the artifice that a related entity that provides services in yoga and other New Age practices somehow establishes that Soul Quest Church is a business rather than a faith-based institution.  Defendants' Motion to Dismiss at 12-13. In order to maintain operations, many different religions offer related, secondary, services to their faith-based activities - ranging from gift shops in churches and synagogues to catering and counseling services. The Defendants cannot, and do not, how Soul Quest putting on such services differs in any way from larger faiths doing the same thing. Indeed, taken to its logical conclusion, the only way that Soul Quest Church – or any religious institution – could be considered by the Defendants as "sincere" in religious beliefs is if it were to adopt the purest practice of religious asceticism.  This further illustrates the fundamental problem with having law enforcement agencies controlling the ability to define what is and what is not a sincere religious belief.[7]

The Defendants, in the DEA's 'RFRA Determination' of April 16, 2021, assert that its complete prohibition on Ayahuasca is the only method to safeguard people and to

---

[7] *See, e.g., Burwell v. Hobby Lobby Stores, Inc.,* 134 S. Ct. 2751, 2774 (2014) ("Congress was confident of the ability of the Federal courts to weed out insincere claims" of religious belief).

prevent diversion to unauthorized individuals. Plaintiffs' Exhibit No. 1, at 5. Yet, the DEA never mentions that Ayahuasca is of such little interest to the agency that its own annual – rather comprehensive, annual, threat assessment reports – fail to ever mention Ayahuasca, or its alternative names, yage and hoasca. Such reports never mention the existence of any mystical black market for Ayahuasca, or any issue with the health and safety of members of the public. *See, e.g.,* 2020 Drug Enforcement Administration National Drug Threat Assessment (March 2021).[8] In order to arrive at this conclusion, the Defendants rely upon information they themselves have already disproven, as follows:

1.      DEA's conclusion that control-diversion cannot be vindicated due to the untimely demise of member of Soul Quest Church, Brandon Begley. Defendants' Motion to Dismiss, Exhibit A, at 6-7 (ECF No. 45-2). Yet, the DEA's own findings entirely agree with the finding that Mr. Begley's untimely death was due to overconsumption of water, and not the Ayahuasca tea. *Id.*; *see* Incident Report No. 18-29907 (Orange County Sheriff's Office, April 2018), [attached hereto as Plaintiffs' Exhibit No. 4.] Notwithstanding, the DEA then concludes that Begley's passing is indicative of something that cannot be subject to enhancements to the already extensive health and safety protocols put into place by Soul Quest Church during its sacramental ceremonies involving Ayahuasca tea. Ironically, when DEA did interview medical personnel at the local hospital, no one was aware of any circumstance of anyone associated with Plaintiff Soul Quest Church being admitted due to the consumption of Ayahuasca tea. Defendants' Motion to Dismiss, Exhibit A, at 18 (ECF No. 45-2); *see Church of the Holy Light,* 615 F.Supp.2d at 1218 (wherein the district court rejected the Government's attempt to raise unrelated deaths to support its anti-Ayahuasca beliefs).

2.      Agent Moreno's assertions that Soul Quest Church was involved in the illegal importation of Ayahuasca. Moreno Declaration, at ¶¶ 10-12; *Defendants' Opposition,* at 18. Such assertions are false. First, the plant materials being imported are legal and not prohibited from importation to the United States. The raw materials involved in the mixing of Plaintiff Soul Quest Church's sacred tea do not test positive for DMT until brewed down and mixed as a tea. *See O Centro*, 546 U.S. at 437-38 (discussing the preparation of the *hoasca* tea containing the properties of DMT. Second, as the Defendants know – as such information was either directly disclosed by Soul Quest Church or otherwise readily available to the DEA – Soul

---

[8] Located at  https://www.dea.gov/sites/default/files/2021-02/DIR-008-21%202020%20National%20Drug%20Threat%20Assessment_WEB.pdf.

Quest possesses licenses to legally import the leaf and vine necessary to blend and create its sacred tea.

(Internal citations omitted).

Instead of performing a proper, thorough investigation into this matter, and one respecting the Plaintiffs' Constitutional rights, the Defendants have elected to twist and misconstrue evidence to support their pre-determined and conclusions.  We do not do things that way in the United States of America.

### IV.    CONCLUSION

WHEREFORE, the Plaintiffs respectfully request this Court reject the Defendants' jurisdictional attacks on the Plaintiffs' Second Amended Complaint and, accordingly, deny its Motion to Dismiss.

Respectfully submitted this 12th day of July 2021.

By: */s/Derek B. Brett*                              */s/A. Brian Phillips*
**DEREK B. BRETT, ESQ.**                **A. BRIAN PHILLIPS, ESQ.**
Fla. Bar No. 0090750                        Fla. Bar No. 0067113
**BURNSIDE LAW GROUP**             **A. BRIAN PHILLIPS, P.A.**
109 Ilsley Avenue, Suite 9              912 Highland Avenue
Halifax, Nova Scotia B3B 1S8        Orlando, Florida 32803
Telephone:   (902) 468-3066          Telephone:    (407) 872-0777
Facsimile:     (902) 468-4803          Telecopier:    (407) 872-0704
Email: dbb@burnsidelaw.net           brian.phillips@phillips-law-firm.com

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 12th day of July 2021, the undersigned electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of the same via email to the designated counsel for the Defendants.

By: */s/A. Brian Phillips*
**A. BRIAN PHILLIPS, ESQ.**