Exhibit 3

**From:** Derek Brett
**Sent:** October 13, 2020 3:27 PM
**To:** Hancock, Kevin P. (CIV) <Kevin.P.Hancock@usdoj.gov>
**Cc:** A. Brian Phillips, P.A. <Brian.Phillips@phillips-law-firm.com>
**Subject:** RE: Soul Quest, et al. v. Barr, et al.: Case Status Discussion - DBB Response to KPH Email

Kevin:

DOJ/DEA does not have a process. Now, at the 11th hour, something being labeled a "process" is somehow being contrived (I suspect it relates to what your side filed in the *Arizona Yage* matter, indicating a desire to – 14 years after *UDV* – formulate such a process), one which leaves open significant discretion on the part of the Government to deny the exemption. I am sorry, but this is unsuitable. There is no basis upon which the Government can somehow now set itself up to – without any specific standards being articulated – exercise unilateral discretion to say "no," and thus attempt to undermine the foundations for my clients' efforts these past 3.5 years, inclusive of its litigation. Indeed, your unofficial standards – likely drafted in the hopes of having something through which Congress might consider enabling legislation for eventual regulations to be promulgated – deviate from both DoJ directives, RFRA intent and related jurisprudence including, but not limited to, *UDV*.

In my professional opinion, DOJ/DEA has now wasted my clients' and my time. If the Government insists on maintaining its present posture, there is no way to rehab what is now happening based around your proposal received last Thursday. Indeed, if the Government wanted to push such standards, it would have done so 4-5 months ago, not one week before a Joint Status Report was due for filing before the District Court.

From Petitioners' perspective, the entire point of the past few months was designed to allow for DEA to advise on what additional diversion-control measures would need to be improved in order to allow for the processing of an exemption. How could we believe otherwise? Agent Graumlich's fact finding was limited to determining what security measures were in place in order to ensure that any blended ayahuasca product could not fall into the hands of others for non-religious purposes.

And, again, as I articulated long-ago, there was to be no questioning of the religious sincerity of SQC and Young. This is consistent with other practices in other government agencies, including IRS. I will not assert anything more at this point, as I would need to reserve such arguments to formal legal filings if this détente is to fall apart. The deterioration of the current stay period now falls entirely into the Government's hands – the Government owns its failures to move forward toward granting SQC's exemption application.

If you wish to save this situation, I would suggest having a Zoom conference tomorrow – Brian, you and me. If you cannot oblige us, then I will be setting out Petitioners' perspective in the Joint Status Report to reflect that the Government blew 5+ months of time for nothing; that the litigation needs to proceed; that the Government needs to formal respond to the pleadings; and that we need to schedule arguments for the Petition for Preliminary Injunction.

Derek

Derek B. Brett
Burnside Law Group
109 Ilsley Avenue, Suite 9
Dartmouth, Nova Scotia B3B 1S8
Telephone: 902-468-3066
Facsimile: 902-468-4803

*Licensed to Practice in Nova Scotia, Florida & the District of Columbia*

**IMPORTANT - This e-mail and any files transmitted with it are private and confidential and are solely for the use of the addressee. It may contain material which is legally privileged. If you are not the addressee or the person responsible for delivering to the addressee, be advised that you have received this e-mail in error and that any use of it is strictly prohibited.**

**Any tax law-specific advice contained in this written or electronic communication (including attachments) is not intended or written to be used to avoid any penalty imposed by a taxing authority, nor may the recipient of this communication, or any other person or entity use this written tax advice for that purpose.**

**From:** Hancock, Kevin P. (CIV) <Kevin.P.Hancock@usdoj.gov>
**Sent:** October 13, 2020 2:50 PM
**To:** Derek Brett <dbb@burnsidelaw.net>
**Cc:** A. Brian Phillips, P.A. <Brian.Phillips@phillips-law-firm.com>
**Subject:** RE: Soul Quest, et al. v. Barr, et al.: Case Status Discussion

Derek,

Thanks for your email. I must similarly profess confusion at your apparent view that merely cooperating with DEA's investigation "*would* result" (emphasis added) in your client obtaining a RFRA exemption to the CSA's prohibitions on the use of Schedule I controlled substances. As the parties represented to the Court in their June 15, 2020 joint motion to stay this litigation, the purpose of the stay is to "allow time for [the DEA] to conduct the fact finding that is necessary for it *to adjudicate* Plaintiffs' pending petition for a religious exemption from the [CSA], which is at issue in this litigation." ECF No. 23 at p. 1 (emphasis added); *see also id.* ¶ 11 (explaining that, assuming Plaintiffs' good faith cooperation, "DEA will conduct and complete the fact-finding that is necessary for it *to subsequently evaluate and issue a final determination* on Plaintiffs' petition" (emphasis added)).

As you note, since the stay was granted on June 26, your client and DEA have been engaging in the fact-collection process—a process that, of course, would be pointless if it were already a "certainty" that your clients would obtain a RFRA exemption. During that engagement, your clients responded to DEA's May 29 request for additional information regarding their petition on July 22. DEA Diversion control investigators then conducted multiple site visits and interviews with your clients. That fact collection was ongoing until Friday, Oct. 9, when you informed the DEA investigator assigned to this matter that your clients would cease cooperating.

We encourage Plaintiffs to allow fact-finding to resume and to evaluate our proposal for the process by which DEA will evaluate Plaintiffs' petition, which I sent to you last Thursday. As

you know, on Tuesday, October 6, you informed me that your clients had completed providing supplemental responses and records to the DEA. Although DEA has further questions, I responded on Thursday with DEA's process proposal, which the parties represented to the Court they would negotiate (along with a timeline for a "final determination on Plaintiffs' Petition"). (For this reason, I myself am confused by the confusion you claim stemming from the fact that the proposal outlines "a process that does not presently exist under law.") Defendants' detailed, 3.5 page-proposal is designed in part to address your clients' concerns that the DEA's current guidelines regarding petitions for RFRA exemptions to the CSA lack "specific standards." *See, e.g.*, FAC ¶ 15. We dispute that contention, of course, but for the purposes of the parties' efforts to work together toward DEA's evaluation of your client's petition, which formed the basis of the parties' stay request, we have proposed a more-detailed process.

In our view, our proposal represents a fair and expedient way for the parties to move forward with Plaintiffs' petition, but we of course remain willing to evaluate any counterproposal your clients may have. Among other things, the process described by our proposal explicitly incorporates standards for whether a party qualifies for a RFRA exemption, as those standards have been articulated by the federal courts. The proposed process also details the steps DEA would take after its evaluation of the evidence is complete. As explained, if the agency concludes that your client has satisfied its burdens of production and persuasion under RFRA, your clients may then apply for registration under the CSA for their use of the controlled substance (and all applicable fees will be waived). On the other hand, if your client fails to meet its RFRA burden, the agency's final determination denying an exemption would then be subject to immediate judicial review by a federal court. In no case, however, can we agree to a process where RFRA qualification is merely assumed without consideration of the burdens as required by the statute.

Assuming your clients are willing to allow the fact-finding process to resume and to evaluate our proposal, we propose that we inform the Court in our JSR this Friday that the parties have made significant progress, and that an extension of the stay to allow us to continue that progress--ultimately concluding with a final DEA determination on Plaintiffs' petition--would be appropriate.

Please let me know your view and I would be happy to have a phone call this week to discuss further.

Best,
Kevin



**Kevin P. Hancock** | Trial Attorney
Federal Programs Branch
Civil Division, U.S. Department of Justice
(202) 514-3183 | kevin.p.hancock@usdoj.gov

**From:** Derek Brett <dbb@burnsidelaw.net>
**Sent:** Thursday, October 8, 2020 6:25 PM
**To:** Hancock, Kevin P. (CIV) <khancock@CIV.USDOJ.GOV>

**Cc:** A. Brian Phillips, P.A. <Brian.Phillips@phillips-law-firm.com>
**Subject:** Re: Soul Quest, et al. v. Barr, et al.: Case Status Discussion

Kevin,

I will discuss your attachment with co-counsel and advise. Beforehand, I must profess confusion. Your attachment seems to be attempting to establish a process that does not presently exist under law -- at the very least, not yet.

My client has been cooperating over the past few months under the belief that such cooperation would result in issuance of the long-sought exemption. Yet, at least from my initial review of your attachment, there is zero certainty, despite our cooperation. Indeed, this document even would permit for DEA to make some undefined judgment regarding sincerity of religious beliefs.

So, I suppose I now need to request your clarification. If my above concerns are legitimate, why would my client want to acquiesce to this type of process -- one which continues to lack substance, definition, and is susceptible to constitutional defects? If my concerns are justified, what have we been doing over the last six months? Engaging with DOJ-DEA was -- from my perspective -- designed to deliver a result of an exemption, subject to conditions focused on control and diversion while the church operates under the exemption.

Please advise.

Derek

Derek B. Brett
Burnside Law Group
109 Ilsley Avenue, Suite 9
Dartmouth, Nova Scotia B3B 1S8
Telephone: (902) 468-3066
Facsimile: (902) 468-4803

Licensed to Practice in Nova Scotia, Florida and the District of Columbia

---

**From:** Hancock, Kevin P. (CIV) <Kevin.P.Hancock@usdoj.gov>
**Sent:** Thursday, October 8, 2020 7:07:16 PM
**To:** Derek Brett <dbb@burnsidelaw.net>
**Cc:** A. Brian Phillips, P.A. <Brian.Phillips@phillips-law-firm.com>
**Subject:** RE: Soul Quest, et al. v. Barr, et al.: Case Status Discussion

Hi Derek,

Thanks for your email and for the update regarding the supplemental responses and records. I am attaching here the DEA's proposal for the details of the process of evaluating your client's petition and the other information submitted. I will also be in touch shortly with a proposal for the timeline upon which the agency would issue a final determination on the petition.

As you note, the end of the stay on October 24 is upcoming, as is a joint status report for the Court on October 16. I agree that we should talk soon so we can discuss the attached and the contents of the JSR. I'm generally free all of next week, so please let me know what would work for you.

Best,
Kevin

**Kevin P. Hancock** | Trial Attorney
Federal Programs Branch
Civil Division, U.S. Department of Justice
(202) 514-3183 | kevin.p.hancock@usdoj.gov