## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | | |
|---|---|---|
| SOUL QUEST CHURCH OF MOTHER EARTH, INC., a Florida Domestic Non-Profit Corporation, on its own behalf and on behalf of its members; and CHRISTOPHER YOUNG, individually and as spiritual leader of Soul Quest Church of Mother Earth, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) ) | Case No.: 6:20-cv-00701-WWB-DCI |
| MERRICK B. GARLAND, Attorney General of the United States of America; ANNE MILGRAM, Administrator of the U.S. Drug Enforcement Administration, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## THIRD AMENDED, VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF PURSUANT F.R.C.P. 15(a)(1)

The Plaintiffs, Soul Quest Church of Mother Earth, Inc., on its own behalf and on behalf of its members, and Christopher Young, individually and as the spiritual leader of Soul Quest Church of Mother Earth (hereinafter collectively "Plaintiffs"), by and through the undersigned counsel, hereby submit this second amended complaint as a matter of course pursuant to Federal Rule of Civil Procedure ("F.R.C.P.") 15(a)(1) and as a responsive pleading to Defendant's *Motion to Dismiss* (ECF 44) and state as follows:

## INTRODUCTION

1.      This is a gravely serious and urgent matter concerning the religious freedom rights of a small church which Defendants have obliterated.

2.      Plaintiff Soul Quest Church of Mother Earth, Inc. (hereinafter "Soul Quest Church"), is registered as a Florida domestic non-profit corporation based in Orlando, Florida whose members practice a Christian syncretic religion.

3.      Plaintiff Christopher Young (hereinafter, "Young") is the spiritual leader of Plaintiff Soul Quest Church, who resides in the State of Florida. In 2015, Plaintiff Young obtained a certificate of ordination from the Open Ministry, and has been acting as a minister of Plaintiff Soul Quest Church since that time. A true and correct copy of Plaintiff Young's certificate of ordination is attached hereto, and made a part of this Third Amended Complaint as Plaintiffs' Exhibit No. 1.

4.      Plaintiffs' religious exercise includes, among other things, the religious use of ayahuasca, a sacramental tea made from the *Banisteriopsis caapi* vine and the *Psychotria viridis* shrub.

5.      Ayahuasca is widely used in ceremonial settings during religious exercise in the United States and beyond.

6.      Ayahuasca contains small quantities of a Schedule I controlled substance, dimethyltryptamine ("DMT").

7.      Like sacramental wine, Plaintiffs use of ayahuasca is religious in nature and is part of Plaintiffs' religious beliefs.

8.      Plaintiffs' religious beliefs are sincere and of a religious nature.

9.     Religious exercise with ayahuasca has been uniformly upheld by the courts.  *See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006); *Church of the Holy Light of the Queen v. Mukasey*, 615 F. Supp. 2d 1210 (D. Or. 2009).

10.     On April 16, 2021, and during the pendency of this litigation, Defendants issued an order adjudicating the sincerity of Soul's Quest's religious beliefs and determining that prohibiting Soul Quest's religious exercise with ayahuasca is the least restrictive means of furthering the government's compelling state interest in protecting the health and safety of Soul Quest's religious adherents and preventing diversion of ayahuasca into "illicit channels."  *See* Drug Enforcement Administration's Order (April 16, 2021) (hereinafter, "DEA Order"), a true and correct copy of which is attached hereto as Plaintiffs' Exhibit 2.

11.     DEA's Order was purportedly issued "in accordance with the framework set forth in the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb-1; the Attorney General's guidance memorandum, 'Federal Law Protections for Religious Liberty' (October 6, 2017) (AG Memorandum); the Supreme Court decision in *Gonzales v. O Centro Espirita Beneficente Uniao de Vegetal,* 546 U.S. 418 (2006) (*O Centro*); DEA's 'Guidance Regarding Petitions for Religious Exemption from the Controlled Substances Act Pursuant to the Religious Freedom Restoration Act'; and subsequent case law."  *See* DEA Order at 1.

12.    The DEA's Order prohibits Plaintiffs free exercise of religion with ayahuasca.

13.    The DEA's Order prohibits Plaintiffs from importing, possessing, manufacturing, and distributing ayahuasca.

14.    The DEA's Order creates government-imposed coercive pressure on Plaintiffs to change or violate their religious beliefs.

15.    The DEA's Order chills, burdens, inhibits, and destroys Plaintiffs' religious exercise.

16.    The DEA's Order, and Defendants' prohibition on Plaintiffs' religious exercise with ayahuasca, is not the least restrictive means of furthering Defendants' stated interests.

17.    Defendants' actions: (1) substantially burden Plaintiffs free exercise of religion; (2) are not authorized by law; (3) are in excess of statutory jurisdiction, authority, or limitations; and, (4) are contrary to constitutional rights, powers, privileges or immunities.

18.    Defendants have violated the Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb–2000bb-4 (or "RFRA"), the Administrative Procedures Act, 5 U.S.C. §551 et. seq., and the First Amendment to the United States Constitution.

19.    Plaintiffs ask that the Court declare unlawful and set aside DEA's Order.  Such relief should be issued on the grounds that Defendants: (1) violated RFRA and First Amendment protections on the free exercise of religion; and, (2)

violated the APA by taking actions not authorized by law, in excess of statutory jurisdiction or authority, and contrary to protected constitutional rights.

20.     Plaintiffs ask that the Court enjoin Defendants from taking any action that would prohibit Plaintiffs religious exercise with ayahuasca.   Specifically, Defendants should be enjoined from taking any action prohibiting Plaintiffs from importing, possessing, manufacturing, and distributing ayahuasca.

21.     Unless ordered by this Court, Defendants will continue to prohibit Plaintiffs from importing, possessing, manufacturing, and distributing ayahuasca for religious exercise.

## PROCEDURAL HISTORY OF CASE

22.     On April 22, 2020, the Plaintiffs filed their original Motion for Preliminary Injunctive Relief. (ECF No.  2).  On May 4, 2020, the Plaintiffs filed their Amended Motion for Preliminary Injunction.  (ECF No. 15) Shortly thereafter, the Defendants – through legal counsel – provided substantive acknowledgment of Plaintiff Soul Quest Church's application for religious exemption.

23.     Shortly thereafter, on May 14, 2020, the Parties filed a Joint Motion to Extend Defendants' Time to Respond to Plaintiffs' Amended Motion for Preliminary Injunction.  (ECF No. 18).  In that document, the Parties explained that the extension would permit for "time to explore whether resolution is possible."  The Court granted both Joint Motions (ECF Nos. 15 and 18) in an order issued on May 14, 2020.  (ECF No. 19).

24.     On May 29, 2020, the Drug Enforcement Administration ("DEA") issued its first formal response acknowledging Plaintiff Soul Quest Church's August 2017, application for religious exemption.   A true and correct copy of this correspondence is attached hereto as Plaintiffs' Exhibit No. 3.

25.     In June 2020, following discussions between the Parties, a Joint Motion to Stay All Proceedings for 120 Days (ECF No. 23).  The intent of this joint filing was predicated upon "potentially resolving this case without need for further litigation in this Court."  (ECF No. 23, at p. 1).  Further, the intent of the stay was to, in-part, permit for "continue to negotiate the process by which DEA will conduct the fact-finding necessary to evaluate Plaintiffs' Petition."  (ECF No. 23, at ¶ 11).  In doing so, the Parties agreed that "they will cooperate with each other in good faith …."  (ECF No. 23, at ¶ 12).  On June 26, 2020, the District Court granted this Joint Motion.  (ECF No. 24).

26.     Subsequently, in correspondence dated June 4, 2020, the Defendants sought to further explain its diversion investigative process, as follows:

> DEA Diversion Investigators ("DIs") therefore routinely review applications for registration, including applications from doctors, pharmacies, distributors, importers/exporters, or manufacturers, gather relevant information, and inspect registrants' establishments. 21 C.F.R. § 1301.31. In the case of applications for exemption from aspects of the regulatory scheme on religious grounds, DEA must also determine pursuant to the Religious Freedom Restoration Act (RFRA) whether the applicant has established sincerity and the religious nature of the applicant's professed belief system and whether application to the applicant's religious practices of any specific requirement of the

> CSA's comprehensive regulatory system would substantially burden the applicant's religious exercise.

27.     A true and correct copy of this correspondence is attached hereto as Plaintiffs' Exhibit No. 4.  Of particular note in this statement is the effort by the Defendants implicitly acknowledge its ongoing lack of any regulatory authority on religious exemptions, while also attempting to tie some form of unregulated factfinding into other regulations applicable to pharmacies and doctors.

28.     Notwithstanding, thereafter, the Plaintiffs made every possible effort to cooperate with the inquiries made exclusively by DEA and its designated Diversion Investigator to conduct additional fact finding, James W. Graumlich.  Affidavit of Christopher Young, in Support of Third Amended, Verified Complaint (hereinafter, "Young Affidavit"), at ¶ 36.  A true and correct copy of the affidavit is attached hereto as Plaintiffs' Exhibit 5.   The Plaintiffs did so under the belief that, in doing so, the preexisting litigation would resolve.  Young Affidavit, at ¶ 36.

29.     Of note, DEA's inquiries to the Plaintiffs centered *entirely* upon "diversion control."  Young Affidavit, at ¶ 33.   No inquiry – at any time – directed by the Defendants ever touched upon the sincerity of the Plaintiffs' faith and religious beliefs including, but not limited to, the legitimacy of Soul Quest Church and the expressed, critical importance of the Plaintiffs engaging in their sacramental ayahuasca ritual.   Young Affidavit, at ¶ 32.  Accordingly, the only material possessed by the DEA on the issue of religious sincerity centered around the various materials included in the original, 2017 exemption application.

30.     On October 16, 2020, the Parties filed with the District Court their Joint Status Report (ECF No. 25).  In it, the Defendants acknowledged that the Plaintiffs had been cooperating with all of Defendants' requests for information. (ECF No. 25, at ¶ 2).  The Parties also acknowledge the intent "to conduct further negotiations regarding 'the details of the DEA's fact-finding ....'"  (ECF No. 25, at ¶ 3).  The Parties jointly requested an extension of the preexisting stay for another one-hundred, twenty (120) days.  (ECF No. 25, at ¶ 5).  The District Court granted this request in an order dated November 2, 2020.  (ECF No. 26).

31.     Thereafter, the DEA continued its factfinding, centered exclusively upon diversion control.  Young Affidavit, at ¶ 33.  Contrary to the belief of the Plaintiffs, the Defendants never presented any guidelines pertaining to the details of its fact finding, nor negotiated any such factfinding details.  Young Affidavit, at ¶ 37.  To date, the nature, scope and substance of the DEA's "fact finding," herein, remain a mystery.  Young Affidavit, at ¶ 37.

32.     On February 22, 2021, the Parties filed their Joint Status Report. (ECF No. 27).  At that time, the Parties announced the closure of the Defendants' factfinding.  (ECF No. 27, at p. 2).  Indeed, within the Joint Status Report is the acknowledgment that the DEA and DoJ are confronting new leadership unfamiliar with the issues within the case-at-bar.  (ECF No. 27, at p. 3).  Further, the DEA required until April 15, 2021, to issue what it deemed its "final determination."  (ECF No. 27, at p. 3).

33.     In order to further facilitate the prospects of a positive case resolution, the Plaintiffs agreed to hold its Motion for Preliminary Injunction in abeyance pending the DEA's "determination." (ECF No. 27).  Further, the Plaintiffs agreed to alert the Court, following the DEA's "final determination," to alert the Court of whether it intended to renew or amend its preliminary injunction motion, and its filing of "any necessary amended motion." (ECF No. 27, at p. 3).

34.     On February 23, 2021, the District Court issued its Order on the request made within the preceding Joint Status Report. (ECF No. 28).  Therein, the District Court stayed all deadlines pending the DEA's "final determination," and further instructing that the Plaintiff notify the Court within fourteen (14) days of such issuance. (ECF No. 28).

35.     On the evening of April 16, 2021, the Plaintiffs received the DEA's issued, written decision, indicating that it would not be issuing a religious exemption to Soul Quest Church.  Plaintiffs' Exhibit No. 2.  Much akin to the latent, constitutional shortcomings found by the federal courts within cases such as *O Centro, supra,* and *CHLQ, supra,* the DEA never published any rulemaking or other formal guidelines in support of whatever methods it adopted.

36.     Yet, based upon the document, and upon information and belief, the Defendants now consider this determination to constitute a final agency decision. Plaintiffs' Exhibit No. 2.  The Defendants assert such despite lacking any rules and regulations describing and dictating the methodology behind its investigation; do so without adhering – at all – to the requirements of federal law under the

Administrative Procedure Act; and without even a defined process describing how and when its process starts and finishes.

37.     The inability of the Defendants to – even following the onset of the case-at-bar and during judicially overseen party discussions to negotiate a case resolution – provide any substance subject to, and passing regulatory, statutory and constitutional muster – once again demonstrates the fatal defects in its approach.  Effectively, to paraphrase the Honorable District Court Judge Amy Berman Jackson (in a decision addressing DoJ practices in a different context) can be reasonably viewed as "disingenuous … with respect to the existence of a decision-making process . . . ."  *CREW v. U.S. Dept. of Justice*, 1:19-cv-01552-ABJ (D.D.C May 3, 2021), at p. 25. Ostensibly, the Defendants actions – as demonstrated by its post-litigation actions – in the case-at-bar are premised entirely upon an *ad hoc* process designed to provide a *post hoc* rationalization for a decision it had already preordained.

## JURISDICTION AND VENUE

38.     Plaintiffs repeat and incorporate by reference the allegations in the above paragraphs and all paragraphs of this Complaint.

39.     This Court has jurisdiction to review agency action and to order effective relief sought in this civil action pursuant to 28 U.S.C. §§ 1331 (federal question); 1346 (United States as defendant); 1361 (mandamus); 2201 (declaratory relief); 2202 (injunctive relief); and the Administrative Procedure Act

("APA"), 5 U.S.C. § 701 *et seq.* There is a present and actual controversy between the parties that is ripe for judicial review.

40.     Where a federal agency action is not authorized by law, in excess of statutory jurisdiction or authority, and contrary to protected constitutional rights, the APA explicitly waives sovereign immunity and provides a cause of action that provides for judicial review of the federal agency's actions. 5 U.S.C. § 701 *et seq.*

41.     Under RFRA, a person whose religious exercise has been burdened in violation of RFRA to assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government.  42 U.S.C. § 2000bb-1(c).

42.     The agency actions at issue in this lawsuit involve the U.S. Drug Enforcement Administration ("DEA"), a sub-agency of the U.S. Department of Justice.

43.     The DEA's Order constitutes a final agency action of Defendants.

44.     A substantial part of the events or omissions giving rise to the claims have occurred in this district due to decisions made here and Plaintiffs reside in the judicial district.  Venue in this Court is therefore proper under 28 U.S.C. § 1391(e).

## **PARTIES**

45.     Plaintiff SOUL QUEST CHURCH OF MOTHER EARTH INC. is a registered domestic non-profit corporation incorporated under the laws of the State of Florida, with a principal office located in Orlando, Florida.  Thus, pursuant 28

11

U.S.C. § 1391(c)(2), Plaintiff Soul Quest Church resides in the Middle District of Florida, Orlando Division for venue purposes.

46.   Soul Quest Church has numerous church members who regularly attend Church services, volunteer for the Church, and actively participate in ministry services and Church ceremonies.  Soul Quest Church brings this action in its own capacity and on behalf of the members of Soul Quest Church. Defendants' actions in prohibiting Soul Quest Church's use of ayahuasca for religious purposes substantially burdens the church and its member's free exercise of religion and causes irreparable injury to Plaintiff.

47.   Plaintiff CHRISTOPHER YOUNG is a natural person who is domiciled in Orlando, Florida.  Plaintiff Christopher Young is the religious leader of Soul Quest Church.  Christopher Young brings this action in his own capacity and as a founding member of Soul Quest Church.  Defendants' actions in prohibiting Christopher Young's use of ayahuasca substantially burdens Christopher Young's free exercise of religion and cause irreparable injury to Plaintiff.

48.   Defendant MERRICK GARLAND is sued in his official capacity as Attorney General of the United States of America.  Garland leads the United States Department of Justice ("DoJ") and is the chief lawyer and law enforcement official of the United States Government.   Garland is responsible for oversight of all actions taken by DoJ including actions of the U.S. Drug Enforcement Agency which is a sub-agency within DoJ.  Garland also provides federal leadership on matters related to administration and implementation of all U.S. laws including, but not

limited to, RFRA and the Controlled Substances Act.  Garland is responsible for oversight of all actions taken by DoJ and its sub-agencies including, but not limited to, issuance of the DEA's April 16, 2021, Order.  Plaintiffs' Exhibit 2.

49.    The official website for DoJ reflects its Mission as being "[t]o enforce the law and defend the interests of the United States according to the law; to ensure public safety against threats foreign and domestic; to provide federal leadership in preventing and controlling crime; to seek just punishment for those guilty of unlawful behavior; and to ensure fair and impartial administration of justice for all Americans."  The applicable website page – www.justice.gov/about -- also quotes Thomas Jefferson in stating that equal and impartial justice is "a sacred duty."

50.    Defendant Garland's professional and academic history reflects no background in theological studies or its equivalent.

51.    Defendant ANNE MILGRAM is sued in her official capacity as Administrator of the United States Drug Enforcement Administration (hereinafter, "DEA").  Milgram leads the DEA and serves as the chief law enforcement officer responsible for enforcement of the Controlled Substances Act.   Milgram is responsible for oversight of all actions taken by the DEA including, but not limited to, issuance of the DEA's April 16, 2021, Order.  Plaintiffs' Exhibit 2.

52.    Defendant Milgram's professional an academic history reflects no background in theological studies or its equivalent.  Rather, Milgram's background is one centered in criminal justice policy.

## PLAINTIFFS' RELIGIOUS EXERCISE

53.     Plaintiffs are a small church located in Orlando, Florida that use ayahuasca sacramentally and for religious purposes.

54.     Soul Quest Church was founded by Plaintiff Chris Young and Elder and Counselor Verena Young in 2016.

55.     Soul Quest Church conducts religious ceremonies with ayahuasca three times per month.  Church ceremonies are held on Friday night, Saturday day, and Saturday night.

56.     Church ceremonies can accommodate up to 70 to 100 Church members.  Ceremonies can also include up to 50 Church volunteers and 20 Church staff who do not partake of the ayahuasca sacrament.

57.     Soul Quest Church ministers to Church members every day of the week by providing 2-3 hours of ministry services, including integration services, both in person and on-line.

58.     Soul Quest Church holds sober ministering services every Sunday where no sacrament is consumed.

59.     Soul Quest Church does not sell ayahuasca and does not distribute or administer ayahuasca to non-Church members.

60.     Ayahuasca is offered as a sacrament to Church members only during Church religious ceremonies.

61.     Ayahuasca is a tea made from cooking two plants, the lease of *Psychotropia viridis* and the vine of the *Banisteriopsis caapi* (hereinafter jointly

referred to as "Plant Materials").  The preparation of ayahuasca requires intensive labor of many Church members and is very time consuming.  The vine and the leaves are boiled in water for many hours in a highly structured ceremony undertaken in prayer and accompanied by the singing of hymns.  It is only when ayahuasca is prepared under these very specific conditions that it is considered by the Church to be a sacrament.

62.     Soul Quest Church holds a permit from the U.S. Department of Agriculture ("USDA") for the lawful import of the Plant Materials used in connection with its religious practice.  *See* Soul Quest Church of Mother Earth Inc.'s Permit to Import Timber or Timber Product, No. P40-20-00542, a true and correct copy of which is attached hereto as Exhibit 6.

63.     Soul Quest Church has been notified by USDA that Plant Protection and Quarantine does not require a permit for the importation of this material.

64.     Ayahuasca is securely stored by the Church in a manner consistent with DEA regulations governing storage requirements for controlled substances.

65.     All Church members are required to adhere to Soul Quest Church's religious principles and sacred beliefs as well as Church practices involving dieting/fasting, appearance and holidays.  Church members are also instructed in important Church writings and educated in Church governance.  Church members are asked to donate a 10% tithing for participation in Church services.

66.     Soul Quest Church's religious principles and sacred beliefs rest upon a foundation of ancient teachings, writings, records, and common cultural and religious practices and traditions of indigenous peoples from across the globe.

67.     These same foundations constitute the source for Plaintiff Soul Quest Church's traditional, natural healing practices.

68.     Plaintiff Soul Quest Church believes that it honors and fulfills these ancient traditions and practices through its rituals from its church in Orlando, Florida, and that such rituals help to spread its teachings through the Earth and cosmos.

69.     Pursuant to its core teachings and beliefs, Plaintiff Soul Quest Church passes its message to others through its operation of a healing ministry, counseling and natural medicine school.   Further, it provides street-level ministry outreach, spiritual activities, and spiritual/faith-based education.

70.     Plaintiff Soul Quest Church holds spiritual classes and services in a style akin to various Native American religious practices – based upon the seasons.  Religious services involve music and song, and the sharing of personal professions of faith and faith in-action, as well as the enactment of plays.

71.     Plaintiff Soul Quest Church and its members embrace and espouse the following faith-based principles as fundamental to its religion:

          a.     The Creator, the Great Spirit, and that the Great Spirit created all beings to exist as free and equal.

b.  The Creator granted to all beings eternal, inherent, ancestral, and sovereign rights, and to all humans a conscience upon which to govern human activities throughout the planet.

c.  All humans derive from, and are intended to exist akin to, traditional, indigenous communities.  Further, through the descendants of these indigenous communities, there exist the need and priority to form and maintain organizations and practices premised upon indigenous teachings, wisdom and customs.

d.  Spiritually-based, natural health care and related sacred expression – arising from the sacred texts of traditional, indigenous religions and their ritualistic practices – are sacrosanct and must be practiced as sacraments to the faith.

e.  The fundamental mission of the faith is the restoration of divine wisdom, and knowledge of the benefits to health and life provided by the Great Spirit through Mother Earth.

f.  The restoration of divine wisdom can only occur through traditional ceremonies, rituals, sacraments, scriptural and a spiritually-valid moral science.  Such is based upon the teachings and practices reflecting the guidance of the Great Spirit as bequeathed to all people as children of Mother Earth.

g.  The traditions and teachings espoused within the faith's sacred texts and scriptures provide insight for the restoration of spiritual, physical and mental health of all beings.  These traditions and teachings require the assessment, improvement and restoration of physical, mental and spiritual health.

h.  The belief that, as children of the Great Spirit, there is entitlement to, as part of natural law, the various fundamental freedoms including, but not

limited, to freedom of thought and expression; the free exercise of sacred rights of worship and methods of healing; freedom of personal security; and freedom of self-determination.

i.  All men and women are endowed with sufficient intelligence for self-governance to ensure the guarantees of those freedoms; to establish just and morally righteous methods of interacting with one another; and to the provide for maintenance of a tranquil and secure domestic life infused by the blessings of the faith.

72.  Plaintiff Soul Quest Church adheres to seven (7) fundamental moral and ethical tenets, revealed to it and its members by and through the actions of the Great Spirit, *to wit*:

a.  Mother Earth, is the embodiment of an indivisible, living community of interrelated and interdependent beings with a common destiny; and that Mother Earth is the source of life, nourishment and learning, and providing everything needed to live a fulfilled existence; Mother Earth is part of a greater creation, composing all existence throughout the cosmos, as originated by the Great Spirit.

b.  All forms of depredation, exploitation, abuse and contamination – in whatever form and including, but not limited to certain economic systems – have endangered Mother Earth by causing massive destruction, degradation and disruption of natural systems. Amoral and immoral practices and systems must be discarded and replaced with the faith's moral tenets – guided by the Great Spirit – and premised upon the embracing of practices designed to protect and sanctify Mother Earth.

c.      As a part of a globally interdependent living community, and consistent with the teachings of the Great Spirit, all beings are imbued with natural rights requiring equal respect. Human beings are just one component of Mother Earth and a homocentric approach creates imbalance within Mother Earth.

d.      In order to fulfill the design of the Great Spirit to equal dignity and rights among humans, it is concurrently necessary to recognize and defend the rights of Mother Earth and all its beings.

e.      Consistent with the teachings of the Great Spirit, collective action must be taken to transform structures and systems destructive to Mother Earth including, but not limited to, the catastrophic consequences of modern climate change.

f.      Indigenous plant life is sacred and embodied by the Great Spirit.  All materials stemming from plant life must be accorded dignity, protected from threat or violation, and defended as a holy sacrament.  The ritual use of ayahuasca and its natural healing treatments is embraced as a fulfillment of this holy sacrament.

g.      An obligation to embody and promote the principles of the Universal Declaration of the Rights of Mother Earth, via fundamental respect for the sacred nature of the planet and its occupants, as one with the Great Spirit.

73.     Plaintiff Soul Quest Church's origins, and its teacher-prophet, the Spirit of Ayahuasca, are found within two sacred plants *Banisteriopsis Caapi* and *Psychotria Viridis*.

74.     The beliefs, purposes and guidelines are further defined within the sacred writings titled the "Ayahuasca Manifesto." A true and correct copy of the Ayahuasca Manifesto is attached hereto as Plaintiffs' Exhibit No. 7.

75.     The Ayahuasca Manifesto is very much akin, and serves a similar purpose, to other faiths' sacred writings, explaining the tenets of the faith, such as the Jewish Talmudic writings and the Mishnah.

76.     The sacred nature of the Spirit of Ayahuasca is proclaimed within the Ayahuasca Manifesto as follows:

> I am the spirit of Ayahuasca. For the first time, I reveal myself through the "Word" to make an emergency call to all the Human Beings on the Planet, especially to the Light Seekers, as I must expand beyond the Amazon River Basin. With my physical expansion, I intend to facilitate the spiritual transformation currently stirring the human species ….
>
> I am a spirit of spirits. I operate from a vibration superior to the spirits who compose me. I am of a hierarchy superior to that of the spirit of Ayahuasca and of Chacruna. I am the medicine resulting from the mixture of Ayahuasca and Chacruna. Although they give me the name of one of them, my sacred magic does not come from either one of them. My magic resides in the synergy created by the sacred mixture.

Exhibit No. 7, at 5-6.

77.     Plaintiff Soul Quest Church's beliefs, purposes and guidelines are provided through channeled material documented in Ayahuasca Manifesto. The

Manifesto provides knowledge and direction, inclusive of details about Plaintiff Soul Quest Church's mission, as well as instructions on the following topics:

    a.    Role in the Expansion of the Human Consciousness;
    b.    Purpose with Human Beings;
    c.    Respect and the Sacred Nature of Ayahuasca;
    d.    Benefits of Use;
    e.    Guide for Conducting Ayahuasca Ceremonies; and
    f.    Planetary Mission.

78.    Other fundamental religious ethical requirements of Plaintiff Soul Quest Church are included in its Code of Ethics.  The Code of Ethics contains key principles, edicts and other educational statements regarding Soul Quest and its sacraments – inclusive of the use of ayahuasca.  A copy of the Code of Ethics is attached hereto, and incorporated by reference herein, as Plaintiffs' Exhibit No. 8.

79.    Plaintiff Soul Quest Church's mission is achieved through its advocacy and educational initiatives by producing disciples who will celebrate the teachings and wisdom of the Great Spirit in cooperative worship; are devoted to the four (4) boundless and unequaled states of mind – Love, Compassion, Joy and Equanimity; are possessed with love for everyone and every living being; and are permeated and bound by the spheres of influence and dynamic teachings of our elders.

80.    On a liturgical level, Plaintiff Soul Quest Church's requires staff to observe proper liturgical dress during religious retreats and ceremonies.  This entails the wearing of white vestments.

81.    The color *white* is critical to the practice of Plaintiff Soul Quest Church's religious ceremonies and retreats, and performance of sacraments of the faith, for the following reasons:

    a.    It represents the color of eternal light and is an emblem of the divine.

    b.    It projects purity, cleanliness and neutrality.

    c.    It aids in mental clarity, encourages staff and participants to clear mental and spiritual clutter and obstacles, evokes purification of thoughts and actions and enables fresh beginnings.

    d.    It accentuates free movement, all while maintaining maximum respect to the Great Spirit, and all others participating in such functions.

82.    Plaintiff Soul Quest Church's and its members celebrate the following holidays:

    a.  December 23 - Winter Solstice;
    b.  March 21 - Vernal Equinox'
    c.  April 22 - Earth Day;
    d.  June 21 - Summer Solstice; and
    e.  September 21 - Autumnal Equinox.

83.    Plaintiff Soul Quest Church's holidays, akin to many diverse cultural and religious traditions, are premised upon the ancient tradition of celebrating the change of seasons and complementary astronomical events.

84.    Plaintiff Soul Quest Church's and its members adhere to the traditional diet of the Medicine People.  The diet not only requires abstention from

consumption of certain foods; rather, it also requires discipline, sacrifice and commitment, akin to those of various Judeo-Christian and Eastern religious sects.

85.     The constraints imposed by Plaintiff Soul Quest Church's dietary laws are designed to cleanse the body and, by doing so, cleanse the spirit and permit for the effective, efficient use of plant medicine.

86.     These constraints directly impact Plaintiff Soul Quest Church's ayahuasca sacrament ceremony.  Prior to any ayahuasca ceremony, Plaintiff Soul Quest Church members and adherents are to comply with the following dietary and sexual edicts, designed to purify body and soul:

    a.    Seven days prior to involvement in any ayahuasca ceremony, refraining from:

        i.    Drug use, including prescription drugs (medical interaction forms, including in the supplement to this religious exemption application provide further instruction), and any and all recreational drugs.

        ii.    Alcoholic beverages

        iii.    Sexual activity (whether with a partner or from self-stimulation).

    b.    Three days prior to involvement in any ayahuasca ceremony, refrain a wide variety of foods and beverages.

    c.    All Plaintiff Soul Quest Church's facilitators are expected to fast for the period spanning the day prior to any ayahuasca ceremony, through to completion of any ceremony.  In doing so, those individuals also demonstrate a commitment to the Great Spirit as embodied within the plant medicine, and prepare for acting as a surrogate for the Great Spirit during the ayahuasca ceremony.

87.     Ultimate authority lies in the Creator/Great Spirit of Ayahuasca as the head of the church and in the sacred beliefs, and doctrines expressed as the basis for Plaintiff Soul Quest Church's faith and practice.

88.     The government of Plaintiff Soul Quest Church is vested in its membership and administered by its officers. In function, final authority resides in the membership.

89.     Plaintiff Soul Quest Church members approve and/or affirm Plaintiff Soul Quest Church's qualified leadership, to carry out the purposes of the spirit of Ayahuasca.

90.     Plaintiff Soul Quest Church's leadership holds leadership meetings to talk, brainstorm and agree on any discipline or change that may be required.

91.     Akin to other religious institutions, Plaintiff Soul Quest Church maintains multiple instruments for governance of its affairs.   Presently, this includes the following lay and religious officials/bodies:

a.   Chief Executive Officer, Chief Medicine Man, Pastor, Chief Elder and Counselor: Plaintiff Christopher Young;

b.   President, Elder and Counselor: Verena Young;

c.   Senior Medicine Man/Shaman:   Don Gaspar;

d.   Medicine Man/Ayahuascaro:   Anthony Chetta;

e.   Medicine Woman: Tersa Shiki;

f.   Council of Elders: Constituted of selected senior members of Plaintiff Soul Quest Church, and occupying various areas of specialization, as necessary for the maintenance and welfare of the Church.

92.    Further, other officers such as church administrator, secretary, visiting ministers and teachers/elders will be assigned with Board permission. Presently, pending future growth of the Plaintiff Soul Quest Church, the Senior Pastor fills such duties.

93.    Plaintiff Soul Quest Church receives all individuals as members who accept the spiritual and religious principles of the Church, as well as recognize the fruits of the Great Spirit in their lives, and who agree to abide by Plaintiff Soul Quest Church's doctrine.

94.    Plaintiff Soul Quest Church holds the following federal and state tax treatments as a religious-based, non-profit entity:

a.    Soul Quest Church of Mother Earth Inc. (SQCME) – Non-Profit Corporation Federal Identification No.: 841402813, and Florida State Non-Profit Corporation, founded by Medicine Man, Pastor, Chief Elder and Counselor, Chris Young; and its Elder and Counselor, Verena Young.

b.    Soul Quest Ayahuasca Church of Mother Earth Retreat and Wellness Center (SQACME), as an independent branch or Free Church of SQCME; Florida State Non-Profit Corporation 501 IRS-compliant Non-Profit was first incorporated July 15, 2016, with its Charter Declaration also entered on July 15, 2016, recognizing its founders, Medicine Man, Pastor, Chief Elder and Counselor Chris Young; and Elder and Counselor Verena Young.

95.    The ayahuasca sacrament is performed three (3) times per month, with approximately 60-80 individuals in attendance, alongside approximately twenty, skilled (20) facilitators (spiritual counselors) also present throughout the

sacramental ceremony.   These facilitators work alongside a team – at the ceremony – which includes a licensed physician as medical director, a licensed paramedic, a licensed emergency medical technician ("EMT"), a psychologist, and a research scientist.

96.    The ayahuasca sacrament involves the consumption of tea using the received wisdom and learning of Plaintiff Soul Quest Church to elevate its petitioners above the mundane world, and so bring them closer to the divine realm.

97.    Plaintiff Soul Quest Church limits attendance (and enhances the ratio of ceremonial facilitators) in order to maximize safety and security to all involved throughout the ritual.

98.    Plaintiff Soul Quest Church has designed and implemented safety and security protocols, intended to maximize the protection of those participants in Ayahuasca ceremonies.

99.    Those individuals designated to conduct and facilitate Plaintiff Soul Quest Church ceremonies must first prove that they have attained the requisite knowledge and expertise in the following areas:

a.    The Pharmacology of Ayahuasca;
b.    The Risks & Contra-Indications of Ayahuasca;
c.    The Legal Implications Surrounding the Dispensing of Ayahuasca;
d.    First Aid;
e.    The Theory of Non-Ordinary States of Consciousness, and Therapeutic Approaches;
f.    Possession of Extensive, Prior Personal Experience with Ayahuasca;
g.    The Ability to Work as a Team Member; and

h.   Understanding of Soul Quest's Religious Principles, Therapeutic Purposes of Consuming Ayahuasca, and the Fundamental Moral & Ethical Tenets.

100.   Additional measures are imposed to prepare Plaintiff Soul Quest Church members for participation in Ayahuasca ceremonies:

a.   Prior to any ceremony, the Church transmits, via electronic mail, educational material on Ayahuasca to all members anticipating participation in the Ayahuasca ceremony.  It is critical to ensure that members are well-informed regarding the ceremony, and the requirements for properly conducting themselves before, during and after the ceremony.  The following information is conveyed to these Soul Quest members:

i.   The properties of Ayahuasca, its composition, its effects and the potential risk.
ii.   The implications of drinking Ayahuasca.
iii.   The dietary restrictions before and after the session.
iv.   The responsibilities of the staff and the participants.
v.   The procedure and operation of the session.
vi.   The process, in its entirety.

b.   All Plaintiff Soul Quest Church members intending participation in the sacramental ceremonies involving ayahuasca are required to complete and return a medical form prior to participation, to ascertain whether or not there are potential medical limitations to such participation.

c.   Plaintiff Soul Quest Church conducts individualized interviews with the member intending to participate in the ayahuasca ceremony.  The purpose for these interviews is to:

i.   Establish a rapport with the individual; ascertain their basis and willingness to

        participate in the sacred Ayahuasca ritual; and to qualitatively assess current psychological and physical status; and

    ii.    (Re)assess an individual who has previously participated in the ayahuasca ceremony.

d.    Plaintiff Soul Quest Church presents and explains the mandatory consent form.

e.    Plaintiff Soul Quest Church uses the information gathered through its described written and oral questions/interviews to determine whether or not to permit any given individual to participate in the Church's sacred ayahuasca ceremony. The acceptance of an individual's participation in the ceremony is premised upon:

    i.    Members demonstrating their understanding of the personal, religious process entailed by their participation.

    ii.    Accepting only members whose personal participation is unlikely to require greater assistance (in time or resources) than is available in the current context of the ayahuasca ceremony.

    iii.    Determining whether members perhaps require additional therapy prior to consuming the sacramental ayahuasca tea. Such additional therapy might potentially involve advising the member to seek appropriate, external professional assistance.

f.    In cases where any member's participation in the sacred ayahuasca ceremony is declined by the Church, Plaintiff Soul Quest Church provides that member with an explanation for its decision, and suggests alternative methods for achieving suitable religious and therapeutic fulfillment. If Plaintiff Soul Quest Church determines there to be doubts about any

28

member's suitability, then participation in the ayahuasca ceremony is not permitted.

101. Plaintiffs have now fallen victim to actions by Defendants prohibiting Plaintiffs' religious exercise with ayahuasca, thus abridging fundamental freedoms and statutory rights.

102. The Defendants actions have abridged the sincere religious beliefs of not only the Plaintiffs, but also its members. In support of this, Plaintiffs submit the Affidavit of Ronald McNutt ("McNutt Affidavit"), a member of Soul Quest Church, and an attorney from the State of Tennessee. A true and correct copy of Mr. McNutt's affidavit is attached hereto, and made a part of this Third Amended Complaint as Plaintiffs' Exhibit No 9. The McNutt Affidavit reflects the religious significance and sincerity of Soul Quest Church and its ayahuasca sacrament in the life of its members; it is also reflective of the devotion of Soul Quest Church's congregation to the religion and its sacred practices.

## U.S. GOVERNMENT PROHIBITION

103. The Controlled Substances Act ("CSA") was enacted by Congress to erect prohibitions upon the use of a large variety of identified, controlled substances. 21 U.S.C. § 801, *et seq.*

104. One of the substances classified as a Schedule I controlled substance is N, N-5, 5-dimethyltryptamine ("DMT"). 21 U.S.C. § 812(c)(c)(6).

105. DMT is a chemical compound that can by synthetically produced.

106.   DMT is also naturally occurring and is found in many plants' native to the Western Hemisphere, including North America.  None of these plant species are listed under the CSA as controlled substances.

107.   *Psychotropia viridis* is a small plant containing trace amounts of DMT.  *Psychotropia viridis* is not listed under the CSA as a controlled substance.

108.   *Banisteriopsis caapi* is a large, rugged vine containing three chemical alkaloids, harmaline, harmine, and 1,2,3,4-tetrahydroharmine, none of which are listed in any schedule of the CSA. *Banisteriopsis caapi* is not listed under the CSA as a controlled substance.

109.   Ayahuasca is a tea made from cooking two plants, the lease of *Psychotropia viridis* and the vine of the *Banisteriopsis caapi*.

110.   Ayahuasca is not listed as a controlled substance under the CSA.

## U.S. GOVERNMENT ACTIONS

111.   By letter dated August 22, 2016, the DEA contacted Plaintiffs directing them to "petition for an exemption under RFRA" "so that the DEA may consider […] the specific facts regarding your plans to distribute controlled substances."

112.   The DEA's August 22, 2016, finds that Plaintiffs "were involved in offering 'retreats' […] at which you provided ayahuasca" and that ayahuasca contained the hallucinogen dimethyltryptamine ("DMT"), a substance that is listed on Schedule I of the [CSA]."

113.   The DEA's August 22, 2016, directs Plaintiffs to "file a petition [with DEA] and obtain a response to your request for an exemption before engaging in the distribution of DMT under the assumption that this conduct qualifies as an exempt religious exercise."

114.   As legal authority, the DEA's August 22, 2016, letter states that "[t]he DEA has published guidance on our website for those who seek to petition for any exemption under RFRA, a copy of which is attached with this letter."

115.   By letter dated August 21, 2017, Plaintiffs submitted the requested petition to DEA under RFRA in support of their religious use of ayahuasca.  A true and correct copy of this letter is attached hereto as Plaintiffs' Exhibit No. 10.

116.   The only 'guidance' professed by DEA in submission of such a letter is the 1½ page online document titled "Guidance Regarding Petitions for Religious Exemption from the Controlled Substances Act Pursuant to the Religious Freedom Restoration Act," a true and correct copy of which is attached hereto as Plaintiffs' Exhibit No. 11 and hereinafter referred to simply as "DEA Guidance."  Of critical note is the lack of any true guidelines under such a document, as well as its absence of any reference to any enabling legislation based by Congress pursuant to RFRA.  Accordingly, the Plaintiffs assert that the "DEA Guidelines" fail to meet to prerequisites for official recognition and use pursuant to the Administrative Procedure Act, 5 U.S.C. § 551, *et seq.*

117.   On April 16, 2021, almost four years after Plaintiffs submitted the requested petition to DEA, Defendants issued an order adjudicating the sincerity

of Soul's Quest's religious beliefs and determining that prohibiting Soul Quest's religious exercise with ayahuasca is the least restrictive means of furthering the government's compelling state interest in protecting the health and safety of Soul Quest's religious adherents and preventing diversion of ayahuasca into illicit channels.  *See* Plaintiffs' Exhibit 2.

**COUNT ONE**

**<u>VIOLATION OF THE RELIGIOUS FREEDOM RESTORATION ACT</u>**
**(42 U.S.C. §§ 2000bb–2000bb-4)**

118.    Plaintiffs repeat and incorporate by reference herein the allegations in the above paragraphs and all the paragraphs of this Complaint.

119.    Plaintiffs' religious beliefs and those of its members are sincere and of a religious nature.

120.    Plaintiffs use of ayahuasca is religious in nature and is part of Plaintiffs' sincerely held religious beliefs.

121.    The Defendants' actions substantially burden Plaintiffs' religious exercise.

122.    Drug Enforcement Administration's Order (April 16, 2021) ("DEA's Order") prohibits Plaintiffs free exercise of religion with ayahuasca.

123.    The DEA's Order prohibits Plaintiffs from importing, possessing, manufacturing, and distributing ayahuasca.

124.    The DEA's Order, and Defendants' prohibition on Plaintiffs' religious exercise with ayahuasca, creates government-imposed coercive pressure on Plaintiffs to change or violate their religious beliefs.

125.    The DEA's Order, and Defendants' prohibition on Plaintiffs' religious exercise with ayahuasca, chills, burdens, inhibits, and destroys Plaintiffs' religious exercise.

126.    The DEA's Order, and Defendants' prohibition on Plaintiffs' religious exercise with ayahuasca, furthers no compelling governmental interest.

127.    The DEA's Order, and Defendants' prohibition on Plaintiffs' religious exercise with ayahuasca, is not narrowly tailored to any governmental interest.

128.    The DEA's Order, and Defendants' prohibition on Plaintiffs' religious exercise with ayahuasca, is not the least restrictive means of furthering Defendants' stated interests.

129.    The DEA's Order, and Defendants' prohibition on Plaintiffs' religious exercise with ayahuasca, violate Plaintiffs' rights secured to them by the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb, *et seq.*

130.    Absent declaratory and injunctive relief against Defendants, Plaintiffs have been and will continue to be injured.

**COUNT TWO**
**VIOLATION OF THE ADMINISTRATIVE PROCEDURES ACT**
**(5. U.S.C. §§ 501 *et sq.*)**

131.    Plaintiffs repeat and incorporate by reference the allegations in the above paragraphs and all paragraphs of this Complaint.

132.    The APA prohibits Defendants from taking actions that are not authorized by law, in excess of statutory jurisdiction, authority, or limitations or contrary to constitutional rights, powers, privileges or immunities.  5 U.S.C. § 706.

133.   Defendants unlawfully adjudicated Plaintiffs' religious sincerity in excess of statutory jurisdiction, authority, or limitation.  *See, e.g.,* 5 U.S.C. § 551(7) (defining "adjudication" as "agency process for the formulation of an order").

134.   There is no law authorizing Defendants to investigate, evaluate or adjudicate the sincerity of religious beliefs.

135.   U.S. Department of Justice policies prohibit government agencies from assessing the reasonableness of religious belief.   As directed by former Attorney General Jeff Sessions,

> [The Religious Freedom Restoration Act] applies to all sincerely held religious beliefs, whether or not central to, or mandated by, a particular religious organization or tradition.  Religious adherents will often be required to draw lines in the application of their religious beliefs, and government is not competent to assess the reasonableness of such lines drawn, nor would it be appropriate for government to do so. Thus, for example, a government administration may not second-guess the determination of a factory worker that, consistent with his religious precepts, he can work on a line producing steel that might someday make its way into armaments but cannot work on a line producing the armaments themselves. Nor may the Department of Health and Human Services second-guess the determination of a religious employer that providing contraceptive coverage to its employees would make the employer complicit in wrongdoing in violation of the organization's religious precepts.

*Federal Law Protections for Religious Liberty*, U.S. Attorney General Jeff Sessions, October 6, 2017, at 4, a true and correct copy of which is attached hereto as Plaintiffs' Exhibit No. 12.

136.   On April 16, 2021, the DEA unlawfully issued an order prohibiting Plaintiffs' free exercise of religion with ayahuasca.  *See* DEA's Order; 5 U.S.C. § 551(6) (defining order).

137.   DEA's Order was purportedly issued "in accordance with the framework set forth in the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb-1; the Attorney General's guidance memorandum, 'Federal Law Protections for Religious Liberty' (October 6, 2017) (AG Memorandum); the Supreme Court decision in *Gonzales v. O Centro Espirita Beneficente Uniao de Vegetal,* 546 U.S. 418 (2006) (*O Centro*); DEA's 'Guidance Regarding Petitions for Religious Exemption from the Controlled Substances Act Pursuant to the Religious Freedom Restoration Act'; and subsequent case law."  *See* DEA Order at 1.

138.   None of the laws on which the DEA's Order was based empower Defendants to prohibit Plaintiffs free exercise of religion with ayahuasca. *See, e.g.,* 5 U.S.C. § 558(b) ("[a] sanction may not be imposed or a substantive rule or order issued except within jurisdiction delegated to the agency and as authorized by law.").

139.   By letter dated August 22, 2016, the DEA contacted Plaintiffs directing them to "petition for an exemption under RFRA" "so that the DEA may consider […] the specific facts regarding your plans to distribute controlled substances."  *See* 5 U.S.C. § 551(8) (defining "license" as including "the whole or

a part of an agency permit, certificate, approval, registration, charter, membership, statutory exemption or other form of permission.").

140.    In demanding that Plaintiffs' petition for a license from DEA for religious exercise with ayahuasca, Defendants failed to provide due regard for the rights and privileges of Plaintiffs and provide a hearing in accordance with APA procedures in adjudicating the sincerity of Soul's Quest's religious beliefs and determining that prohibiting Soul Quest's religious exercise with ayahuasca is the least restrictive means of furthering the government's compelling state interest. *See, e.g.,* 5 U.S.C. § 558(c).

141.    The DEA's August 22, 2016, letter, the DEA's Order, and Defendants' prohibition on Plaintiffs' religious exercise with ayahuasca, violate Plaintiffs' rights secured to them by the Administrative Procedures Act, 5 U.S.C. § 501, *et seq.*

142.    Absent declaratory and injunctive relief against Defendants, Plaintiffs have been and will continue to be injured.

### COUNT THREE
### VIOLATION OF THE FIRST AMENDMENT TO THE CONSTITUTION
### (Free Exercise of Religion Clause)

143.    Plaintiffs repeat and incorporate by reference the allegations in the above paragraphs and all paragraphs of this Complaint.

144.    Plaintiffs' religious beliefs and those of its members are sincere and of a religious nature.

145.    Plaintiffs' use of ayahuasca is religious in nature and is part of Plaintiffs' sincerely held religious beliefs.

146.    Plaintiffs' compliance with their beliefs is religious exercise.

147.    The actions of Defendant in adjudicating Plaintiffs religious sincerity and prohibiting Plaintiffs religious exercise with ayahuasca violate Plaintiffs' rights to the free exercise of their religion under the Free Exercise Clause of the First Amendment to the United States Constitution.

148.    Additionally, the licensing mechanism employed by Defendants in the form of the *DEA Guidance* is not neutral and generally applicable.

149.    The DEA Guidance invites the government to consider the particular reasons for a person's conduct, including religious sincerity, by creating a mechanism for individualized exemptions to the Controlled Substances Act.

150.    Defendants' licensing mechanism is discretionary and wholly devoid of any legal test, standard of review, burden of proof, time frame for decision-making, required evidence, or right to hearing.

151.    Further, Defendants' religious licensing mechanism demands that religious adherents, including Plaintiffs, cease religious exercise unless and until the government has adjudicated the sincerity of a licensee's religious exercise. *See DEA Guidance.*

152.    Defendants' religious licensing mechanism violates Plaintiffs rights secured to them by the Free Exercise Clause of the First Amendment to the United States Constitution.

153.   Absent declaratory and injunctive relief against Defendants, Plaintiffs have been and will continue to be injured.

## **PRAYER FOR RELIEF**

WHEREFORE, for all the foregoing reasons, the Plaintiffs respectfully request that this Court grant the following relief:

a.   Declare that Defendants' actions substantially burden Plaintiffs free exercise of religion, are not authorized by law, are in excess of statutory jurisdiction, authority, or limitations, and, are contrary to constitutional rights, powers, privileges or immunities;

b.   Declare that Defendants have violated the Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb–2000bb-4 (or "RFRA"), the Administrative Procedures Act, 5 U.S.C. §551 et. seq., and the First Amendment to the United States Constitution;

c.   Enjoin Defendants from taking any action prohibiting Plaintiffs from importing, possessing, manufacturing, and distributing ayahuasca, *Psychotropia viridis* and *Banisteriopsis caapi*;

d.   Void the U.S. Drug Enforcement Administration's Order (May 16, 2021);

g.   Grant Plaintiffs their costs of litigation, including reasonable attorney fees as enter an Order awarding the Plaintiffs attorneys' fees, costs, and expenses, pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, and the Civil Rights Attorneys' Fees Award Act of 1976, 42 U.S.C. § 1988; and

f.   Grant Plaintiffs such additional and relief as the Court deems just and proper.

## **VERIFICATION OF FACTUAL ALLEGATIONS IN COMPLAINT**

With respect to the factual allegations in the instant Third Amended, Verified

Complaint, I, Christopher Young, Plaintiff herein, declare (certify, verify, or state)

under penalty of perjury that the foregoing factual allegations are true and correct,

as provided in 28 U.S.C. § 1746.

Executed on this 12th day of July 2021.

CHRISTOPHER YOUNG

Dated this 12th day of July 2021.

Respectfully submitted,

By: *s/Derek B. Brett*
**DEREK B. BRETT, ESQ.**
Fla. Bar No. 0090750
**BURNSIDE LAW GROUP**
109 Ilsley Avenue, Suite 9
Halifax, Nova Scotia B3B 1S8
Telephone:    (902) 468-3066
Facsimile:    (902) 468-4803
Email: dbb@burnsidelaw.net
Lead Counsel for Plaintiffs

s/A. Brian Phillips
**A. BRIAN PHILLIPS, ESQ.**
Fla. Bar No. 0067113
**A. BRIAN PHILLIPS, P.A.**
912 Highland Avenue
Orlando, Florida 32803
Telephone:    (407) 872-0777
Telecopier:    (407) 872-0704
Email: brian.phillips@phillips-law-firm.com
Local Counsel for Plaintiffs

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that, on this 22nd day of July 2021, the undersigned electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of the same via email to the designated counsel for the Defendants.

**By:** *<u>/s/A. Brian Phillips</u>*
     **A. BRIAN PHILLIPS, ESQ.**