Exhibit 5

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

SOUL QUEST CHURCH OF MOTHER    )
EARTH, INC., a Florida Domestic          )
Non-Profit Corporation, on its own       )
behalf and on behalf of its members; and)
CHRISTOPHER YOUNG, individually    )
and as Spiritual Leader of Soul Quest    )
Church of Mother Earth,                        )
                                                               )
      Plaintiffs,                                    )
                                                               )
      v.                                                )    Case No.: 6:20-cv-00701-WWB-DCI
                                                               )
WILLIAM BARR, Attorney General of the)
United States of America; and               )
UTTAM DHILLON, Acting Administrator )
of the U.S. Drug Enforcement              )
Administration,                                       )
                                                               )
      Defendants.                                 )
_____)

**AFFIDAVIT OF CHRISTOPHER YOUNG IN SUPPORT OF**
**PLAINTIFFS' THIRD AMENDED, VERIFIED COMPLAINT FOR**
**DECLARATORY AND EMERGENCY INJUNCTIVE RELIEF AND DAMAGES**

Pursuant to 28 U.S.C. § 1746, I, Christopher Young, state as follows:

1.  I am over the age of twenty-one (21) years and have personal knowledge of the facts listed in this affidavit.

2.  I am the current spiritual leader of Soul Quest Church of Mother Earth, Inc. [hereinafter "Soul Quest Church"].

3.  Soul Quest Church is a Christian syncretic religion based in Orlando, Florida.

4.      Soul Quest Church is a registered domestic non-profit corporation incorporated under the laws of the State of Florida, with a principal office located in Orlando, Florida.

5.      I have been the spiritual leader of Soul Quest Church since its founding in 2015.

6.      I am a natural person who is domiciled in Orlando, Florida.

7.      I am the person primarily responsible for receiving and preparing Soul Quest Church's sacramental tea.

8.      This sacramental tea is an indispensable component of Soul Quest Church and my own personal, religious beliefs.  Drinking this tea is a sincere religious practice.

9.      I first came to Soul Quest Church and the Church of Ayahuasca by and through my studies of conventional medicine. I began my career in 1996 by obtaining a certificate in phlebotomy and medical assistance.

10.     In 1997, I obtained a certificate in emergency medicine, and would begin working as a technician in emergency rooms.

11.     I worked in the field of emergency medicine for four (4) years. However, over time, I began to see how people were being harmed – both physiologically and spiritually – by prescription drugs and its potential abuse.

12.     These experiences and observations brought me to commence a study of alternative medicine and spirituality.

13.     I studied alternative medicine and spirituality in the United States for five (5) years.  Thereafter, in 2012, I continued my studies in Germany.

14.     I first heard the call of the Spirit of Ayahuasca during my time in Spain, Where I was invited to the first Ayahuasca conference where I attended many ayahuasca retreats.

15.     These conferences delivered my experiences with the consumption of ayahuasca tea.  These experiences were, to me, an epiphany, as engaging in the sacramental ritual powerfully and demonstrably and irrevocably restructure my view of reality, and of mankind's place in the universe.  It was a deeply religious and moving experience for me – and remains so.

15.  The ayahuasca sacramental experience revealed to me that humanity is powered by divine love.  In fact, divine love is the central, binding force behind our existence.  Instead of our existence – as before for me – being guided by material forces, I came to understand through the ayahuasca sacrament that harmony in our human existences flow from a form of ethereal and mystical and transcendental sense of human compassion, for all life.

16.     I followed up on this divine experience via study and understanding of the Ayahuasca Manifesto, I recognized the physical and spiritual healing possibilities to be realized through the Spirit of Ayahuasca.  At that point, I felt a spiritual calling to return to the United States with these teachings and healings.  I felt the calling to spread the word of the Spirit of Ayahuasca to other potential adherents.

17.     In furtherance of this spiritual calling, I formed Soul Quest Church in approximately October 2014, and began offering services in March 2015.

18.     Soul Quest Church is a recognized non-profit, religious entity that exists to spread the faith of the Spirit of Ayahuasca and the revealed teachings of the Ayahuasca Manifesto to the world.

19.     A key aspect of the Soul Quest Church's faith and religious practice is our consumption of our sacramental tea. We believe that consumption of this tea brings us closer to the Divine.

20.     As explained by my attorneys in the Verified Second Amended Complaint, to which this Affidavit is attached, the Defendants have denied Soul Quest Church and me the ability to import, receive and prepare our sacramental tea.

21.     The denial of access to our sacramental tea has had, and continues to have, a chilling effect upon our sincere, genuine religious practice.  This extends not just to myself, but to all members of Soul Quest Church.  Further, I live in constant, daily fear of the Defendants using their general law enforcement powers to prevent my practicing my sincere religious beliefs including, but not limited to, the ability of the Defendants to arrest me for my blending of, storage and use of the sacramental ayahuasca tea.

22.     On approximately August 1, 2016, I received a letter from the Defendants, inviting me to file for a religious exemption application to the Controlled Substances Act.

23.     In an effort to ensure that we could continue to practice our religion, I retained counsel and sought to file a religious exemption application with the Defendants.

24.     In August 2017, this application for religious exemption was filed in accordance with what little information was available from the Defendants. Effectively, there was little guidance provided on how to file such an exemption application; likewise, despite a diligent search through legal counsel, there did not appear to be any standards promulgated by the Defendants regarding its review and consideration of the exemption application.

25.     From that day through the time following my lawyers filing the original Verified Complaint in this federal case, I heard nothing about the status of Soul Quest Church's religious exemption application.  The Defendants never ruled upon any such application – or even bothered to advise my legal counsel about its status.

26.     In fact, the Defendants never provided any guidance on how Soul Quest's religious exemption application would be ruled upon.  There are simply no published rules or regulations.  Through my own research, I came to learn that there are no such regulations.  Following my retention of my lawyers in this matter, I also learned that the Defendants have never – since the Supreme Court's ruling in a case I know as *UDV* back in 2006 – created any such rules or regulations. The absence of such has created additional fear about the effects of the Federal Government attempting to suppress my rights to the exercise of my fundamental

religious beliefs, especially after I received the August 1, 2016, letter from the DEA.
I love and cherish my religious beliefs; my devotion to such beliefs is devout and
pure.  I do not want the Government to undermine my ability to practice such beliefs
and to assist others into learning of and embracing the Spirit of Ayahuasca.

26.     After months without any response or other communication from the
Defendants, I requested my attorney call the Defendants for a status update and
to see if we needed to do anything else.

26.     Despite numerous telephone calls by my attorney, and the
considerable passage of time, the Defendants have failed to process Soul Quest
Church's exemption application.

27.     In fact, prior to filing this lawsuit in 2020, the Defendants never even
confirmed the receipt of Soul Quest Church's religious exemption application.  It
was only through an independent Freedom of Information Act request that I
became aware that the Defendants had received Soul Quest Church's religious
exemption application.

28.     As before, the Defendants have failed to issue specific policies and
procedures regarding the methodology behind its consideration of religious
exemption applications.  My earlier fear, which was expressed in my previous
Affidavit to the Amended Complaint, remains steadfast.

29.     Previously, I fear that the Defendants would "never issue a
determination or – in the event one is eventually issued at some point in the
indeterminate future – will arbitrarily deny the application based upon its lack of

specific standards, allowing its decisionmakers wide (or, even, unlimited) discretion."

30.     On April 16, 2021, the Defendants issued what they believe is their determination on the issue of Soul Quest Church's religious exemption request.

31.     Ironically, the Defendants seem to be asserting that the negotiations between the Parties – which delayed the earnest commencement of this litigation for approximately one (1) year – instead constituted DEA's exemption investigation.

32.     Over the course of the past year, my lawyers and I met with a designated agent for the DEA, James Graumlich.   Agent Graumlich's communications with Soul Quest Church and its leadership (including me), were always done in the presence of at least one of my lawyers.  At no time did Agent Graumlich ever question anyone regarding the religious underpinnings of Soul Quest Church.   At no time, did Agent Graumlich ever inquire into issues surrounding the sincerity of our beliefs or the sincerity of the ayahuasca sacramental ritual.

32.     In fact, I am unaware of any training that Agent Graumlich possesses with an understanding of world religion; of the constitutional underpinnings of the jurisprudence supportive of free exercise of religion or the RFRA; or any other matter which would provide Agent Graumlich – as the sole designee of the DEA – with any basis upon which to pass judgment on Soul Quest Church, and its members' (including myself) religious sincerity.

33.     Rather, Agent Graumlich's inquiries – which both my lawyers and I believe were designed to effectuate the issuance of a religious exemption as part of a negotiation pursuant to the litigation – involved entirely what was termed "diversion-control" matters.

34.     For example, Agent Graumlich wanted to make certain that Soul Quest Church's preexisting security systems were of a higher quality.  So, as a result, Soul Quest Church purchased an upgraded security system designed to meet with DEA's approval.

35.     Likewise, Agent Graumlich wanted to ensure that the raw, legal product – which is capable of being imported into the United States – was not maintained at a separate, secure storage facility prior to it being transported locally to Soul Quest Church and blended into the sacramental tea.  Accordingly, Soul Quest Church eliminated the use of such separate storage.  Based on knowledge and information neither the UDV Church or the Church of Santo Daime was ever required to have one location for storage and use of its sacramental plants.  Yet, with Soul Quest Church, the DEA was requiring such.  Soul Quest Church complied with such a request.

36.     Soul Quest Church complied with every request for information made to it by DEA.  Soul Quest Church and I wanted to cooperate as it was believed that – by doing so – we could resolve the case and put into place the necessary resources and structure in order to make certain that our engaging in the ayahuasca sacramental ritual would be as safe and secure as possible.  My

lawyers and I believed that being transparent to DEA and being adaptable to its suggestions on 'diversion-control' issues, would permit for the issuance of some form of judicially-endorsed religious exemption – akin to what the courts did in the *UDV* and *Santo Daime* cases.

37.     The only reservation that was stated by my lawyers was when DEA – toward the latter part of 2020 – decided to inquire into the payment methods used by Soul Quest Church in order to purchase the legal, raw material from its vendor.  At that point, my lawyers indicated concerns about whether DEA was involved in some form of criminal investigation.  Again, without any standards ever provided (despite my lawyers requests for such to Defendants' counsel), Soul Quest Church and I are unable to ascertain what basis – if any – DEA would have to inquire into the payment process for purchase of a legal agricultural product.

38.     The Defendants position – as stated in their April 16, 2021, letter, surprised and disappointed me.  Yet, it fulfilled my original fears about the Defendants, and their lack of any proper, legal regulations and standards.  What surprised me, perhaps, most was that the Defendants passed judgment on Soul Quest Church and its members' sincere religious beliefs without ever asking a single question of us.

39.     Without some form of religious exemption – whether through the courts or through some proper, written regulatory process, Soul Quest Church and its members cannot safely practice our sincere religious beliefs without fear of arrest and prosecution.

40.     Each day that passes without any exemption, we are denied access to our religious community and the truths of our religious experience.

41.     The Defendants' arbitrary and capricious actions, taken with unfettered discretion, have denied me my rights to due process under the Fifth Amendment of the United States Constitution; under the Free Exercise and Free Speech Clauses of the First Amendment; and under the protections granted us by Congress under the Religious Freedom Restoration Act ("RFRA").

42.     The Defendants' actions have left Soul Quest Church and its members in a position where we are afraid to practice our sacred ayahuasca ritual for fear of arrest and prosecution; of course, this also has the effect of deterring Soul Quest Church's mission to proselytize and spread its religious beliefs to others, all while there is the underlying threat of arrest and prosecution by the Defendants.

**FURTHER AFFIANT SAYETH NAUGHT**

As provided in 28 U.S.C. § 1746, I declare (certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

Executed on this 12th day of July 2021.

_____
**CHRISTOPHER YOUNG**