UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| SOUL QUEST CHURCH OF MOTHER EARTH, INC., et al., | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Case No.: 6:20-cv-00701-WWB-DCI<br>) |
| MERRICK B. GARLAND, et al., | )<br>) |
| Defendants. | )<br>) |

**PLAINTIFFS' RESPONSE AND OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS THIRD AMENDED COMPLAINT**

COME NOW the Plaintiffs, by and through the undersigned counsel, and hereby respond to and oppose the Defendants' Motion to Dismiss Third Amended Complaint (ECF No. 61) (hereinafter, "Motion to Dismiss"), and further state as follows:

## I. INTRODUCTION

This is a gravely serious and urgent matter concerning the religious freedom rights of a small church, which Defendants have obliterated. This case remains at a crisis point precipitated entirely by the Government's action in unlawfully adjudicating the sincerity of the Plaintiffs' religious beliefs during the pendency of this litigation. For the reasons set forth herein, Defendants' Motion to Dismiss should be denied.[1]

The Plaintiffs engaged in good faith since case inception through April 2021, in what were deemed by Defendants as negotiations. Rather than negotiate, the Defendants

---
[1] Plaintiffs incorporate by reference its prior Opposition to Motion to Dismiss (ECF 55).

1

instead issued an *ultra vires* and unlawful order constituting what it refers to as a "final determination" of Plaintiffs' rights under the Religious Freedom Restoration Act. *See* Drug Enforcement Administration's Religious Freedom Restoration Act Order (April 16, 2021) (hereinafter, "DEA's RFRA Order"), attached hereto as Plaintiffs' Exhibit No. 1. The unique circumstances further underlie the Plaintiffs' assertions that an evidentiary hearing before the District Court is required.

Like the prior Motion to Dismiss (ECF No. 44), the Defendants' current motion seeks to deny Soul Quest the ability to avail itself of the fact-finding and record-developing capabilities of this District Court. Defendants take the position that a court of appeals would be in a better position to provide meaningful review of the types of claims raised in this litigation. The Defendants' argument for dismissal remains centered around the contention that the DEA's RFRA Order does not concern the "RFRA" and the DEA's unlawful adjudication of Soul Quest's religious sincerity, thereunder. Rather, Defendants insist that its RFRA Determination concerns the DEA's administration and application of the Controlled Substances Act, 21 U.S.C. § 801, *et seq*. The Defendants are wrong.

## II.     STANDARD OF REVIEW

The Plaintiffs incorporate, by reference, is assertions on the standard of review, as contained in its previous Response in Opposition to Motion to Dismiss (ECF No. 55), filed on July 12, 2021. *See Castro v. Secretary of Homeland Sec.*, 472 F.3d 1334, 1336 (11th Cir.2006); *Spain v. Brown & Williamson Tobacco Corp.*, 363 F.3d 1183, 1187 (11th Cir. 2004) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (quoting *Williamson v. Tucker,* 645 F.2d 404, 412 (5th Cir. 1981).

In the case-at-bar, the Defendants have mounted a facial attack upon the Plaintiffs' Third Amended Complaint (hereinafter, "Complaint," and filed at ECF No. 59).  *See Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)); *Williamson*, 645 F.2d at 413. Accordingly, the District Court is required to assume the allegations within the Complaint are true for purposes of the Defendants' Motion to Dismiss.  *See* Complaint ¶¶ 1-117 (Plaintiffs' factual allegations).  Upon additional review, the Plaintiffs assert that the Defendants are unable to surmount the high standard for motions to dismiss, thus requiring the District Court to deny the Defendants' Motion.

### III. LEGAL ARGUMENT

#### A. RFRA's Prescribed Remedy Mandates Court Jurisdiction

RFRA provides for a single, exclusive remedy – that a claimant (such as the Plaintiffs) uses that law in a claim or defence in a judicial proceeding.  Consequently, RFRA *does not* provide for an agency determination undercutting its strict scrutiny standard.  Yet, effectively, this is what the Defendants are attempting to perpetrate in the case-at-bar, by subverting strict scrutiny and replacing it with an "arbitrary and capricious," and much more favorable, standard to be addressed before a federal appellate court.

This is contrary to the Supreme Court's determination in *O Centro*, 546 U.S. at 439, when it stated that

> [w]e have no cause to pretend that the task assigned by Congress to the courts under RFRA is an easy one. Indeed, the very sort of difficulties highlighted by the Government here were cited by this Court in deciding that the approach later mandated by Congress under RFRA was not required as a matter of constitutional law under the Free Exercise Clause. See *Smith [v. Employment Div. Dept. of Human Resources]*, 494 U.S., at 885-890. But Congress has determined that courts should strike sensible balances, pursuant to a compelling interest test that requires the Government to

3

address the particular practice at issue.

Ironically, the DEA has – just this year, no less – embraced the argument now being asserted by the Plaintiffs. The DEA asserts, in a case presently before the Ninth Circuit, that a specific lack of statutory authority prevents its ability to take action under the Controlled Substances Act, 21 U.S.C. § 801, *et seq.* In *Advanced Integrative Medicine Science Institute vs. DEA*, Docket No. 21-70544 (9th Cir. 2021) (hereinafter, "AIMS case") the plaintiffs challenged an administrative ruling involving the compassionate use of psilocybin. In the DEA's refusal to grant an exemption under what are deemed "Right to Try" ("RTT") laws, the DEA asserted that "*absent an explicit statutory exemption to the Controlled Substances Act (CSA), DEA has no authority to waive any of the CSA's requirements to the RTT [Act].*" AIMS, *supra*, at ECF No. 18, pp. 16-17 (Petitioner's Opening Brief, quoting DEA correspondence); ECF No. 19, pp. 8-9 (correspondence of DEA Deputy Asst. Administrator, Diversion Control Division Thomas Prevoznik). (emphasis added).[2] At a minimum, DEA's assertion in the AIMS case is consistent with its approach taken in earlier case challenges. *See Olsen v. DEA*, 878 F.2d 1458, 1460-61 (D.C. Cir. 1989) ("[u]ltimately, the courts cannot escape the obligation to address his plea that the exemption he seeks is mandated by the first amendment's religion clauses").

DEA's incongruous approach between what the Defendants assert in the case-at-bar, versus what it asserts in the AIMS case, demonstrates the Defendants' propensity to

---

[2] DEA makes this assertion under the CSA, where its authority seems rather clear – as opposed to the void of any such authority under RFRA to make such determinations. Of course, if Defendants are – as seems apparent from their Motion to Dismiss – resting their argument entirely on the CSA (containing no language regarding its applicability to religious uses of controlled substances, and which Plaintiffs assert is otherwise inapplicable in terms of the matters currently before this Court), it is notable that DEA has taken a contrary position on its empowerment to act in the absence of an enabling statute.

4

argue whatever it requires to justify its end game. Whereas Defendants assert, herein, that the DEA strongly asserts its authority to rule on a subject where there is zero Congressional grant of authority (specifically, as pertains to religious uses of controlled substances), in the AIMS case, the DEA strongly rejected any such authority to rule upon a subject lacking a specific grant of authority by Congress – in any statute or regulation.

Relatedly, none of Defendants' filings herein reveal that its authority over granting registrations is, in fact, limited to "legitimate medical, scientific, research or industrial uses." 21 U.S.C. § 823. In other words, as argued throughout Plaintiffs' filings, DEA has never been provided with any official authority over religious uses. *See* Complaint ¶¶ 131-153 (Claims 2 and 3). Exclusion of such information from Defendants' filings is telling; reflects lack of candor and blatant subterfuge; and resembles its tack in earlier religious exemption cases. *See, e.g.*, *Church of the Holy Light,* 615 F.Supp.2d at 1217-18 (noting Government's propensity to inject random, irrelevant facts without proper support or foundation); *O Centro*, at 435-36 (noting Government's habit of raising concerns assuming 'slippery slope' argument, instead of focus "on the statutory program at issue").

Notwithstanding Defendants' strategic maneuvering, the Plaintiffs would assert that it is unquestionable that the DEA's decision herein is reflective of an *ultra vires* action premised upon an *ad hoc* agency licensing mechanism that directly violates RFRA, the Administrative Procedures Act and is unconstitutional. *See* Complaint ¶¶ 118-153 (Claims 1 - 3). Further, the Defendants defied the court's authority when it indicated its intent to negotiate case resolution while – unbeknownst to the Plaintiffs and throughout the period of case abeyance – conducting a surreptitious investigation designed entirely

5

to make provide a façade of legitimacy to its unlawful actions. The Defendants' assertion of § 877 is simply another method intended to further its subterfuge.

### B. DEA Illegally Adjudicated Religious Sincerity -- Defendants' Assertions of Authority Under the CSA are Diversionary.

In its Motion to Dismiss, the Defendants argue that its authority under the CSA is dispositive, and cites to several cases in support. Motion to Dismiss, at pp. 11-18. The problem with this is that – once again – the CSA is not the law under which this litigation is premised and upon which the challenges asserted by the Plaintiffs are premised. *See* Complaint ¶¶ 118-153 (Claims 1 - 3). Rather, in the absence of any specific authority under the CSA as pertains to religious exemptions and the ability of the Defendants to regulate such subject matter, the issue is not whether the CSA grants exclusive jurisdiction over agency decision making under the CSA.

No. The Defendants' assertion of the CSA as being its basis for being able to issue any decision which would implicate § 877, exists only in a void – one which would require the District Court to ignore the Defendants' lack of explicit authority to make determinations under RFRA. This mischaracterization – this subterfuge – is constant in the first two-thirds of the Defendants' arguments in its Motion to Dismiss, where RFRA is not even mentioned. Motion to Dismiss, at pp. 11-16. All case law cited in those pages apply exclusively to the Defendants' decision-making authority under the CSA, not RFRA. *See, e.g., John Doe, Inc. v. DEA*, 484 F.3d 561, 568 (D.C. Cir. 2007) ("21 USC Sec. 877 vests exclusive jurisdiction in the courts of appeals over "[a]ll final determinations, findings, and conclusions" of the DEA applying the CSA.") (Emphasis added); *Sharma v. DEA*, 511 F. App'x, 898, 903 (11th Cir. 2013) (referring to the CSA as a closed regulatory system).

Later, in order to mount its evasion of RFRA, the Defendants simply dismiss its applicability. Motion to Dismiss, at pp. 18-19. However, in order for this argument to stick, the Defendants would need to (a) ignore their own internal guidance regarding the handling of RFRA claims, as reflected in the Sessions Memorandum, *supra*; (b) ignore the Supreme Court's jurisprudence in *O Centro*;[3] (c) ignore the APA and the jurisprudence surrounding its applicability whenever there is an absence of any Congressional authorization to create an agency statutory review scheme for RFRA matters (*see Jarkesy*, 803 F.3d 9, 15 (D.C. Cir. 2015) (speaking of Congress' *intent* being required for a procedure to be exclusive means of obtaining a specific type of judicial review); and (d) ignore its own RFRA Determination from April 16, 2021, where it explicitly states that its decision was rendered under RFRA, the Supreme Court's decision in *O Centro*, and per the DEA's own RFRA Guidance. It also requires for the District Court, herein, to believe that – despite the clearly contrary language in RFRA – that the Defendants alone are,

---

[3] As Chief Justice Roberts, writing for the Court in *O Centro* remarked, at 546 U.S. at 436-37:

> that the very reason Congress enacted RFRA was to respond to a decision denying a claimed right to sacramental use of a controlled substance. See 42 U.S.C. § 2000bb(a)(4). And in fact, the Government has not offered evidence demonstrating that granting the UDV an exemption would cause the kind of administrative harm recognized as a compelling interest in *Lee, Hernandez,* and *Braunfeld.*

The *O Centro* Court later, at 546 U.S. at 439, further rejected the Government's repeated invocations to Congressional findings and purposes underlying the CSA, and asserted that

> Congress had a reason for enacting RFRA, too. Congress recognized that "laws `neutral' toward religion may burden religious exercise as surely as laws intended to interfere with religious exercise," and legislated "the compelling interest test" as the means for the courts to "strik[e] sensible balances between religious liberty and competing prior governmental interests." 42 U.S.C. §§ 2000bb(a)(2), (5).

7

somehow, empowered to adjudicate someone's religious sincerity. And, finally, the Defendants ignore what many courts deem the 'super-charged' nature of RFRA, over and above other statutes. *See Bostock v. Clayton County*, 140 S. Ct. 1731, 1753-54 (describing RFRA as a "super statute displacing the normal operation of other federal laws"). Certainly, in the case-at-bar, RFRA's plain language and broad scope surpasses the circuitous efforts by Defendants to attach a hidden meaning to its CSA authority.

Simply stated, none of the laws on which the DEA's RFRA Order was based empower Defendants to adjudicate Plaintiffs' religious sincerity or prohibit Plaintiffs free exercise of religion with ayahuasca. *See Complaint* ¶ 138 (*citing* 5 U.S.C. § 558(b)) ("[a] sanction may not be imposed or a substantive rule or order issued except within jurisdiction delegated to the agency and as authorized by law.").

The one case the Defendants cite in direct support of this contention is simply irrelevant. In *Bold All. v. FERC,* 2018 WL 4681004 (D.D.C. 2018), the court addressed action under the *National Gas Act*, not under RFRA. In *Bold All.*, there was a clear, statutorily-established, public process. The *Bold All.* plaintiff failed to avail themselves of the procedures established by the National Gas Act. In contrast, in the case-at-bar, the Defendants possess no statutory authority to adjudicate RFRA matters … period.

C. **Rebuttal to Defendants' Jurisdictional Challenge**

The Defendants erroneously maintain that the District Court lacks jurisdiction to hear the Plaintiffs' case. The Defendants attempt to support this erroneous assertion through its citation to 21 U.S.C. § 877 (hereinafter, "§ 877"). Through the issuance of the DEA's RFRA Order, the Defendants purport that jurisdiction for this case as a whole now properly lies with the Eleventh Circuit. See generally Defendant's Motion to Dismiss. This

8

is an erroneous statement of law.

There are two fundamental failures with Defendants' § 877 assertions:

(a) Although, perhaps, under the guise being suggested by the Defendants', this might be deemed a 'final determination' under the Controlled Substances Act, there is no legislative-endorsed process under which the Defendants are enabled to issue any     determination – final or otherwise – pursuant to RFRA – the latter being the act under which the DEA has issued its April 16, determination letter; and,

(b) Notwithstanding, the fatal issue in No. 1, above, the Defendants findings are not supported by "substantial evidence."

The Defendants have no lawful basis to assert § 877's application in the absence of any enabling authority to render any determination under the RFRA.  Defendants are taking the proverbial round peg, trying to jackhammer it into a square and unconstitutional hole.

1. <u>The Defendants' Lack Authority to Issue a Final Determination Under RFRA</u>

Per the Supreme Court in *Bennett v. Spears*, 520 U.S. 154, 178 (1997), established the two requirements for an agency action to be considered "final," *to wit:* (1). the action must mark consummation of an agency's decision making process; and, (2) the action must be one by which rights or obligations have been determined, or from which legal consequences will flow.

As applied to the case-at-bar, the first *Bennett* requirement, where the decision must mark the "consummation of the agency's decision-making process," the DEA has never brought the issue of a religious exemption to a culmination.  There are two factual bases reflecting such a reality.

First, since August 2017, Plaintiff Soul Quest Church's application for religious exemption under RFRA – premised entirely on the DEA's 1½ page "*Guidance Regarding*

9

*Petitions for Religious Exemption from the Controlled Substances Act Pursuant to the Religious Freedom Restoration Act"* (hereinafter, "DEA RFRA Guidance") (attached hereto as Plaintiffs' Exhibit No. 2) – was never acted upon and, Plaintiffs would assert, has not been acted upon through the present date.

Rather, the Defendants have – since case inception in May 2020 – premised abatement of this action upon the negotiation with Plaintiffs of the grounds upon which a religious exemption would be issued in resolution to the litigation. *See, e.g.,* Joint Motion to Stay All Proceedings for 120 Days (ECF No. 23), at 1. This did not arise; this is due entirely to the failure of Defendants to negotiate the terms upon which Soul Quest Church would receive its exemption in good faith. Instead, surreptitiously and unconstitutionally, Defendants contrived to create a favorable outcome, one in which it would declare "final agency action," under the pretense that it would negotiate in good-faith with the Plaintiffs. Historic communications between the Parties reflect continued requests by Plaintiffs to discuss and negotiate such terms, while Defendants continued to 'kick the can,' until it issued its April 16, "determination." *See, e.g.,* Emails between Counsel for Plaintiffs and Counsel for Defendants (October 8, 13, 2021) (reflecting the Defendants' failure to negotiate terms for issuance of any exemption, followed by its attempt to impose standards upon the Plaintiffs) (attached hereto as Plaintiffs' Exhibit No. 3). Some form of *ad hoc, ultra vires* "action" under the purview of pending litigation simply does not satisfy such a requirement.

Second, Defendants cannot claim the laurels of a "consummation of agency decision making" when any such process needs to be clearly reflected under law. So, although Defendants assert that its determination dated April 16, 2021, was a "final

10

agency action," the problem persists that any such "final action" lacks any official authority under the RFRA; Defendants have never been empowered with authority to make such determinations under RFRA; the only authority Defendants possess, as they argue, is under Congressional authority granted within the Controlled Substances Act.

This is insufficient. It is also unlawful. The April 16, 2021, correspondence from DEA to Plaintiff Soul Quest Church, rejecting any religious exemption is declared as having been made under authority of the RFRA. However, there is no enabling statute providing the Defendants with such formal authority. The Defendants' actions overlap directly with Complaint, at Count II, asserting the Defendants' transgressions against the Administrative Procedures Act, 5 U.S.C. § 500, *et seq.* ("APA").

*The Defendants' Failed Attack on the Count II of the Complaint*

The APA cause of action explicitly drives the matter into the ambit of where the District Court should exercise jurisdiction over DEA decisions purporting to implement the CSA. There are several federal cases where the district courts have continued to exercise jurisdiction, concluding there is a sphere of DEA activity that falls within the APA's "final agency action," but outside § 877's "final determinations, findings, and conclusions." *See, e.g.*, *DK Labs Inc. v. Reno*, 134 F.Supp.2d 24 (D.D.C.2001); *Oregon v. Ashcroft*, 192 F.Supp.2d 1077 (D.Or.2002), *vacated for lack of jurisdiction*, 368 F.3d 1118, 1121 n.1 (9th Cir.2004), *aff'd*, 546 U.S. 243 (2006). *McNary, supra* (supporting the conclusion that the denial of an exemption would fall within that interstitial space).

Fifteen (15) years after the decision in *O Centro, supra*, decision; a significant District Court decision in *Church of the Holy Light of the Queen, supra*; and all the resources that a powerful federal department possesses, it has been unable to

11

development anything more than the DEA RFRA Guidance. There are no specifications, no regulations, no proposed regulations (requiring, among other aspects, a public comment period), nothing. In light of this stark reality, the Defendants plainly fail in their attempt to have the District Court dismiss the APA claim. (ECF 61, at 20-23).

The DEA's denial of any exemption fails even the most basic statutory analysis. Pursuant to the APA, at § 553(b)(2), when a government agency acts, it must be able to cite to an enabling statute. This enabling statute is a demonstration that the agency has been provided Congressional authority to act in a particular way, to do a particular thing, to regulate and pass rules regarding a particular aspect of life.

The Department of Justice has described the foundational purpose of the APA – something that it obviously ignores in the case-at-bar. Per the *Attorney General's Manual on the Administrative Procedure Act*, drafted after the 1946 enactment of the APA, the basic purposes of the APA are the following:

> (1) to require agencies to keep the public informed of their organization, procedures and rules; (2) to provide for public participation in the rulemaking process, for instance through public commenting; (3) to establish uniform standards for the conduct of formal rulemaking and adjudication; and (4) to define the scope of judicial review.

U.S. Department of Justice (1947). "Attorney General's Manual on the Administrative Procedure Act."[4]  No such process has <u>ever</u> occurred as pertains to the Defendants' ability to issue determinations under RFRA.

*Nowhere* in the DEA's RFRA Order – or in any pleading filed by the Defendants, nor in the DEA RFRA Guidance – does DEA identify the source of its Congressional authority to rule on the issues of sufficiency of religiosity and sincerity, much less to

---

[4] Located at https://fall.fsulawrc.com/admin/1947cover.html.

impose other requirements upon a religious institution seeking religious exemption.

Ironically, the only RFRA guidance in existence pertains solely to the deference that both Defendants are supposed to accord religious institutions. Internal department guidelines instituted by Attorney General Sessions, conclusively establish that:

> [The Religious Freedom Restoration Act] applies to all sincerely held religious beliefs, whether or not central to, or mandated by, a particular religious organization or tradition. Religious adherents will often be required to draw lines in the application of their religious beliefs, and government is *not competent* to assess the reasonableness of such lines drawn, *nor would it be appropriate for government to do so.*

*Federal Law Protections for Religious Liberty*, U.S. Attorney General Jeff Sessions, October 6, 2017, at 4. (Emphasis added); *see* Executive Order No. 13798, May 4, 2017, 82 F.R. 21675, requiring the Attorney General to "issue guidance interpreting religious liberty protections in Federal law." Defendants run completely afoul of their own guidelines establishing the handling of RFRA matters. The Defendants' filings thus far, do nothing but arbitrarily second-guess the sincere religious beliefs of the Plaintiffs and the other members of Soul Quest Church, despite the written acknowledgment in the above Memorandum that they are incompetent to do so.

The Defendants' posturing regarding the APA claim rests almost entirely upon its misstatement of one case: *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania,* 140 S. Ct. 2367 (2020). *Little Sisters* is about administrative authority to make and enact rules – something that has <u>never</u> occurred in the case-at-bar. The Defendants, in a 'sleight of hand,' not only miscast this decision, but include incomplete quotations, in a rather transparent attempt to muddle the case's meaning and scope. Indeed, the most significant quote from the case appears to undermine the ability of the

13

Defendants to make determinations under RFRA. *Id.* at 2380 (mandating the acceptance of sincerely-held beliefs of religious entities); *see also Our Lady of Guadalupe School v. Morrissey-Berru*, 140 S. Ct. 2049, 2060 (2020) ("[s]tate interference in that sphere would obviously violate the free exercise of religion, and any attempt by government to dictate or even to influence such matters would constitute one of the central attributes of an establishment of religion"). Likewise, *Little Sisters* discusses how federal agencies come within the purview of the APA through an invocation of the 'good-cause exception' in order to "dispense with notice and comment and promulgate an [interim final rule] that carries the force of law. *Little Sisters,* 140 S. Ct. at 2374 (citing 5 U.S.C. § 553 (b)(3)(B)).

  2. <u>Case Law Makes DEA's RFRA Guidance Non-Binding & Unenforceable</u>

As asserted above, the DEA RFRA Guidance is non-binding and unenforceable, lacking any force and effect of law, whether independently or by reference. Court jurisprudence further supports this reality.

In *Western Radio Servs. Co. v. Espy*, 79 F.3d 896, 901 (9th Cir. 1995), *cert. denied*, 519 U.S. 822 (1996) the Ninth Circuit established a two-part test for determining whether administration guidance documents have independent force and effect of law. Specifically, the administration pronouncement must (1) prescribe substantive rules— *not* interpretive rules, general states of policy or rules of administration organization, procedure or practice; <u>and</u> (2) conform to certain procedural requirements. To satisfy the first requirement the rule must be legislative in nature, affecting individual rights and obligations; to satisfy the second, it must be promulgated pursuant to a specific grant of authority and in conformance with procedural requirements imposed by Congress. *Id.* at 901 (*quoting, U.S. v. Fifty-Three Eclectus Parrots*, 685 F.2d 1131, 1136 (9th Cir. 1982).

The *Western Radio Court* ruled that the government's purported regulations – contained in a manual and handbook

> are not promulgated in accordance with the procedural requirements of the Administrative Procedure Act. Neither is published in the Federal Register or the Code of Federal Regulations. *See Parker v. United States*, 448 F.2d 793, 797 (10th Cir.1971), *cert. denied*, 405 U.S. 989, 92 S.Ct. 1252, 1255, 31 L.Ed.2d 455 (1972). They are not subjected to notice and comment rulemaking; they are not regulations. *Hi-Ridge Lumber Co. v. United States*, 443 F.2d 452, 455 (9th Cir.1971) (Manual "does not rise to the status of a regulation").
>
> Nor are the Manual and Handbook promulgated pursuant to an independent congressional authority. The National Forest Management Act authorizes the Secretary to promulgate regulations, but the Manual and the Handbook are not regulations from the Secretary. 36 C.F.R. § 200.4(d)(1) (1995) (Chief of Forest Service promulgates rules in Manual and Handbook). The Manual and Handbook provisions are contemplated in a Service regulation, not in a congressional statute.

*Id.* at 900-01. Accordingly, the *Western Radio* court concluded that the Government's rules did "not have the independent force and effect of law." *Id.* at 901. This standard has been subsequently adopted by other courts. *See, e.g., McGrail & Rowley, Inc. v. Babbitt*, 986 F.Supp. 1386, 1393-94 (S.D. Fla. 1997) (holding agency failed to conform with APA procedural requirements and, consequently, such principles "lacks the force of law and leaves refuge managers considerable discretion in implement guidelines ….").

In the case-at-bar, while the DEA RFRA Guidance might prescribe substantive rules, it was *not* promulgated in accordance with the procedural requirements of the APA, and therefore cannot rise to the status of a binding administration regulation or law. It is completely unenforceable, as are actions taken under the pretense of its execution.

First, the DEA RFRA Guidance admittedly prescribes substantive rules for seeking an exemption from the CSA and mandates that religious adherents first obtain a "certificate of registration" from DEA prior to engaging in any activity "prohibited under the

15

Controlled Substances Act or its regulations." *See* Plaintiffs' Exhibit No. 2, at ¶¶ 2, 6, 7. The DEA's petitioning process requires submission of "both a written statement and supporting documents" demonstrating how the application of the CSA to the religious adherent's activity would "(1) be a substantial burden on (2) his/her sincere (3) religious exercise." *See Id.*, at ¶ 2. Further, the DEA RFRA Guidance argues that religious adherents are "bound by all applicable laws and Controlled Substances Act regulations" governing registration of persons undertaking medical, scientific, research, and industrial activities related to Schedule I substances. *See id.*, at ¶ 6.

However, *none* of the administration petitioning and registration requirements are mandated or even suggested by an act of Congress or administration regulation. Neither the CSA nor the RFRA establish an administrative petitioning process for religious adherents seeking a religious exemption from the CSA for activities involving controlled substances. Instead, RFRA specifically authorizes persons whose religious exercise has been burdened by the CSA to "assert that violation as claim or defense *in a judicial proceeding* and obtain appropriate relief against the government."

Further, while registration is required under the CSA, 21 U.S.C. § 823(a)(1), (b)(1), for persons who manufacture, distribute, dispense, and import or export-controlled substances, registration is *only* authorized for "legitimate medical, scientific, research and industrial purposes," which DEA regulations classify as "business activity." *See, e.g.*,21 C.F.R. §1301.13(e)(1). There is *no* allowance for a "certificate of registration" from the DEA for constitutionally protected religious exercise, which is not contemplated as a registered activity under the CSA and administration regulations. In other words, the DEA RFRA Guidance establishes a new, substantive requirement for DEA registration for

religious exercise where none currently exists under Federal law.

Moreover, DEA mandates that all religious exercise involving controlled substances cease until a certificate of registration is granted by it. This prior restraint on free exercise of religion involving controlled substances is an additional, substantive legal requirement mandated by DEA. In the case of Plaintiffs, that means (with an original August 2017, religious exemption request filing) – a delay of nearly four (4) years.

Second, the DEA RFRA Guidance was not promulgated in accordance with the procedural requirements of the APA. The guidance was not published in the Federal Register, is not found in the Code of Federal Regulations, and is not contemplated in a congressional statute. *Western Radio Servs. Co.,* 79 F.3d at 901. Importantly, despite the substantive requirements of the guidance requiring petitioning and registration, the DEA RFRA Guidance was not subjected to public notice and comment rulemaking procedures of the APA; a prerequisite for establishing enforceable administration regulations. *Id.* As such, the DEA RFRA Guidance fails the second prong of the Ninth Circuit's two-part test, and does not have the independent force and effect of law.

Defendants attempt to cast doubt into this well-established precedent. They do so by attempting to recast the non-binding, unenforceable DEA RFRA Guidance as the equivalent of official regulations; they attempt to lay blame at the feet of Congress for not enabling non-existent, unproposed regulations; they cite inapplicable case law;[5] and

---

[5] *See* Motion to Dismiss, at 9-16, where Defendants' citations are inapplicable, herein, involving a "Guidance" that attempts to improperly legislate and execute unannounced, unaccepted standards involving core religious rights protected under the Free Exercise Clause and RFRA. The most significant of these cited cases, *Thunder Basis Coal Co. v. Reich*, 510 U.S. 200, 203 (1994), a case involving federal mine safety and involving a delegation of executive authority under *promulgated rules* to the Department of Labor. A better citation supportive of the District Court's continued jurisdiction under RFRA is found at *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477,

Defendants attempt to label a 1½ page "guidance" as dispositive and sufficient to satisfy the requirements under RFRA, APA and the First Amendment. They are wrong.

3. Section 877 is Not Exclusive in its Scope

Further, even if this Court would find that § 877 might be applicable, it is not a statute of exclusivity. In other words, it does not mandate that the District Court must decline jurisdiction over matters of constitutional and statutory import.

In *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991), the Court examined an Immigration & Nationality Act provision that, akin to § 877, provided only a single level of review in the courts of appeals. In ruling the district court retained jurisdiction to hear constitutional and statutory challenges to INS procedures, it explained

> it is unlikely that a court of appeals would be in a position to provide meaningful review of the types of claims raised in this litigation. * * * Not only would a court of appeals * * * most likely not have an adequate record * * * but it also would lack the factfinding and record-developing capabilities of a federal district court. * * * [S]tatutes that provide for only a single level of judicial review in the court of appeals "are traditionally viewed as warranted only in circumstances where district court factfinding would unnecessarily duplicate an adequate administrate record--circumstances that are not present * * * where district court factfinding is essential given the inadequate administrative record."

*Id.* at 497 (citation omitted).

*McNary* is endgame to the Defendants' efforts to undermine the District Court's jurisdiction in the case-at-bar. Under RFRA, Congress provided for one exclusive method for adjudicating such claims: within the courts. In the case-at-bar, Plaintiffs squarely assert violations made by Defendants under RFRA and directly implicating protected religious freedoms under the First Amendment. Plaintiffs properly seek court relief in the

---

130 S. Ct. 3138, 3150-51 (2010) (rejecting the Government's effort to deprive the District Court of jurisdiction absent the legislation expressly stating such a limit).

District Court in the absence of any actual administrative regulatory scheme, and in the wholesale absence of any 'administrative record.' *See Catholic Diocese of Beaumont v. Sebelius*, 10 F.Supp.3d 725, 729, 734-35 (E.D. Tex. 2014) (citing to *McNary* in a case with RFRA implications and stating that "[s]ince Plaintiffs are alleging interference with important constitutional rights, the court will consider the evidence presented by Plaintiffs"; discussion of significance of substantial burdens imposed by Government).

Accordingly, Plaintiffs submit that, even if this Court were to reject the overwhelming evidence of the non-existence of any lawful authority being exercised in the case-at-bar, and somehow adopt – in part – the Defendants' arguments regarding § 877, that statute does not limit the ability of the District Court to maintain jurisdiction.

4.   <u>Defendants' Determination is Not Supported by Substantial Evidence</u>

Even though Defendants' 'determination' fails the first element of the test articulated under § 877, as discussed in Section III(A), *supra*, it also fails the second, required element of analysis. In a case involving the exercise of fundamental, sincere religious beliefs, stakes are certainly high. The Government should be, and is, required to muster substantial evidence in order to establish its burden in limiting protected rights.

Defendants failed to properly and fully investigate such issues.[6] The Defendants did not even bother to investigate and render findings of fact on the issues of *substantial burden* and *religious exercise*, as required by RFRA. (ECF No. 45-1, "Moreno Declaration"). Instead, Defendants rely entirely on the remaining factor of sincerity of religious belief, by 'cherry-picking' statements made by Soul Quest Church leadership as some form of evidence of trickery or fraud. In so doing, Defendants unconstitutionally

---

[6] Specific examples of these failures by Defendants to investigate are included in the Plaintiffs' previous Response in Opposition to Motion to Dismiss (ECF No. 55), at 22-25.

19

relied upon their own private *ad hoc* beliefs as to what the Plaintiffs' religion "should be."

This further illustrates the fundamental problem with having law enforcement agencies controlling the ability to define what is and what is not a sincere religious belief.[7] Instead of performing a proper, thorough investigation, and one respecting Plaintiffs' constitutional rights, Defendants elected to twist and misconstrue evidence to support their pre-determined and conclusions. We do not do things that way in the United States.

## IV. CONCLUSION

WHEREFORE, Plaintiffs respectfully request this Court reject Defendants' attacks on Plaintiffs' Third Amended Complaint and, accordingly, deny its Motion to Dismiss.

Respectfully submitted this 15th day of September 2021.

| By: */s/Derek B. Brett* | */s/A. Brian Phillips* |
|---|---|
| **DEREK B. BRETT, ESQ.** | **A. BRIAN PHILLIPS, ESQ.** |
| Fla. Bar No. 0090750 | Fla. Bar No. 0067113 |
| 109 Ilsley Avenue, Suite 9 | 912 Highland Avenue |
| Halifax, Nova Scotia B3B 1S8 | Orlando, Florida 32803 |
| Telephone: (902) 468-3066 | Telephone: (407) 872-0777 |
| Facsimile: (902) 468-4803 | Telecopier: (407) 872-0704 |
| Email: dbb@burnsidelaw.net | brian.phillips@phillips-law-firm.com |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 15th day of September 2021, the undersigned electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of the same via email to the designated counsel for the Defendants.

By: */s/Derek B. Brett*
**DEREK B. BRETT, ESQ.**

---

[7] *See, e.g., Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2774 (2014) ("Congress was confident of the ability of the Federal courts to weed out insincere claims" of religious belief). DEA -- tasked with enforcing drug laws – has no ability to make such decisions.