UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| SOUL QUEST CHURCH OF MOTHER EARTH, INC., and CHRISTOPHER YOUNG, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) No. 6:20-cv-701-WBB-DCI<br>)<br>) |
| MERRICK B. GARLAND, Attorney General of the United States of America, and ANNE M. MILGRAM, Administrator of the U.S. Drug Enforcement Administration, | )<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................... 1

ARGUMENT .......................................................................................................... 2

I.     THIS COURT LACKS JURISDICTION OVER PLAINTIFFS' CLAIMS. ................ 2

II.    THE APA CLAIM SHOULD BE DISMISSED UNDER 12(b)(6). ............................ 5

III.   THE FIRST AMENDMENT CLAIM SHOULD BE DISMISSED UNDER 12(b)(6). ................................................................................................................ 7

CONCLUSION ....................................................................................................... 7

# TABLE OF AUTHORITIES

**Cases**

*Adorers of the Blood of Christ v. FERC*,
   897 F.3d 187 (3d Cir. 2018) .................................................................................. 4

*Bostock v. Clayton Cty., Georgia*,
   140 S. Ct. 1731 (2020) ......................................................................................... 6

*Burwell v. Hobby Lobby Stores, Inc.*,
   573 U.S. 682 (2014) .......................................................................................... 6, 7

*Doe v. FAA*,
   432 F.3d 1259 (11th Cir. 2005) ............................................................................ 4

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
   546 U.S. 418 (2006) ............................................................................................. 6

*Green v. Brantley*,
   981 F.2d 514 (11th Cir. 1993) ............................................................................. 4

*John Doe, Inc. v. DEA*,
   484 F.3d 561 (D.C. Cir. 2007) ..................................................................... 2, 3, 4

*Jones v. Bank of Am., N.A.*,
   564 F. App'x 432 (11th Cir. 2014) ....................................................................... 7

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
   140 S. Ct. 2367 (2020) ..................................................................................... 5, 6

*McNary v. Haitian Refugee Ctr., Inc.*,
   498 U.S. 479 (1991) ......................................................................................... 4, 5

*Oregon v. Ashcroft*,
   368 F.3d 1118 (9th Cir. 2004) ............................................................................. 2

*PDK Lab'ys Inc. v. DEA*,
   362 F.3d 786 (D.C. Cir. 2004) ............................................................................. 2

*PDK Lab'ys Inc. v. Reno*,
   134 F. Supp. 2d 24 (D.D.C. 2001) ....................................................................... 2

*Sharma v. DEA*,
  511 F. App'x 898 (11th Cir. 2013) ................................................................. 2, 3, 4

**Statutes**

21 U.S.C. § 871 ............................................................................................................ 3

21 U.S.C. § 877 ....................................................................................................... 1, 2

42 U.S.C. § 2000bb-3 .................................................................................................. 6

**INTRODUCTION**

This case should be dismissed for lack of jurisdiction. Plaintiffs ask the Court to void DEA's Final Determination denying Plaintiffs' petition for an exemption to the CSA. But this challenge must be brought in the court of appeals under 21 U.S.C. § 877. Plaintiffs point to no decision in which a district court properly exercised jurisdiction over a challenge to DEA's denial of a registration or a request for an exemption from the CSA's registration requirements. There is no basis for breaking new ground here.

Plaintiffs nonetheless argue that § 877 does not apply because they allege DEA's denial of their petition did not involve DEA's authority under the CSA to determine eligibility to handle controlled substances. The record demonstrates otherwise. In denying Plaintiffs' request, DEA determined that continued application of CSA's prohibitions on the handling of DMT, a Schedule I controlled substance, is necessary to prevent diversion and protect public health. That determination patently "concerns the DEA's administration and application" of the CSA. *See* ECF No. 62 at 2. Challenges to such determinations must be brought in the court of appeals under § 877. That is so even when another statute, such as RFRA, plays a part in DEA's decision or undergirds a plaintiff's challenge. For that reason alone, Plaintiffs' claims should be dismissed for lack of jurisdiction.

Even if the Court had jurisdiction, Plaintiffs' APA and constitutional claims should be dismissed under Rule 12(b)(6). The APA claim alleges that DEA lacks the power to apply RFRA, but Plaintiffs sought an exemption from the CSA on the basis that RFRA obliges DEA to allow one. To decide the petition, DEA was required to—and did—apply the RFRA framework in full. Finally, Plaintiffs did not respond to arguments to dismiss the First Amendment claim; that claim should be dismissed for the reasons previously stated.

1

## ARGUMENT

I. **THIS COURT LACKS JURISDICTION OVER PLAINTIFFS' CLAIMS.**

Section 877 requires that challenges to final determinations of the DEA in administering the CSA be brought in the court of appeals. 21 U.S.C. § 877. This exclusive-review provision covers final decisions regarding the importation, manufacture, and distribution of controlled substances. *Id.* §§ 877, 971. Both constitutional and statutory challenges to such decisions must be brought in the court of appeals. *See Sharma v. DEA*, 511 F. App'x 898, 903 (11th Cir. 2013) (constitutional claims); *John Doe, Inc. v. DEA*, 484 F.3d 561, 568 (D.C. Cir. 2007) (APA and Due Process claims).

Plaintiffs cite no case in which a district court properly exercised jurisdiction over a final decision by DEA to grant, deny, or revoke a registration or an exemption to the CSA's registration requirements. Plaintiffs instead assert that there "are several federal cases where the district courts have continued to exercise jurisdiction" over "DEA decisions purporting to implement the CSA," ECF No. 62 at 11, but the cases Plaintiffs cite do not support that proposition. Plaintiffs cite the district court decision in *Oregon v. Ashcroft*, which, as Plaintiffs themselves concede, was "vacated for lack of jurisdiction." *Id.*; *Oregon v. Ashcroft*, 368 F.3d 1118, 1120 & n.1 (9th Cir. 2004), *aff'd sub nom. Gonzales v. Oregon*, 546 U.S. 243 (2006). The only other CSA-related decision Plaintiffs cite—*PDK Laboratories Inc. v. Reno*—involved, initially, an interpretive letter informing a manufacturer that no suspension order had yet been issued and that the manufacturer could not bring suit. 134 F. Supp. 2d 24, 29 (D.D.C. 2001). But once that suspension order was issued, and the manufacturer filed suit, that suit was properly brought directly in the court of appeals. *PDK Lab'ys Inc. v. DEA*, 362 F.3d 786, 793 (D.C. Cir. 2004); *see*

2

*also John Doe*, 484 F.3d at 569 n.5 (expressing doubt, given § 877, as to whether district court in *PDK* had properly exercised jurisdiction even during earlier stages of litigation).

Plaintiffs resist application of § 877 here, arguing that DEA's decision involved RFRA alone and that the CSA played no part. But Plaintiffs themselves sought an exemption *from the CSA*. And they did so by petitioning DEA, the agency charged with administering the CSA. *See* 21 U.S.C. § 871(a) (delegating to DEA the Attorney General's authority to administer the CSA); *see also* 21 U.S.C. §§ 811, 822-824, 831 & 841 (describing DEA's broad regulatory and enforcement authority over controlled substances). And when DEA makes a final decision about whether an entity is eligible for a registration or an exemption, any challenge to that decision must be brought in the court of appeals. *Sharma*, 511 F. App'x at 903; *see also John Doe*, 484 F.3d at 570.

The decision at issue here rested in significant part on DEA's authority to administer the CSA. After determining that Plaintiffs had not satisfied their burden of demonstrating that their retreats constitute sincere religious practice, DEA explained that the petition would be denied on the independent ground that "the CSA's prohibitions on Soul Quest's importation . . . , use . . . [,] manufacture . . . , and distribution of" a Schedule I controlled substance furthered the "need to protect public health and safety from potentially dangerous substances, and the need to prevent diversion of controlled substances into the illicit market." ECF No. 62-1 at 5. DEA then detailed the adverse effects of DMT use that DEA's Diversion Control Division has identified, the risks of diversion posed by Soul Quest's importation practices, and the ongoing unwillingness of Soul Quest to commit to lawfully import DMT in the future. *Id.* at 5-8. DEA further identified concerns about Soul Quest's implementation of its participant screening and monitoring

3

procedures and stated it was unable to satisfy itself that Soul Quest "would in practice" adhere to sufficient protocols for securing DMT and ayahuasca at Soul Quest's facilities. *Id.* at 7. After an extensive investigation that involved numerous interviews and written submissions, DEA denied Plaintiffs' petition to prevent diversion and protect public health. That decision was made pursuant to DEA's authority under the CSA—and based on the agency's expertise in diversion prevention—and is governed by § 877.

Plaintiffs respond that, while DEA's decision "might be deemed a 'final determination' under the [CSA]," § 877 still would not require a district court to "decline jurisdiction over matters of constitutional and statutory import." ECF No. 62 at 18.

But § 877 channels all of Plaintiffs' claims to a court of appeals, and their arguments to the contrary are unavailing for four reasons. First, constitutional and statutory claims are regularly channeled to courts of appeals under § 877. *See, e.g.*, *Sharma*, 511 F. App'x at 903; *John Doe*, 484 F.3d at 568. Second, all claims that are "intertwined" with other claims expressly covered by an exclusive-review provision are subject to that provision, to prevent artful pleading and avoid bifurcated review of related issues. *Doe v. FAA*, 432 F.3d 1259, 1263 (11th Cir. 2005); *Green v. Brantley*, 981 F.2d 514, 521 (11th Cir. 1993). Third, exclusive-review provisions apply with equal force to RFRA claims. *Adorers of the Blood of Christ v. FERC*, 897 F.3d 187, 198 (3d Cir. 2018). Finally, *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479 (1991)—on which Plaintiffs principally rely—is readily distinguishable. At the outset, *McNary* involved the Immigration and Nationality Act, not the CSA (or § 877 in particular). The *McNary* plaintiffs did "not seek review on the merits of a denial of a particular application," 498 U.S. at 494, as the Plaintiffs do here. In *McNary*, plaintiffs brought a pattern or practice claim that required

4

further record development, *see id.* at 483; Plaintiffs plead no such claim here and no record development is required. Finally, *McNary*'s holding that "meaningful judicial review of the[] statutory and constitutional claims would be foreclosed" rested on the fact that undocumented immigrants could only secure review under the relevant provision "if they voluntarily surrender[ed] themselves for deportation," *id.* at 484; no similarly drastic step is required to invoke § 877.

The fact that § 877 controls does not preclude judicial review; it merely dictates that review be had in the court of appeals.[1] Defendants' motion to dismiss for lack of jurisdiction should be granted in full.

## II.   THE APA CLAIM SHOULD BE DISMISSED UNDER 12(b)(6).

Even if the Court had jurisdiction, Plaintiffs' APA claim should be dismissed for failure to state a claim. While Plaintiffs disagree with the outcome reflected in DEA's Final Determination, the agency engaged in the proper process: it reviewed the relevant evidence and thoughtfully considered the Plaintiffs' petition for a religious exemption—applying RFRA, governing caselaw, and its expertise regarding the potential diversion of a Schedule I controlled substance. Contrary to Plaintiffs' contention, this was not "ultra vires" agency action. ECF No. 62 at 2, 5-8, 10.

Plaintiffs accuse Defendants of engaging in a "sleight of hand" in characterizing *Little Sisters of the Poor*, ECF No. 62 at 13, but the Court explained there, just as Defendants described, that an agency may consider RFRA-based exemptions from the statutes the agency is charged with administering. *Little Sisters of the Poor Saints Peter*

---

[1] Plaintiffs argue that DEA's determination is not supported by substantial evidence. ECF No. 62 at 19. That standard is set forth in § 877, the same provision that vests the court of appeals with exclusive jurisdiction to evaluate whether that standard has been met.

5

*& Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2382-83 (2020). The Court wrote that its decisions had "all but instructed the [relevant government agencies] to consider RFRA going forward" in the context of the contraceptive mandate, where a "potential for conflict" with RFRA "was well settled." *Id.* at 2383. The Court has been similarly explicit about a potential for conflict between RFRA and the CSA. *See Gonzales* v. *O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006). Indeed, the Court's decision in *O Centro* served as the catalyst for DEA to set forth a process for petitioners to request religious accommodations to DEA's administration of the CSA.[2]

Plaintiffs' suggestion that DEA lacks the power to consider RFRA-based exemptions cannot be reconciled with their having filed a petition for an exemption from DEA. *See* ECF No. 62-3 at 3 (asserting that Soul Quest participated in the petition process "under the belief" that doing so "would result in issuance of the long-sought exemption"). Plaintiffs thus clearly believe that DEA can *grant* an exemption on RFRA grounds.

Plaintiffs now argue that DEA may not *deny* a petition, objecting that DEA lacks authority to assess religious sincerity. ECF No. 62 at 8.[3] But RFRA caselaw makes clear that DEA must undertake the whole of the RFRA inquiry, including asking the threshold question of whether a particular petitioner's religious beliefs are sincerely held. *Burwell v.*

---

[2] Plaintiffs point to an assertion by DEA, in an unrelated case, that it cannot waive the CSA's requirements without an explicit statutory exemption. ECF No. 62 at 4. Here, RFRA "applies to all Federal law, and the implementation of that law, whether statutory or otherwise, and whether adopted before or after November 16, 1993," 42 U.S.C. § 2000bb-3(a), "unless such law explicitly excludes such application," *id.* § 2000bb-3(b). Indeed, in language that Plaintiffs cite, *see* ECF No. 62 at 8, the Supreme Court has observed that RFRA can "displac[e] the normal operation of other federal laws." *Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731, 1754 (2020).

[3] Even if DEA lacked authority to assess religious sincerity, dismissal of the APA claim is proper because DEA's denial rested on the independent reason that Soul Quest's petition could not be granted given the risk posed to public health. ECF No. 62-1 at 5-8.

*Hobby Lobby Stores, Inc.*, 573 U.S. 682, 717 n.28 (2014) ("To qualify for RFRA's protection, an asserted belief must be 'sincere' . . . ."); *O Centro*, 546 U.S. at 430-31 (2006) (RFRA's "compelling interest test is satisfied through application of the challenged law 'to the person'—the particular claimant whose sincere exercise of religion is being substantially burdened.") (citation omitted). What DEA may not do is reflexively grant a petition; instead, it must assess whether RFRA requires the exemption sought.

Plaintiffs also observe that RFRA does not permit assessments of the reasonableness of a claimant's religious beliefs, ECF No. 62 at 7, 13, but that is not what DEA has done here. Rather, DEA has concluded, among other things, that Plaintiffs did not demonstrate that their views are sincerely held. ECF No. 62-1 at 2-4; *see Hobby Lobby*, 573 U.S. at 717 n.28.

Because DEA had authority to apply RFRA in full, the APA claim should be dismissed under Rule 12(b)(6).[4]

## III.   THE FIRST AMENDMENT CLAIM SHOULD BE DISMISSED UNDER 12(b)(6).

Plaintiffs do not respond to Defendants' motion to dismiss their First Amendment claim. That claim should be dismissed under Rule 12(b)(6) for the reasons previously set forth. *See Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) (failing to respond to any portion of a motion "indicates such portion . . . is unopposed").

## CONCLUSION

For the foregoing reasons, and the reasons set forth in Defendants' opening motion and memorandum, the Court should dismiss Plaintiffs' Complaint.

---

[4] Plaintiffs allege that DEA's guidance is just that: guidance. ECF No. 62 at 14-15. DEA does not characterize it otherwise. In any event, Plaintiffs do not challenge the procedures DEA used in promulgating the guidance. *See* Compl. ¶¶ 131-142.

7

Dated:  September 28, 2021	Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Director
Civil Division, Federal Programs Branch

JULIE STRAUS HARRIS
Senior Trial Counsel (DC Bar # 1021928)

<u>/s/ *Michael J. Gaffney*</u>
MICHAEL J. GAFFNEY
Trial Attorney (DC Bar # 1048531)

United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, D.C. 20005
Tel: (202) 514-2356
Fax: (202) 616-8460
Email: Michael.J.Gaffney@usdoj.gov

*Counsel for Defendants*